**Federal Register**

Vol. 90, No. 18

Wednesday, January 29, 2025

**Presidential Documents**

| | |
|---|---|
| **Title 3—** | Executive Order 14156 of January 20, 2025 |
| **The President** | **Declaring a National Energy Emergency** |

By the authority vested in me as President by the Constitution and the laws of the United States of America, including the National Emergencies Act (50 U.S.C. 1601 *et seq.*) (''NEA''), and section 301 of title 3, United States Code, it is hereby ordered:

**Section 1**. *Purpose.* The energy and critical minerals (''energy'') identification, leasing, development, production, transportation, refining, and generation capacity of the United States are all far too inadequate to meet our Nation's needs. We need a reliable, diversified, and affordable supply of energy to drive our Nation's manufacturing, transportation, agriculture, and defense industries, and to sustain the basics of modern life and military preparedness. Caused by the harmful and shortsighted policies of the previous administration, our Nation's inadequate energy supply and infrastructure causes and makes worse the high energy prices that devastate Americans, particularly those living on low- and fixed-incomes.

This active threat to the American people from high energy prices is exacerbated by our Nation's diminished capacity to insulate itself from hostile foreign actors. Energy security is an increasingly crucial theater of global competition. In an effort to harm the American people, hostile state and non-state foreign actors have targeted our domestic energy infrastructure, weaponized our reliance on foreign energy, and abused their ability to cause dramatic swings within international commodity markets. An affordable and reliable domestic supply of energy is a fundamental requirement for the national and economic security of any nation.

The integrity and expansion of our Nation's energy infrastructure—from coast to coast—is an immediate and pressing priority for the protection of the United States' national and economic security. It is imperative that the Federal government puts the physical and economic wellbeing of the American people first.

Moreover, the United States has the potential to use its unrealized energy resources domestically, and to sell to international allies and partners a reliable, diversified, and affordable supply of energy. This would create jobs and economic prosperity for Americans forgotten in the present economy, improve the United States' trade balance, help our country compete with hostile foreign powers, strengthen relations with allies and partners, and support international peace and security. Accordingly, our Nation's dangerous energy situation inflicts unnecessary and perilous constraints on our foreign policy.

The policies of the previous administration have driven our Nation into a national emergency, where a precariously inadequate and intermittent energy supply, and an increasingly unreliable grid, require swift and decisive action. Without immediate remedy, this situation will dramatically deteriorate in the near future due to a high demand for energy and natural resources to power the next generation of technology. The United States' ability to remain at the forefront of technological innovation depends on a reliable supply of energy and the integrity of our Nation's electrical grid. Our Nation's current inadequate development of domestic energy resources leaves us vulnerable to hostile foreign actors and poses an imminent and growing threat to the United States' prosperity and national security.

These numerous problems are most pronounced in our Nation's Northeast and West Coast, where dangerous State and local policies jeopardize our Nation's core national defense and security needs, and devastate the prosperity of not only local residents but the entire United States population. The United States' insufficient energy production, transportation, refining, and generation constitutes an unusual and extraordinary threat to our Nation's economy, national security, and foreign policy. In light of these findings, I hereby declare a national emergency.

**Sec. 2**. *Emergency Approvals.* (a) The heads of executive departments and agencies ("agencies") shall identify and exercise any lawful emergency authorities available to them, as well as all other lawful authorities they may possess, to facilitate the identification, leasing, siting, production, transportation, refining, and generation of domestic energy resources, including, but not limited to, on Federal lands. If an agency assesses that use of either Federal eminent domain authorities or authorities afforded under the Defense Production Act (Public Law 81–774, 50 U.S.C. 4501 *et seq.*) are necessary to achieve this objective, the agency shall submit recommendations for a course of action to the President, through the Assistant to the President for National Security Affairs.

(b) Consistent with 42 U.S.C. 7545(c)(4)(C)(ii)(III), the Administrator of the Environmental Protection Agency, after consultation with, and concurrence by, the Secretary of Energy, shall consider issuing emergency fuel waivers to allow the year-round sale of E15 gasoline to meet any projected temporary shortfalls in the supply of gasoline across the Nation.

**Sec. 3**. *Expediting the Delivery of Energy Infrastructure.* (a) To facilitate the Nation's energy supply, agencies shall identify and use all relevant lawful emergency and other authorities available to them to expedite the completion of all authorized and appropriated infrastructure, energy, environmental, and natural resources projects that are within the identified authority of each of the Secretaries to perform or to advance.

(b) To protect the collective national and economic security of the United States, agencies shall identify and use all lawful emergency or other authorities available to them to facilitate the supply, refining, and transportation of energy in and through the West Coast of the United States, Northeast of the United States, and Alaska.

(c) The Secretaries shall provide such reports regarding activities under this section as may be requested by the Assistant to the President for Economic Policy.

**Sec. 4**. *Emergency Regulations and Nationwide Permits Under the Clean Water Act (CWA) and Other Statutes Administered by the Army Corps of Engineers.* (a) Within 30 days from the date of this order, the heads of all agencies, as well as the Secretary of the Army, acting through the Assistant Secretary of the Army for Civil Works shall:

(i) identify planned or potential actions to facilitate the Nation's energy supply that may be subject to emergency treatment pursuant to the regulations and nationwide permits promulgated by the Corps, or jointly by the Corps and EPA, pursuant to section 404 of the Clean Water Act, 33 U.S.C. 1344, section 10 of the Rivers and Harbors Act of March 3, 1899, 33 U.S.C. 403, and section 103 of the Marine Protection Research and Sanctuaries Act of 1972, 33 U.S.C. 1413 (collectively, the "emergency Army Corps permitting provisions"); and

(ii) shall provide a summary report, listing such actions, to the Director of the Office of Management and Budget ("OMB"); the Secretary of the Army, acting through the Assistant Secretary of the Army for Civil Works; the Assistant to the President for Economic Policy; and the Chairman of the Council on Environmental Quality (CEQ). Such report may be combined, as appropriate, with any other reports required by this order.

(b) Agencies are directed to use, to the fullest extent possible and consistent with applicable law, the emergency Army Corps permitting provisions to facilitate the Nation's energy supply.

(c) Within 30 days following the submission of the initial summary report described in subsection (a)(ii) of this section, each department and agency shall provide a status report to the OMB Director; the Secretary of the Army, acting through the Assistant Secretary of the Army for Civil Works; the Director of the National Economic Council; and the Chairman of the CEQ. Each such report shall list actions taken within subsection (a)(i) of this section, shall list the status of any previously reported planned or potential actions, and shall list any new planned or potential actions that fall within subsection (a)(i). Such status reports shall thereafter be provided to these officials at least every 30 days for the duration of the national emergency and may be combined, as appropriate, with any other reports required by this order.

(d) The Secretary of the Army, acting through the Assistant Secretary of the Army for Civil Works, shall be available to consult promptly with agencies and to take other prompt and appropriate action concerning the application of the emergency Army Corps permitting provisions. The Administrator of the EPA shall provide prompt cooperation to the Secretary of the Army and to agencies in connection with the discharge of the responsibilities described in this section.

**Sec. 5**. *Endangered Species Act (ESA) Emergency Consultation Regulations.* (a) No later than 30 days from the date of this order, the heads of all agencies tasked in this order shall:

(i) identify planned or potential actions to facilitate the Nation's energy supply that may be subject to the regulation on consultations in emergencies, 50 CFR 402.05, promulgated by the Secretary of the Interior and the Secretary of Commerce pursuant to the Endangered Species Act ("ESA"), 16 U.S.C. 1531 *et seq.;* and

(ii) provide a summary report, listing such actions, to the Secretary of the Interior, the Secretary of Commerce, the OMB Director, the Director of the National Economic Council, and the Chairman of CEQ. Such report may be combined, as appropriate, with any other reports required by this order.

(b) Agencies are directed to use, to the maximum extent permissible under applicable law, the ESA regulation on consultations in emergencies, to facilitate the Nation's energy supply.

(c) Within 30 days following the submission of the initial summary report described in subsection (a)(ii) of this section, the head of each agency shall provide a status report to the Secretary of the Interior, the Secretary of Commerce, the OMB Director, the Director of the National Economic Council, and the Chairman of CEQ. Each such report shall list actions taken within the categories described in subsection (a)(i) of this section, the status of any previously reported planned or potential actions, and any new planned or potential actions within these categories. Such status reports shall thereafter be provided to these officials at least every 30 days for the duration of the national emergency and may be combined, as appropriate, with any other reports required by this order. The OMB Director may grant discretionary exemptions from this reporting requirement.

(d) The Secretary of the Interior shall ensure that the Director of the Fish and Wildlife Service, or the Director's authorized representative, is available to consult promptly with agencies and to take other prompt and appropriate action concerning the application of the ESA's emergency regulations. The Secretary of Commerce shall ensure that the Assistant Administrator for Fisheries for the National Marine Fisheries Service, or the Assistant Administrator's authorized representative, is available for such consultation and to take such other action.

**Sec. 6**. *Convening the Endangered Species Act Committee.* (a) In acting as Chairman of the Endangered Species Act Committee, the Secretary of the Interior shall convene the Endangered Species Act Committee not less than quarterly, unless otherwise required by law, to review and consider any lawful applications submitted by an agency, the Governor of a State,

or any applicant for a permit or license who submits for exemption from obligations imposed by Section 7 of the ESA.

(b) To the extent practicable under the law, the Secretary of the Interior shall ensure a prompt and efficient review of all submissions described in subsection (a) of this section, to include identification of any legal deficiencies, in order to ensure an initial determination within 20 days of receipt and the ability to convene the Endangered Species Act Committee to resolve the submission within 140 days of such initial determination of eligibility.

(c) In the event that the committee has no pending applications for review, the committee or its designees shall nonetheless convene to identify obstacles to domestic energy infrastructure specifically deriving from implementation of the ESA or the Marine Mammal Protection Act, to include regulatory reform efforts, species listings, and other related matters with the aim of developing procedural, regulatory, and interagency improvements.

**Sec. 7**. *Coordinated Infrastructure Assistance.* (a) In collaboration with the Secretaries of Interior and Energy, the Secretary of Defense shall conduct an assessment of the Department of Defense's ability to acquire and transport the energy, electricity, or fuels needed to protect the homeland and to conduct operations abroad, and, within 60 days, shall submit this assessment to the Assistant to the President for National Security Affairs. This assessment shall identify specific vulnerabilities, including, but not limited to, potentially insufficient transportation and refining infrastructure across the Nation, with a focus on such vulnerabilities within the Northeast and West Coast regions of the United States. The assessment shall also identify and recommend the requisite authorities and resources to remedy such vulnerabilities, consistent with applicable law.

(b) In accordance with section 301 of the National Emergencies Act (50 U.S.C. 1631), the construction authority provided in section 2808 of title 10, United States Code, is invoked and made available, according to its terms, to the Secretary of the Army, acting through the Assistant Secretary of the Army for Civil Works, to address any vulnerabilities identified in the assessment mandated by subsection (a). Any such recommended actions shall be submitted to the President for review, through the Assistant to the President for National Security Affairs and the Assistant to the President for Economic Policy.

**Sec. 8**. *Definitions.* For purposes of this order, the following definitions shall apply:

(a) The term ''energy'' or ''energy resources'' means crude oil, natural gas, lease condensates, natural gas liquids, refined petroleum products, uranium, coal, biofuels, geothermal heat, the kinetic movement of flowing water, and critical minerals, as defined by 30 U.S.C. 1606 (a)(3).

(b) The term ''production'' means the extraction or creation of energy.

(c) The term ''transportation'' means the physical movement of energy, including through, but not limited to, pipelines.

(d) The term ''refining'' means the physical or chemical change of energy into a form that can be used by consumers or users, including, but not limited to, the creation of gasoline, diesel, ethanol, aviation fuel, or the beneficiation, enrichment, or purification of minerals.

(e) The term ''generation'' means the use of energy to produce electricity or thermal power and the transmission of electricity from its site of generation.

(f) The term ''energy supply'' means the production, transportation, refining, and generation of energy.

**Sec. 9**. *General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect:

   (i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of OMB relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

THE WHITE HOUSE,
*January 20, 2025.*

[FR Doc. 2025–02003
Filed 1–28–25; 11:15 am]
Billing code 3395–F4–P