ISAAC H. MORIWAKE        #7141
KYLIE W. WAGER CRUZ   #10165
LEINĀʻALA L. LEY              #9710
EARTHJUSTICE
850 Richards Street, Suite 400
Honolulu, Hawaiʻi 96813
Telephone No.: (808) 599-2438
Email:  imoriwake@earthjustice.org
            kwager@earthjustice.org
            lley@earthjustice.org

JOANNA C. ZEIGLER       #10426
ANDREA RODGERS          #62613
*(Admitted Pro Hac Vice)*
JULIA A. OLSON
(Admitted *Pro Hac Vice*)
OUR CHILDREN'S TRUST
P.O. Box 5181
Eugene, Oregon 97405
Telephone No.: (541) 375-0158
Email:  joanna@ourchildrenstrust.org
            andrea@ourchildrenstrust.org
            julia@ourchildrenstrust.org

PHILIP L. GREGORY           #62851
*(*Admitted *Pro Hac Vice)*
GREGORY LAW GROUP
1250 Godetia Drive
Woodside, California 94062
Email: pgregory@pgregorylawgroup.com

**Electronically Filed**
**FIRST CIRCUIT**
**1CCV-22-0000631**
**20-JUN-2024**
**10:31 AM**
**Dkt. 495 STIP**

Attorneys for Plaintiffs

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAIʻI

| | |
|---|---|
| NAVAHINE F., a Minor, by and through her natural guardian; et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>DEPARTMENT OF TRANSPORTATION, STATE OF HAWAIʻI, et al.,<br><br>            Defendants. | CIVIL NO. 1CCV-22-0000631<br>(Environmental Court)<br><br>JOINT STIPULATION AND ORDER RE: SETTLEMENT; EXHIBIT "A"<br><br>Judge: The Honorable John M. Tonaki<br><br>Trial Date: June 24, 2024 |

JOINT STIPULATION AND ORDER RE: SETTLEMENT

WHEREAS, Plaintiffs Navahine F., a Minor, by and through her natural guardian; Kaʻōnohi P.-G., a Minor, by and through his natural guardian; Kawahineʻilikea N., a Minor, by and through her natural guardian; Mesina D.-R., a Minor, by and through her natural guardian; Kawena F., a Minor, by and through her natural guardians; Tyler L., a Minor, by and through their natural guardian; Rylee K., a Minor, by and through her natural guardian; Kaliko T., a Minor, by and through her natural guardian; Charlotte M., a Minor, by and through her natural guardian; Taliya N., a Minor, by and through her natural guardian; Kalālapa W.; Pahonu C., a Minor, by and through his natural guardian; and Brianna K., a Minor, by and through her natural guardian (collectively, "Youth Plaintiffs") and Defendants the State of Hawaiʻi, Governor Josh Green, the Hawaiʻi Department of Transportation ("HDOT"), and Edwin Sniffen, in his official capacity as HDOT Director (collectively, "Defendants"), have executed a Settlement Agreement, which is filed herewith as Exhibit "A";

NOW, THEREFORE, pursuant to the Settlement Agreement, the parties hereby stipulate and agree, and the Court orders, as follows:

1. The terms of the Settlement Agreement are approved as in the best interests of and fair to the Youth Plaintiffs.

2. Except as set forth in the Settlement Agreement, this Order and Settlement Agreement fully and completely resolve the claims asserted by Plaintiffs against Defendants in the Youth Plaintiffs' Complaint (Dkt. 1).

3. In the event a dispute arises regarding compliance with the terms of the Settlement Agreement, any party, having complied with the dispute resolution provisions set forth in section 10 of the Settlement Agreement, may bring an appropriate motion in this Court

under Case Number 1CCV-22-0000631 to enforce the Agreement. Unless otherwise directed by this Court, the moving party shall not commence a separate lawsuit to seek judicial resolution of such a dispute.

4. This Court shall reserve continuing jurisdiction solely to enforce the Parties' obligations under the Agreement until December 31, 2045, or the date upon which the Zero Emissions Target, Haw. Rev. Stat. § 225P-5, has been achieved, whichever is earlier.

5. This case shall automatically be dismissed on December 31, 2045, or the date upon which the Zero Emissions Target, Haw. Rev. Stat. § 225P-5, has been achieved, whichever is earlier.

DATED: Honolulu, Hawai'i, May 17, 2024.

|  |  |
|---|---|
|  | ANNE LOPEZ<br>Attorney General of the State of Hawai'i |
| /s/ Isaac H. Moriwake<br>ISAAC H. MORIWAKE<br>KYLIE W. WAGER CRUZ<br>LEINĀʻALA L. LEY<br>EARTHJUSTICE | /s/ Ciara W.K. Kahahane<br>CIARA W.K. KAHAHANE<br>JEEN H. KWAK<br>Deputy Attorneys General |
| *[signature]*<br>ANDREA RODGERS (*Pro Hac Vice*)<br>JOANNA C. ZEIGLER<br>JULIA A. OLSON (*Pro Hac Vice*)<br>OUR CHILDREN'S TRUST | CHARLENE S. SHIMADA<br>BRYAN M. KILLIAN (*Pro Hac Vice*)<br>DOUGLAS A. HASTINGS (*Pro Hac Vice*)<br>R RAYMOND ROTHMAN (*Pro Hac Vice*)<br>DEANNE L. MILLER (*Pro Hac Vice*)<br>PEJMAN MOSHFEGH (*Pro Hac Vice*)<br>MEGAN A SUEHIRO<br>MORGAN, LEWIS, & BOCKIUS LLP |
| PHILIP L. GREGORY (*Pro Hac Vice*)<br>GREGORY LAW GROUP | Attorneys for Defendants |
| Attorneys for Plaintiffs |  |

2

APPROVED AND SO ORDERED:

DATED: Honolulu, Hawaiʻi_____June 20, 2024_____

/s/ John M. Tonaki
_____
JOHN M. TONAKI
JUDGE OF THE ABOVE-ENTITLED COURT

_____
*Navahine F., et al. v. Dept. of Transportation, State of Hawaiʻi et al.*; Civil No. 1CCV-22-0000631; JOINT STIPULATION AND ORDER RE: SETTLEMENT; EXHIBIT "A"

3

# EXHIBIT A

EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is made and entered into by and between **Plaintiffs** Navahine F., a Minor, by and through her natural guardian; Kaʻōnohi P.-G., a Minor, by and through his natural guardian; Kawahineʻilikea N., a Minor, by and through her natural guardian; Mesina D.-R., a Minor, by and through her natural guardian; Kawena F., a Minor, by and through her natural guardians; Tyler L., a Minor, by and through her natural guardian; Rylee K., a Minor, by and through her natural guardian; Kaliko T., a Minor, by and through her natural guardian; Charlotte M., a Minor, by and through her natural guardian; Taliya N., a Minor, by and through her natural guardian; Kalālapa W.; Pahonu C., a Minor, by and through his natural guardian; and Brianna K., a Minor, by and through her natural guardian (collectively, "Youth Plaintiffs"), and **Defendants** the State of Hawaiʻi, Governor Josh Green, the Hawaiʻi Department of Transportation ("HDOT"), and Edwin Sniffen, in his official capacity as HDOT Director (collectively, "Defendants").

Youth Plaintiffs and Defendants shall be referred to collectively as the "Parties" and individually as a "Party."

## RECITALS

WHEREAS, Youth Plaintiffs are thirteen youths represented by two non-profit, public interest law firms, Earthjustice and Our Children's Trust;

WHEREAS, Youth Plaintiffs filed a Complaint on June 1, 2022, captioned *Navahine F. et al. v. Hawaiʻi Department of Transportation et al.,* in the Circuit Court of the First Circuit, Case No. 1CCV-22-0000631, alleging violations of the constitutional public trust doctrine (Haw. Const. art. XI, § 1) and constitutional right to a clean and healthful environment (Haw. Const. art. XI, § 9) and seeking declaratory and injunctive relief;

WHEREAS, on April 17, 2023, Defendants filed an Answer denying liability;

WHEREAS, at the time the case commenced, Youth Plaintiffs were children, ages 9-18;

WHEREAS, Hawaiʻi jurisprudence recognizes that:

"There is scientific consensus: anthropogenic global warming threatens the world's climate system. It raises the seas; it sickens the planet. It harms present and future generations." *In re Maui Elec. Co.,* 150 Hawaiʻi 528, 538 n.15, 506 P.3d 192, 202 n.15 (2022) ("*MECO*") (citing *Summary for Policymakers* in *Climate Change 2021: The Physical Science Basis*, IPCC (Valérie Masson-Delmotte et al. eds., 2021), https://www.ipcc.ch/report/ar6/wg1/downloads/report/IPCC_AR6_WGI_SPM_final.pdf; *Summary for Policymakers* in *Climate Change 2022: Impacts, Adaptation and Vulnerability* at SPM-7-8, IPCC (Hans-O Pörtner et al., 2022), https://report.ipcc.ch/ar6wg2/pdf/IPCC_AR6_WGII_SummaryForPolicymakers.pdf);

1

"The people of Hawaiʻi have declared 'a climate emergency.'" *In re Haw. Elec. Light Co.*, 152 Hawaiʻi 352, 359, 526 P.3d 329, 336 (2023) ("*HELCO*") (quoting S. Con. Res. 44, 31st Leg., Reg. Sess. (2021) ("2021 S. Con. Res. 44"));

"Hawaiʻi faces immediate threats to our cultural and economic survival: sea level rise, eroding the coast and flooding the land; ocean warming and acidification, bleaching coral reefs and devastating marine life; more frequent and more extreme droughts and storms. For the human race as a whole, the threat is no less existential." *HELCO*, 152 Hawaiʻi at 359, 526 P.3d at 336 (citing 2021 S. Con. Res. 44);

"HRS § 225P-5 mandates that we reduce emissions now, before the damage done to the environment is irreversible—before action becomes impossible for future generations." *HELCO*, 152 Hawaiʻi at 358, 526 P.3d at 335;

"With each year, the impacts of climate change amplify and the chances to mitigate dwindle … 'A stepwise approach is no longer an option.'" *HELCO*, 152 Hawaiʻi at 359, 526 P.3d at 336 (internal citation omitted); and

WHEREAS, as a state agency, HDOT "must perform its statutory function in a manner that fulfills the State's affirmative constitutional obligations." *HELCO*, 152 Hawaiʻi at 359, 526 P.3d at 336;

WHEREAS, an array of laws enacted by the Hawaiʻi Legislature require the State to increase energy efficiency, develop an integrated multi-modal transportation system, and reduce greenhouse gas ("GHG") emissions, including transportation sector emissions specifically. *See, e.g.*, HRS §§ 196-9; 225P-5, -7, -8; 226-17, -18; 264-142, -143;

WHEREAS, Hawaiʻi's Legislature has recognized that:

"[C]limate change is the overriding challenge of the twenty-first century" and "poses immediate and long-term threats to Hawaiʻi's economy, public health, natural resources, environment, and way of life." 2022 Haw. Sess. Laws Act 238, § 1;

"[B]ased upon the scientific information and expertise available, Hawaiʻi remains particularly vulnerable to the dangers of disaster occurrences as a result of the effects of global warming, thereby endangering the health, safety, and welfare of the [State's] people, warranting preemptive and protective action[.]" 2021 S. Con. Res. 44; and

"In order to achieve the goal of a fully decarbonized economy, the State needs to plan ahead and understand the steps that need to be taken to create a carbon-negative economy by 2045[.]" 2022 Haw. Sess. Laws Act 238, § 1;

WHEREAS, Hawaiʻi's Legislature has further found that this "existential climate emergency threatens humanity and the natural world" and has requested "statewide collaboration toward an immediate just transition and emergency mobilization effort to restore a safe climate." 2021 S. Con. Res. 44;

2

WHEREAS, Defendants have taken efforts to make Hawaiʻi a leader in reducing GHG emissions in the transportation sector, and are committed to taking further, ambitious steps to meet the State's targets set forth in HRS §§ 225P-5, -7, and -8;

WHEREAS, a 2023 study by EPA found that children are uniquely vulnerable to the impacts of climate change because of the natural physiology of their developing and growing bodies, and that climate change impacts experienced during childhood can have lifelong consequences. U.S. Environmental Protection Agency, *Climate Change and Children's Health and Well-Being in the United States*, EPA 430-R-23-001 (2023);

WHEREAS, experts state that the best scientific evidence today shows that correcting Earth's energy imbalance requires reducing atmospheric carbon dioxide to less than 350 parts per million this century;

WHEREAS, the Parties have agreed to fully and finally resolve Youth Plaintiffs' Complaint in exchange for certain commitments by Defendants related to reducing GHG emissions in the transportation sector; and

WHEREAS, by entering this Agreement, Youth Plaintiffs do not admit to any legal or factual deficiencies in their claims and Defendants do not admit to any liability or wrongdoing and do not concede any factual or legal issue alleged in the Complaint.

NOW, THEREFORE, in the interests of the Parties and the public interest, and to promote judicial economy, the Parties hereby stipulate and agree as follows:

## **RECOGNITION OF RIGHTS**

1. Youth Plaintiffs have constitutional rights to a clean and healthful environment consistent with article XI, section 9 of the Hawaiʻi Constitution:

    > Each person has the right to a clean and healthful environment, as defined by laws relating to environmental quality, including control of pollution and conservation, protection and enhancement of natural resources. Any person may enforce this right against any party, public or private, through appropriate legal proceedings, subject to reasonable limitations and regulation as provided by law.

2. The State is committed to reducing GHG emissions from its statewide transportation system according to "the best available science" and the governing legal mandates to address climate change and protect the constitutional rights of Hawaiʻi citizens. 2018 Haw. Sess. Laws Act 15, § 4.

3. The right to a clean and healthful environment under article XI, section 9 of the Hawaiʻi Constitution as defined by laws relating to environmental quality "subsumes a right to a

3

life- sustaining climate system." *MECO*, 150 Hawaiʻi at 538 n. 15, 506 P.3d at 202 n. 15; *HELCO*, 152 Hawaiʻi at 359, 526 P.3d at 336.

4. The State has affirmative public trust obligations under article XI, section 1 of the Hawaiʻi Constitution to conserve and protect "Hawaiʻi's natural beauty and all natural resources, including land, water, air, minerals and energy sources" "[f]or the benefit of present and future generations."

5. The State's public trust considerations include "those related to protection of air and other trust resources affected by climate change[.]" *MECO*, 150 Hawaiʻi at 538, 506 P.3d at 202.

6. "As trustee, the State must take an active role in preserving trust property and may not passively allow it to fall into ruin." *Ching v. Case*, 145 Hawaiʻi 148, 177, 449 P.3d 1146, 1175 (2019) (citation omitted). "[A]n obligation to reasonably monitor trust property to ensure it is not harmed is a necessary component of this general duty[.]" *Id.*

7. Defendants, in establishing, maintaining, and operating the state transportation system, must preserve, protect, and maintain Hawaiʻi's public trust resources and all Hawaiʻi citizens' right to a clean and healthful environment.

8. 2018 Haw. Sess. Laws Act 15, section 4, requires Defendants to "expand strategies and mechanisms to reduce greenhouse gas emissions through the reduction of energy use, adoption of renewable energy, and control of air pollution among all agencies, departments, industries, and sectors, *including transportation*[,] . . . utiliz[ing] the best available science, technologies, and policies to reduce greenhouse gas emissions." (Emphasis added.)

## **TERMS AND CONDITIONS**

NOW, THEREFORE, the Parties hereby promise, covenant, agree, and exchange mutual general releases as follows:

1. **GHG Emission Reductions.**

As required by HRS § 225P-8, HDOT will "take any actions necessary to achieve the goals established" in that section, specifically, "zero [greenhouse gas] emissions across all transportation modes within the State, including across all sectors of:
   (1) Ground Transportation; and
   (2) Sea and air interisland transportation."

The Parties agree that Defendants will establish in the GHG Reduction Plan discussed below the interim greenhouse gas emission reduction targets for 2030, 2035, and 2040 to achieve the goals established in HRS § 225P-5 "no later than 2045" in accordance with that section.

4

2.  **Greenhouse Gas Reduction Plan.**

    Within the legal and legislative parameters of the government process, which Youth Plaintiffs acknowledge, HDOT, in consultation with other state and local agencies, will develop and implement a concrete and comprehensive statewide plan ("GHG Reduction Plan") to reduce GHG emissions from the statewide transportation system on a timeline that complies with HRS §§ 225P-5, 225P-7, and 225P-8.

    a.  HDOT will complete the GHG Reduction Plan as soon as possible, but no later than one (1) year from the date of the last signatory to the Agreement ("Agreement Date").

    b.  Youth Plaintiffs and the public shall have at least thirty (30) days to provide feedback and comments on the GHG Reduction Plan, prior to the Plan becoming final, and sufficiently in advance for HDOT to address the feedback and comments.

    c.  After entry of the Parties' Agreement, Youth Plaintiffs shall have the opportunity to have an in-person meeting with the Director of HDOT and the Climate Change Mitigation and Culture Manager to discuss their comments and feedback on HDOT's GHG reduction measures.

    d.  The GHG Reduction Plan will acknowledge and act upon the responsibilities of the State, and HDOT as the State's head transportation agency, to play a lead role in decarbonizing the statewide transportation system, in coordination and partnership with other related agencies and entities and the private sector.

    e.  The GHG Reduction Plan will include consideration of plans and investments for infrastructure that may be necessary at harbors and airports to accommodate the full decarbonization of international aviation and marine transportation to the Hawaiian Islands.

    f.  The GHG Reduction Plan will set interim five (5) year GHG emissions reduction targets in the transportation sector through 2045, for the years 2030, 2035, and 2040. The plan will include different benchmarks for ground, air, and marine transportation, as necessary to reflect different technologies economically and technically viable in the three sectors.

    g.  HDOT will provide an annual update to the public, with notice specifically provided to Youth Plaintiffs through their counsel, on its progress in implementing the GHG Reduction Plan, achieving GHG emission reductions, and moving toward the upcoming GHG reduction interim target.

    h.  The public and Youth Plaintiffs will have at least thirty (30) days after receipt of each annual update to provide comments and feedback to HDOT. Upon request by Youth Plaintiffs, they shall have the opportunity to have an in-person or virtual meeting with the Climate Change Mitigation and Culture Manager to discuss their comments and feedback.

5

    i. The GHG Reduction Plan will be updated on an ongoing basis, with a comprehensive review and update approximately every five (5) years, under the principle of continual performance feedback and improvement. Specifically, HDOT will review and reassess actions and strategies for ground, air, and marine transportation based on the best scientific information available, the progress to date, and the necessary adjustments to meet the upcoming five-year interim target.

    j. Specific benchmarks and performance metrics to incorporate in the GHG Reduction Plan will include but not be limited to the following:

        i. Interim targets to reduce vehicle miles traveled ("VMT") and the number of single occupancy vehicles in the state's mode share, HRS § 264-143(a)(3), (4);

        ii. Interim targets to expand multimodal transportation options such as public transit, pedestrian pathways, and bikeways, HRS §§ 264-20.5(a), -142;

        iii. Interim targets to improve safety for pedestrians and cyclists and meet the Vision Zero Policy, HRS §264-143(a)(6);

        iv. Interim targets to electrify transportation and support expansion of the public charging infrastructure across the state, HRS §§ 226-17, -18;

        v. Interim targets to reduce petroleum use from ground transportation and increase the use of zero-carbon alternative fuels and electric vehicles in the ground, air, and marine transportation sectors, HRS §§ 226-17, -18;

        vi. Interim targets to convert to zero-emission technologies (whether electric or otherwise) all ground equipment at airports and harbors in the state, HRS §§ 225P-5, P-8.

    k. To meet the interim targets set in the GHG Reduction Plan, HDOT will need at a minimum:

        i. Sufficient appropriations of funds by the Legislature;

        ii. Support and adoption by private stakeholders of zero emissions vehicles, sustainable aviation fuel, and other technologies;

        iii. Support by the counties for zero emissions vehicles, public transit, electric vehicle ("EV") charging, and other measures designed to decarbonize the transportation sector;

        iv. Land use and other planning to increase public adoption of multimodal transportation options;

        v. Support, planning, and adoption by other State departments, agencies, and

      commissions to achieve the State's renewable energy and zero emissions transportation goals;

      vi. Availability and delivery of new vehicles and technologies from private parties (such as medium- and heavy-duty electric vehicles);

      vii. Public support, advocacy, and assistance in spreading awareness and education about Hawaiʻi's clean energy initiatives; and

      viii. For the State's electrical energy to be generated using renewable energy sources according to the State's Renewable Portfolio Standards.

    The GHG Reduction Plan will incorporate specific actions and strategies that HDOT will take in an effort to enable and support meeting the applicable needs set forth in sections k.i-viii above.

l. HDOT will develop and implement a program for public education, outreach and community engagement, and partnerships to support the GHG Reduction Plan and related transportation decarbonization work, emphasizing the role the public can play and maximizing awareness of clean transportation choices and opportunities. The Parties will partner in and contribute to the public education, outreach, and community engagement program.

**3. Revised Transportation Programming and Budgeting Process.**

   a. To ensure funding is requested, available, and prioritized in alignment with decarbonizing the transportation system, HDOT will develop a process and criteria for evaluating, selecting, and prioritizing projects to include in the Mid-Range Transportation Plan ("MRTP"), Statewide Transportation Improvement Program ("STIP"), and multimodal plans, in accordance with the State's GHG mitigation and VMT reduction goals. HDOT will make information about this process and criteria readily available to the public.

   b. The revised process and criteria for the MRTP and STIP will be in place and operational in time to apply to the next planning cycle beginning in April 2025.

   c. HDOT will develop and implement an objective, scientifically-based methodology to assess and report the total, long-term GHG emission and VMT impacts of each infrastructure project ("the Methodology"). The Methodology will quantify these impacts where possible, using best estimates where necessary. HDOT will incorporate this Methodology into its planning process and into individual project and annual reports under HRS § 264-143.

   d. HDOT will develop and implement the Methodology in no later than one year, in time for it to be incorporated in all proposals for the next planning cycle beginning in April 2025.

7

e. HDOT will also use this Methodology to assess GHG and VMT impacts in preparing environmental review documents for its transportation projects, and in commenting on environmental review documents for land use development projects.

f. HDOT will include climate change mitigation as a primary goal and objective within the MRTP and STIP process at the next planning cycle beginning in April 2025, to be implemented based on best available data from the GHG and VMT Methodology.

g. The revised process and criteria for the MRTP and STIP will make clear that the 2013 "Highways Division Project Prioritization Guideline" document is no longer valid, and Level of Service is discontinued as a criterion for project prioritization.

h. HDOT will produce an annual report compiling the individual project reports and detailing its progress in reducing GHG and VMT, including its quantitative analyses, as required by HRS § 264-143(c).

i. HDOT will incorporate the Complete Streets policy under HRS § 264-20.5 as a goal and prioritization criterion in the MRTP and STIP and require a documented Complete Streets assessment, including any exceptions to the Complete Streets policy, for each proposed project, starting from the upcoming MRTP and STIP planning cycle beginning in April 2025. HDOT will also implement policies and procedures to ensure that Complete Streets improvements remain part of the project throughout the planning and development process, and that information about Complete Streets improvements for each project is readily available to the public.

j. The GHG and VMT impact assessments, reports, and project scoring evaluations described above for each project and the MRTP and STIP as a whole will be publicly available in an easily accessible online format.

k. HDOT will include consideration of equity goals for each project at the planning stage and inclusion of an assessment of whether each project serves HDOT's equity goals in the reports prepared under HRS § 264-143. HDOT will mindfully prioritize the health and wellbeing of children, *see, e.g.*, HRS § 264-142(b)(1).

4. **HDOT Leadership.**

   a. HDOT will create a lead unit, headed by a Climate Change Mitigation & Culture Manager, expressly charged with addressing climate change mitigation, within three months of this Agreement or as soon thereafter as the unit can be created. This lead unit will:

      i. Work directly with HDOT Director, Deputy Directors, Climate Resiliency Managers from Airports, Highways, and Harbors to integrate and coordinate the mission of GHG reduction throughout HDOT.

      ii. Lead and conduct a range of responsibilities intended to meet the goals and

   targets set in HDOT's GHG Reduction Plan.

 b. HDOT Highways will also create a position to oversee HDOT Highways' climate change mitigation and adaptation efforts at the program level. HDOT will also create a position to lead and coordinate efforts to ensure implementation of the Complete Streets policy, including the process improvements described above. HDOT will provide email notice to the Youth Plaintiffs, through their counsel, of the title of each position when the two positions described above are created.

 c. HDOT will also establish a volunteer youth council to advise on HDOT's mitigation and adaptation commitments on a quarterly basis, with transparency about youth council recommendations and HDOT's responses. The inaugural volunteer youth council will be open to Youth Plaintiffs' participation through the regular application process and at least two of the youth council seats will be allocated to Youth Plaintiffs should they choose to apply. HDOT will provide email notice to the Youth Plaintiffs, through their counsel, when applications for the inaugural volunteer youth council open.

 d. To promote decarbonization of transportation as a statewide priority, HDOT will develop, publish, and implement standards governing its external review requests. HDOT will apply the same standards used for internal HDOT projects in reviewing developer projects, including but not limited to: integration of multimodal transportation choices and connectivity of walkways and bikeways into new developments; assessment of the potential GHG and VMT impacts of proposed projects; and improvements for the construction of bikeways, pathways, transit stops, and public EV charging stations in new developments intended to mitigate the reasonably foreseeable impacts of the proposed project on the statewide transportation system, including GHG and VMT impacts.

5. **Immediate Commitments.**

 a. To rapidly accelerate the expansion of the public EV charging network, Defendants will undertake an ambitious mobilization, including appropriate budgeting requests, in addition to implementation of HDOT's existing plan under the National Electric Vehicle Infrastructure (NEVI) Program, with an initial goal of investing a minimum of $40 million into public charging stations and charging infrastructure for state and county vehicles by 2030, subject to change as part of HDOT's GHG Reduction Plan.

 b. To rapidly accelerate the expansion of multimodal transportation choices in line with the State's decarbonization goals and the accompanying co-benefits, Defendants will also undertake an ambitious mobilization, including budgeting requests, to complete the pedestrian, bicycle, and transit networks in coordination with the counties as contemplated under HRS § 264-142, with a goal of completing this work in five years.

 c. HDOT will develop and implement policies intended to achieve zero emissions,

      including policies designed to: (i) reduce VMT and the percentage of single occupancy vehicles on roads; (ii) electrify transportation, including all vehicles and facilities, and support expansion of charging infrastructure across the State; (iii) increase the use of zero-carbon alternative fuels and electric vehicles in the ground, air, and marine transportation sectors; (iv) expand multimodal transportation options by building the complete network of safe bicycle, pedestrian, and transit facilities; and (v) implement other strategies as needed to decarbonize the transportation sector in the timeframe set forth in HRS § 225P-5. HDOT will seek immediate opportunities to take actions to advance progress on these goals.

   d. HDOT will also increase efforts to sequester more carbon, including by planting additional trees and shrubs on an annual basis to generate additional carbon sinks to drawdown carbon in the atmosphere, with a starting goal of planting at least 1,000 trees per year. When planting, HDOT will use native plants whenever feasible, and will not use invasive species.

**6. Attorneys' Fees and Costs.**

Each of the Parties shall bear and pay its own costs, attorneys' fees and any other expenses incurred or to be incurred in connection with this action, the released claims, the negotiation and preparation of this Agreement and/or the performance of this Agreement.

**7. Notice.**

Any notices required or provided for by this Agreement shall be in writing, via email or other means, and sent to the following:

   a. for Defendants:

      Ciara W.K. Kahahane
      Deputy Attorney General
      Department of the Attorney General
      State of Hawaiʻi
      425 Queen Street
      Honolulu, Hawaiʻi 96813
      Email: ciara.wk.kahahane@hawaii.gov

   b. for Plaintiffs:

      Isaac H. Moriwake
      Managing Attorney
      Earthjustice
      850 Richards Street, Suite 400
      Honolulu, Hawaiʻi 96813
      Email: imoriwake@earthjustice.org

        Andrea K. Rodgers
        Deputy Director, U.S. Strategy
        Our Children's Trust
        P.O. Box 5181
        Eugene, Oregon 97405
        Email: andrea@ourchildrenstrust.org

Any Party may, by written notice to the other Parties, change its designated notice recipient or notice addresses provided above.

**8. No Admissions.**

The Parties and their counsel understand that this Agreement does not constitute an admission by Defendants of any current or prior violation of the Hawaiʻi Constitution or other violation of any law, or of any wrongdoing of any kind. This Agreement is for the purposes of resolving and settling all actual and potential disputes among the Parties to avoid further controversy, litigation and expense; provided, however, that this Agreement may be used in an action by a Party to enforce its terms and provisions.

**9. Jurisdiction and Dismissal.**

The Parties will prepare and file a Proposed Order for signature and entry by the Court that (i) approves the terms of the Agreement as in the best interests of and fair to the Youth Plaintiffs, (ii) declares that Plaintiffs' Complaint is fully and finally resolved, and (iii) reserves jurisdiction solely to enforce the Agreement and provides for the automatic dismissal of the case as provided herein.

The Parties agree that the Court will retain continuing jurisdiction to enforce the Parties' obligations under the Agreement until December 31, 2045, or the date upon which the Zero Emissions Clean Economy Target (HRS § 225P-5) has been achieved, whichever is earlier. This case will be automatically dismissed the sooner of December 31, 2045, or the achievement of the Zero Emissions Clean Economy Target.

This Agreement shall not be amended, supplemented, or modified other than in a writing executed by both Parties and approved by the Court.

**10. Dispute Resolution.**

Unless otherwise expressly provided for in this Agreement, the dispute resolution procedures of this Section shall be the exclusive mechanism for resolving disputes arising under this Agreement. The Parties shall attempt to resolve any disagreements concerning this Agreement expeditiously and informally, pursuant to the following procedures:

a. A Party first must notify all other Parties in writing when a dispute or concern arises and request an opportunity to discuss the disputed issues or concerns; each Party agrees in good faith to make a concerted effort to resolve the dispute or concern through direct

11

   negotiations without the need for judicial intervention or mediation;

b. If the Parties are unable to resolve the dispute within a two-week period of time, or longer upon agreement of the Parties, and upon written notice to all Parties, all Parties agree to select a mediator, or ask the court to appoint a mediator, and to notify the mediator and work cooperatively with the mediator to reach agreement; and

c. If no mutually agreeable resolution is reached within a 30-day period from the first mediation session, either Party may bring a motion in this Court under Case Number 1CCV-22-0000631 to enforce the Agreement.

Each side agrees to bear its own attorneys' fees and costs in connection with the dispute resolution process, including bringing a motion to enforce the Agreement.

**11. Joint Press Conference.**

On a mutually agreed upon date, HDOT, Defendant Sniffen, and Plaintiffs agree to hold a joint press conference at which a representative from the Office of Governor Green will be present, and the Parties agree to issue a joint press statement as the initial announcement of the successful resolution of this case by the Parties. The Parties agree not to disclose or speak to the media about the Agreement until such mutually agreed upon date.

**12. Additional Terms.**

a. The Parties recognize that HDOT's authority has limitations, and that HDOT cannot take any actions beyond the scope of the authority allocated to it under federal law and the laws and Constitution of the State of Hawaiʻi. Nothing in this Agreement is intended to or does obligate HDOT to perform any task outside of the law or the scope of its authority or take any action that infringes on the legislature's authority. Nor does this Agreement impose on Defendants any obligations to expend funds in furtherance of any action beyond those funds that are appropriated by the legislature, or otherwise available to HDOT, and are legally available for such action. HDOT will make best efforts to secure funding from the legislature and the federal government, and make rule and policy changes as it deems necessary to meet the terms of this Agreement.

b. Other than Defendants' obligation to perform the specific actions in this Agreement by the deadlines set forth herein, nothing in this Agreement shall be construed to limit or modify any discretion accorded to Defendants under the Hawaiʻi Constitution, Hawaiʻi law, the Hawaiʻi Administrative Procedure Act, or general principles of administrative law in taking the actions that are the subject of this Agreement.

**13. Interpretation and Construction.**

The Parties agree that this Agreement shall constitute a complete and final settlement of all claims in the Complaint, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement. The Parties treat this

12

Agreement as jointly drafted, and any rules of construction that construe any ambiguities against the drafting Party shall be inapplicable in any dispute concerning the interpretation of this Agreement.

**14. Severability.**

Each term and provision of this Agreement shall be considered severable and divisible from every other term and provision, and the invalidity or unenforceability of any one term or provision shall not limit the validity and enforceability, in whole or in part, of any other term or provision hereof.

**15. Execution of Agreement.**

This Agreement may be executed in counterparts, and electronic or facsimile signatures will be treated the same as original signatures. It shall become effective on the date of the last execution. The attorneys signing below represent that they have reviewed the full Agreement with their clients, have obtained the express written consent of their clients under HRS § 605-7, and are authorized to execute this Agreement.

IN WITNESS WHEREOF, the Parties agree to the terms set forth herein as evidenced by the signature of their authorized representatives below.

**ATTORNEYS FOR PLAINTIFFS**

Isaac H. Moriwake
Managing Attorney
Earthjustice

Date: May 16, 2024

Andrea K. Rodgers (*Pro Hac Vice*)
Deputy Director, U.S. Strategy
Our Children's Trust

Date: May 15, 2024

13

**ATTORNEY FOR DEFENDANTS**

*Anne E. Lopez*         Date: May 16, 2024

Anne E. Lopez
Attorney General
State of Hawaiʻi

14