RECEIVED

JUL 0 8 2025

Clerk, U S District Court
District Of Montana
Butte, Montana

Austin Knudsen
*Attorney General of Montana*
Christian B. Corrigan
  *Solicitor General*
Brent Mead
  *Deputy Solicitor General*
Michael D. Russell
  *Assistant Attorney General*
MONTANA DEPARTMENT OF JUSTICE
P.O. Box 201401
Helena, Montana 59620-1401
(406) 444-2026
Christian.Corrigan@mt.gov
Brent.Mead2@mt.gov
Michael.Russell@mt.gov

Justin D. Smith*
JAMES OTIS LAW GROUP, LLC
530 Maryville Centre Drive
Suite 230
St. Louis, Missouri 63141
(816) 678-2103
Justin.Smith@james-otis.com
* *Pro hac vice application
forthcoming*

*(Additional Counsel listed in signature block)*

*Counsel for Proposed Intervenor-Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| EVA LIGHTHISER; et al., | Case No. 2:25-cv-00054-DLC |
| Plaintiffs, | **BRIEF IN SUPPORT OF MOTION TO INTERVENE AS INTERVENOR-DEFENDANTS BY STATE OF MONTANA, 18 OTHER STATES, AND ONE TERRITORY** |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States; et al., | |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................iii

INTRODUCTION.............................................................................. 1

BACKGROUND ................................................................................ 3

    A.    Three Executive Orders.................................................. 3

    B.    Plaintiffs' Policy Grievances....................................... 5

    C.    Proposed Intervenors.................................................. 6

ARGUMENT ..................................................................................... 9

    I.    Legal Standard .......................................................... 9

    II.    The State Intervenors Are Entitled to Intervene as of Right... 11

        A.    The State Intervenors' Motion is timely................................ 11

        B.    The State Intervenors have a significant protectable interest relating to the property or transaction that is the subject of the action. ................................................................ 13

        C.    The disposition of this case will, as a practical matter, impair or impede the State Intervenors' ability to protect their significant interests....................................... 15

        D.    The existing parties do not adequately represent the interests of the State Intervenors......................................... 16

    III.    In the Alternative, the Court Should Grant Permissive Intervention ............................................................. 20

CONCLUSION ................................................................................ 22

i

CERTIFICATE OF SERVICE..................................................................32

CERTIFICATE OF COMPLIANCE.........................................................32

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Arakaki v. Cayetano,*
    324 F.3d 1078 (9th Cir. 2003) ............................................................ 16

*Ashley Creek Props., LLC v. Timchak,*
    No. 08-cv-412, 2009 WL 585786 (D. Idaho Mar. 5, 2009) .................. 10

*Cal. Dep't of Social Servs. v. Thompson,*
    321 F.3d 835 (9th Cir. 2003) ............................................................. 10

*California ex rel. Lockyer v. United States,*
    450 F.3d 436 (9th Cir. 2006) ............................................................. 15

*Citizens for Balanced Use v. Mont. Wilderness Ass'n,*
    647 F.3d 893 (9th Cir. 2011) .................................................... 12, 15-17

*Donnelly v. Glickman,*
    159 F.3d 405 (9th Cir. 1998) ........................................................ 20-21

*Freedom from Religion Found., Inc. v. Geithner,*
    644 F.3d 836 (9th Cir. 2011) ............................................................. 21

*Fresno Cnty. v. Andrus,*
    622 F.2d 436 (9th Cir. 1980) ....................................................... 14, 19

*HRPT Props. Trust v. Lingle,*
    No. 09-cv-375, 2009 WL 10741365 (D. Haw. Oct. 21, 2009) .............. 10

*Issa v. Newsom,*
    No. 2:20-cv-1044, 2020 WL 3074351 (E.D. Cal. June 10, 2020) .. 17, 19

*Jackson v. Abercrombie,*
    282 F.R.D. 507 (D. Haw. 2012) ......................................................... 12

*Medtronic Vascular Inc. v. Advanced Cardiovascular Sys., Inc.*,
    No. 06-cv-1066, 2007 WL 2155701 (N.D. Cal. July 26, 2007)............ 10

*Miccosukee Tribe of Indians of Fla. v. EPA*,
    No. 22-cv-22459, 2022 WL 19296576 (S.D. Fla. Oct. 14, 2022) ......... 18

*Portland Audubon Soc'y v. Hodel*,
    866 F.2d 302 (9th Cir. 1989)................................................................ 10

*Prete v. Bradbury*,
    438 F.3d 949 (9th Cir. 2006)............................................................ 9, 11

*Sagebrush Rebellion, Inc. v. Watt*,
    713 F.2d 525 (9th Cir. 1983)................................................................ 10

*Smith v. Los Angeles Unified Sch. Dist.*,
    830 F.3d 843 (9th Cir. 2016)...........................................................11-13

*Smith v. Marsh*,
    194 F.3d 1045 (9th Cir. 1999).............................................................. 11

*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001).......................................................10, 15-20

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972).....................................................................16-17, 19

*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004)............................................................ 9, 11

*United States v. City of Los Angeles*,
    288 F.3d 391 (9th Cir. 2002).............................................................9-10

*United States v. State of Oregon*,
    745 F.2d 550 (9th Cir. 1984)................................................................ 12

*Westchester Fire Ins. Co. v. Mendez*,
    585 F.3d 1183 (9th Cir. 2009).............................................................. 2

*Wilderness Soc'y v. United States Forest Serv.,*
    630 F.3d 1173 (9th Cir. 2011) .............................................. 10-11, 13-14

*WildEarth Guardians v. Haaland,*
    No. 21-cv-175, 2021 WL 12241918 (D.D.C. July 14, 2021) ................ 18

*WildEarth Guardians v. Jewell,*
    320 F.R.D. 1 (D.D.C. 2017) ................................................................. 18

## Rules

Fed. R. Civ. P. 24(a)(2) ............................................................................ 9

Fed. R. Civ. P. 24(b)(1)(B) ................................................................. 9, 20

Fed. R. Civ. P. 24(b)(3) ........................................................................ 21

## Other Authorities

7C WRIGHT & MILLER, FED. PRAC. & PROC. § 1917 (3d ed. 2010) ........... 21

Exec. Order No. 14154, Unleashing American Energy, 90 Fed. Reg.
    8353 (Jan. 29, 2025) ..................................................................... 3-4

Exec. Order No. 14156, Declaring a National Energy Emergency, 90
    Fed. Reg. 8433 (Jan. 29, 2025) ............................................................ 4

Exec. Order No. 14261, Reinvigorating America's Beautiful Clean Coal
    Industry and Amending Executive Order 14241, 90 Fed. Reg. 15517
    (Apr. 14, 2025) ............................................................................... 4-5

Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment ........ 15

## INTRODUCTION

The State of Montana, by and through Attorney General Austin Knudsen, 18 other States (Alaska, Arkansas, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Louisiana, Missouri, Nebraska, North Dakota, Oklahoma, South Dakota, Texas, Utah, West Virginia, and Wyoming) and one Territory (the U.S. Territory of Guam), by and through their Attorneys General (collectively, the "State Intervenors"), move this Court for leave to intervene as Defendants in this important matter. The State Intervenors seek to intervene as of right because they have significant property and economic interests in this matter that only they can adequately represent. In the alternative, they seek permissive intervention.

President Donald J. Trump's Executive Orders unleashing American energy have already provided tremendous benefits to the State Intervenors and their millions of citizens, as well as the promise and hope for a more prosperous, strong, and peaceful future, especially among those "forgotten" communities whose very livelihoods depend on a revival of America's unparalleled energy sector. The energy policy of the United

1

States, led by President Trump's Executive Orders, will continue to create jobs and improve lives.

Discontent with the new policies of the new Administration, Plaintiffs raise policy grievances under the guise of unenumerated "constitutional" harms. But the State Intervenors have unique interests in this case because it threatens their economies, the use of their properties, and their state budgets. Countless jobs could be affected by this litigation.

The State Intervenors seek to intervene to defend their significant interests. Upon intervening, the State Intervenors intend to file a Motion to Dismiss Plaintiffs' Complaint by August 4, 2025, in accordance with the schedule set by the Court. *See* Doc. 31; *see also Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1188 (9th Cir. 2009) ("Courts, including this one, have approved intervention motions without a pleading where the court was otherwise apprised of the grounds for the motion.") (citation omitted). The State Intervenors' intervention is not a waiver of their sovereign immunity.

Plaintiffs plan to take a position after reviewing the State Intervenors' papers. The United States takes no position on this Motion.

2

## BACKGROUND

### A.    Three Executive Orders

On January 20, 2025, his first day back in the Oval Office, President Donald J. Trump signed a pair of Executive Orders designed to fulfill one of his central campaign promises to the American voters: the promise to unleash American energy right here in the United States.  He signed a third Order shortly thereafter, on April 8, 2025.  State Intervenors and their citizens already are benefitting from these Executive Orders.

*First*, Executive Order 14154, "Unleashing American Energy," aims to "restore American prosperity," particularly for "those men and women who have been forgotten by our economy in recent years," and to "rebuild our Nation's economic and military security."  Doc. 1-1, at 1 (copy of the Order); *see* Exec. Order No. 14154, Unleashing American Energy, 90 Fed. Reg. 8353, 8353 (Jan. 29, 2025).  The Order aims to remove unnecessary regulatory "red tape" and alleviate "high energy costs" that "devastate American consumers" by "driving up the costs of transportation, heating, utilities, farming, and manufacturing."  *Id.*  The Order realigns the "policy of the United States" to, *inter alia*, "encourage energy exploration and production on Federal lands," support "creat[ion of] jobs and

3

prosperity at home," "reduce the global influence of malign" actors, and "promote true consumer choice, which is essential for economic growth and innovation." *Id.*

*Second*, Executive Order 14156, "Declaring a National Energy Emergency," seeks to expedite and prioritize the unleashing of American energy and all the benefits flowing therefrom to the American people and the State Intervenors. *See* Doc. 1-2 (copy of the Order); Exec. Order No. 14156, Declaring a National Energy Emergency, 90 Fed. Reg. 8433 (Jan. 29, 2025). Among other things, this Order aims to expeditiously remedy the "high energy prices that devastate Americans, particularly those living on low- and fixed-incomes" and to bolster the "national and economic security" of the United States. Doc. 1-2, at 1.

*Third*, Executive Order 14261, "Reinvigorating America's Beautiful Clean Coal Industry and Amending Executive Order 14241," encourages increased domestic energy production, including coal. Doc. 1-3, at 1 (copy of the Order); Exec. Order No. 14261, Reinvigorating America's Beautiful Clean Coal Industry and Amending Executive Order 14241, 90 Fed. Reg. 15517, 15517 (Apr. 14, 2025). This Order aims, *inter alia,* to "lower the cost of living" and "secure America's economic prosperity and national

4

security." *Id.* It seeks to strengthen an industry that "has historically employed hundreds of thousands of Americans," including many citizens of State Intervenors. *Id.* The Order aims to "increase our [Nation's] energy supply, lower electricity costs, stabilize our grid, create high-paying jobs, support burgeoning industries, and assist our allies." *Id.* The Order realigns "the policy of the United States" to make domestic coal production "a national priority" and to "remov[e] Federal regulatory barriers" to coal production. *Id.*

## B.   Plaintiffs' Policy Grievances

Plaintiffs, discontent with the policy positions of the new Administration when it comes to unleashing American energy—and the ensuing creation of hundreds of thousands of new jobs and economic security for the State Intervenors and all Americans—seek declaratory and injunctive relief against the Executive Orders.   Doc. 1, at 125. Plaintiffs ask this Court to grant nationwide relief that will impact State Intervenors, based on alleged violations of "unenumerated liberty interests." *Id.* at 104.

## C.    Proposed Intervenors

Proposed State Intervenors are sovereign States of the United States of America who, by and through their respective Attorneys General, seek to intervene in this action to protect their interests, which include significant property and economic interests.  At stake is the use of vast swaths of land, particularly land rich with natural resources, contained within the States; as well as employment of hundreds of thousands of Americans; the economic restoration of struggling communities; the cost of energy; attracting business and employers; tax revenues; and the potential need to reallocate resources, not to mention the potential reality of wasted time and resources spent in furtherance of the Executive Orders.

Indeed, Plaintiffs' Complaint identifies numerous effects on the State of Montana's interests.   Plaintiffs complain that "actions to implement the challenged [Executive Orders] and resulting directives are occurring in" Montana.  Doc. 1, ¶¶ 9, 43, 175.  They rely on alleged environmental conditions in towns and communities in Montana, including Livingston, Broadus, Kalispell, Missoula, Bozeman, Polson, Montana City, and Red Lodge. *Id.* ¶¶ 10-22.  The State of Montana has

6

an interest in the disposition of this action because it will affect Montana's counties and cities.

Plaintiffs also complain of policies surrounding certain mining entities and infrastructure located in Montana, including the Spring Creek Mine and the Colstrip Generating Station, as well as NorthWestern Energy and Talen Montana. *Id.* ¶¶ 20, 165, 176. They complain of new "coal leasing and extraction" opportunities being pursued in Montana. *Id.* ¶ 179-81. The State of Montana has an interest in this case because it will directly impact the business done in the energy sector within its borders, as well as the employment implications and development implications involved that will impact so many of its citizens.

Plaintiffs presume Montana's position regarding interpretation of state law and how the State understands a decision by the Montana Supreme Court. *Id.* ¶ 23. Plaintiffs rely on Montana's Constitution, particularly those provisions relating to Montana's public trust resources, "including waters, the atmosphere, and fish and wildlife." *Id.* ¶¶ 24, 267-69. They also rely on how Montana's state courts interpret

these provisions. *Id.* The State of Montana has an interest in voicing, on its own behalf, its position on its Constitution, its case law, and its courts.

Plaintiffs allege effects from the Executive Orders on costs of energy to Montana citizens. *Id.* ¶ 92. They allege effects on climate that are, allegedly, particularly acute in Montana. *Id.* ¶¶ 93-94, 109. The State of Montana has an interest in the cost of energy impacting its citizens.

Plaintiffs allege many negative ramifications of the Executive Orders on Montana's universities, including Montana State University and the University of Montana. *Id.* ¶ 146. The State of Montana has an interest in how its universities are operated, and how this case might impact its universities.

The other States joining in this Motion have the same interests as applied to their States. Although Plaintiffs use examples from Montana, Plaintiffs seek relief that would impact all States. Thus, all State Intervenors have an interest in the disposition of this action because it will affect their citizens, their economy, and their institutions.

No existing party can adequately represent the State Intervenors' interests, as they are largely unique to the States.

# ARGUMENT

## I.    Legal Standard

A court "must permit any [applicant] to intervene" who demonstrates that: (1) the application to intervene is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest." Fed. R. Civ. P. 24(a)(2); *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) (citation and quotations omitted). "[T]he requirements for intervention are broadly interpreted in favor of intervention." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004); *see also United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002) ("courts generally construe [Rule 24(a)] broadly in favor of proposed intervenors"). Additionally, courts grant permissive intervention when the applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

9

"'[A] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts.'" *Wilderness Soc'y v. United States Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (quoting *City of Los Angeles*, 288 F.3d at 397-98). Consistent with this "traditionally liberal policy in favor of intervention," *id.*, "[c]ourts are to take all well-pleaded, nonconclusory allegations in the motion to intervene … as true absent sham, frivolity or other objections," *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

Although the State Intervenors enjoy Article III standing, "[i]n the Ninth Circuit, standing is not a prerequisite to intervention." *HRPT Props. Trust v. Lingle*, No. 09-cv-375, 2009 WL 10741365, at *2 (D. Haw. Oct. 21, 2009) (collecting cases); *see also Cal. Dep't of Social Servs. v. Thompson*, 321 F.3d 835, 846 n.9 (9th Cir. 2003) (noting an intervenor "did not need to meet Article III standing requirements to intervene"); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527-29 (9th Cir. 1983); *Medtronic Vascular Inc. v. Advanced Cardiovascular Sys., Inc.*, No. 06-cv-1066, 2007 WL 2155701, at *1 (N.D. Cal. July 26, 2007) ("a party seeking to intervene as of right under Rule 24(a) need not possess constitutional Article III standing in this circuit"); *Ashley Creek Props.*,

10

*LLC v. Timchak*, No. 08-cv-412, 2009 WL 585786, at *1 (D. Idaho Mar. 5, 2009); *Portland Audubon Soc'y v. Hodel*, 866 F.2d 302, 308 n.1 (9th Cir. 1989) (abrogated on other grounds by *Wilderness Soc'y*, 630 F.3d 1173) (observing that the Ninth Circuit "decline[s] to incorporate an independent standing inquiry into [its] intervention test").

## II. The State Intervenors Are Entitled to Intervene as of Right

The State Intervenors satisfy all four factors to intervene as of right. *See Prete*, 438 F.3d at 954.

### A. The State Intervenors' Motion is timely.

Courts focus on three primary factors when determining timeliness: (1) the stage of the proceedings; (2) the prejudice to other parties; and (3) the reason for and length of delay. *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (citing *Alisal Water*, 370 F.3d at 921). The "crucial date" of timeliness is "when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Id.* (quoting *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999)).

The State Intervenors easily satisfy the timeliness requirement. *First*, the proceedings have just begun, with the Complaint filed May 29,

11

2025, and without any responsive pleading filed or dispositive issues otherwise decided by the Court. Intervention will not disrupt the schedule set by the Court, *see* Doc. 31, and the State Intervenors will comply with that schedule. The State Intervenors' Motion is undoubtedly punctual. *See, e.g., Jackson v. Abercrombie*, 282 F.R.D. 507, 513 (D. Haw. 2012) (noting timeliness of motion to intervene filed "less than three months after" the complaint and even "after Defendants filed their answers") (observing the Ninth Circuit described "the same timing" of the motion as "made at an early stage of the proceedings" (quoting *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011))).

*Second*, the existing parties will not suffer any prejudice. "[T]he only 'prejudice' that is relevant under this factor is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented—and not from the fact that including another party in the case might make resolution more 'difficult.'" *Smith*, 830 F.3d at 857 (citing *United States v. State of Oregon*, 745 F.2d 550, 552-53 (9th Cir. 1984)). In other words, delay is the key consideration. Here, the

State Intervenors' Motion is made at the very beginning of these proceedings, which by definition demonstrates that it is made when the State Intervenors "knew, or reasonably should have known" that their interests were not being adequately represented; i.e., the "crucial date" for timeliness analysis. *See id.* at 854, 857.

*Third*, for the same reason, the State Intervenors satisfy the final factor. As already explained, there has been no delay by the State Intervenors in filing this Motion.

Therefore, under the totality of the circumstances, the State Intervenors' Motion is timely.

## B.    The State Intervenors have a significant protectable interest relating to the property or transaction that is the subject of the action.

Courts "do not require" proposed intervenors to show "a specific legal or equitable interest"; instead, "it is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Wilderness Soc'y*, 630 F.3d at 1179 (cleaned up). Accordingly, "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with

efficiency and due process." *Id.* (quoting *Fresno Cnty. v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980)). This is consistent with the Ninth Circuit's "traditionally liberal policy in favor of intervention." *Id.*

The State Intervenors easily satisfy this standard. At stake for the State Intervenors in this litigation are significant property and economic interests, including use of vast swaths of land and natural resources, employment of hundreds of thousands of their citizens, the economic restoration of struggling communities, the cost of energy, attracting business and employers, tax revenues, and the reallocation and potentially wasted allocation of significant state resources. Plaintiffs' push for permanent injunctions against the Executive Orders, *see* Doc. 1, at 119, directly implicates the effects of those Orders upon the State Intervenors' significant property and economic interests.

Therefore, the State Intervenors are "apparently concerned [parties]" in this matter, *Wilderness Soc'y*, 630 F.3d at 1179, and satisfy this factor in favor of intervention.

14

**C.    The disposition of this case will, as a practical matter, impair or impede the State Intervenors' ability to protect their significant interests.**

When a proposed intervenor demonstrates a significant protectable interest, courts often "have little difficulty concluding that the disposition of this case may, as a practical matter, affect it." *California ex rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006); *see also* Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment ("If [a proposed intervenor] would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene ...."); *Berg*, 268 F.3d at 822.

Here, the State Intervenors have many significant protectable interests. *See supra.* Should Plaintiffs succeed in enjoining the Executive Orders and halting its many benefits flowing to State Intervenors, the State Intervenors' ability to protect their significant interests would, as a practical matter, be directly impaired. *See, e.g., Citizens for Balanced Use*, 647 F.3d at 898 (finding that proposed intervenor-defendant, in an action for injunction of a government order, would suffer impairment of its interests, as a practical matter, should the plaintiffs prevail).

Therefore, the State Intervenors are "entitled to intervene." *Berg*, 268 F.3d at 822.

### D.    The existing parties do not adequately represent the interests of the State Intervenors.

In evaluating whether existing parties adequately represent the interests of proposed intervenors, courts consider three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)). When a proposed intervenor and an existing party share the same "ultimate objective," a presumption of adequacy arises which can be rebutted by a compelling showing of inadequacy. *Id.* (citations omitted). However, "intervention of right does not require an absolute certainty ... that existing parties will not adequately represent [the proposed intervenor's] interests." *Id.* at 900. Rather, the proposed intervenor need simply show that representation of its interests "may be" inadequate. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538

16

n.10 (1972). Indeed, "the burden of showing inadequacy is 'minimal' ...."
*Berg*, 268 F.3d at 823 (citing *Trbovich*, 404 U.S. at 538 n.10). Accordingly,
"[a]ny doubt as to whether the existing parties will adequately represent
the intervenor should be resolved in favor of intervention." *Issa v.
Newsom*, No. 2:20-cv-1044, 2020 WL 3074351, at *3 (E.D. Cal. June 10,
2020) (citation omitted).

The State Intervenors satisfy these requirements. The many
significant interests unique to the State Intervenors demonstrates that
they bring many "necessary elements to the proceeding that other parties
would neglect." *See Citizens for Balanced Use*, 647 F.3d at 898. Because
the Federal Defendants do not share the many unique significant
interests of the State Intervenors, the Federal Defendants will *not*
"undoubtedly make all of [the State Intervenors'] arguments" before this
Court. *See id.* Nor are they capable of doing so. Only the State
Intervenors have the capacity, competency, and incentives to represent
their unique interests not shared by the Federal Defendants. Indeed, "it
is not [State Intervenors'] burden ... to anticipate specific differences in
trial strategy. It is sufficient for [State Intervenors] to show that, because

17

of the difference in interests, it is likely that Defendants will not advance the same arguments as [State Intervenors]." *Berg*, 268 F.3d at 824.

For this reason, courts have routinely permitted States to intervene as defendants alongside the federal government. *See, e.g., WildEarth Guardians v. Jewell*, 320 F.R.D. 1, 2, 4-5 (D.D.C. 2017) (granting States of Wyoming, Colorado, and Utah to intervene as defendants alongside federal defendants) (acknowledging other cases resulting in similar interventions (collecting cases)); *id.* at 5 (finding "the Federal Defendants do not adequately represent the interests of Wyoming, Colorado, or Utah" because "[w]hile the Federal Defendants' duty runs to the interests of the American people as a whole, the state-intervenors will primarily consider the interests of their own citizens" and "may have unique sovereign interests not shared by the federal government"); *Miccosukee Tribe of Indians of Fla. v. EPA*, No. 22-cv-22459, 2022 WL 19296576, at *2 (S.D. Fla. Oct. 14, 2022) (granting intervention to State of Florida even though the federal defendants shared similar objective, noting that the federal defendants' "interests ... are aligned with but distinct from the Florida Applicants' interests"); *see also WildEarth Guardians v. Haaland*, No. 21-cv-175, 2021 WL 12241918, at *2 (D.D.C. July 14, 2021) ("Generally, the

18

[federal] government does not adequately represent the interests of an intervenor because the government has an obligation to represent the interests of all its citizens while an intervenor's interests are often more specific.").

To be sure, the State Intervenors and the existing Federal Defendants do share the same "ultimate objective" of defending the Executive Orders. *See Berg*, 268 F.3d at 823. But the State Intervenors have no difficulty making the compelling showing to rebut the "presumption of adequacy of representation," *see id.*, for all the reasons stated. After all, "the burden of showing inadequacy is 'minimal,' and the applicant need only show that representation of its interests by existing parties 'may be' inadequate." *Id.* (citing *Trbovich*, 404 U.S. at 538 n.10); *see also id.* at 823 (finding presumption of adequacy rebutted where interests were not "sufficiently congruent" and where proposed intervenors would "likely offer important elements to the proceedings that the existing parties would likely neglect"); *Fresno Cnty.*, 622 F.2d at 439 (finding that federal entity "does not represent" a proposed intervenor's interests "fully," despite "virtually identical" arguments made by each in opposition to a preliminary injunction); *Issa*, 2020 WL

19

3074351, at *3 (finding that "[a]lthough Defendants and the Proposed Intervenors fall on the same side of the dispute" over the implementation of the governor's executive orders, the "interests in the implementation" differed such that the parties' "arguments" "turn[ed] on" their different interests).

Therefore, the State Intervenors have met their "minimal" burden demonstrating that the existing parties do not adequately represent their interests. *See Berg*, 268 F.3d at 823.

The State Intervenors are entitled to intervene as of right.

## III.  In the Alternative, the Court Should Grant Permissive Intervention

The State Intervenors, in the alternative, request that the Court grant permissive intervention under Rule 24(b). Courts grant permissive intervention when the applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "An applicant who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). "[T]he

20

independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Here, the State Intervenors have demonstrated that this Motion is timely. *See supra*. By the same token, intervention would not "unduly delay or prejudice the adjudication" of this case. *See* Fed. R. Civ. P. 24(b)(3). Moreover, in this federal-question case, the "independent jurisdictional grounds requirement does not apply." *Geithner*, 644 F.3d at 844; *id.* ("In federal-question cases there should be no problem of jurisdiction with regard to an intervening defendant ...." (quoting 7C WRIGHT & MILLER, FED. PRAC. & PROC. § 1917 (3d ed. 2010))).

The State Intervenors' defense of the Executive Orders as constitutional also "shares a common question of law or fact with [Plaintiffs'] action." *See Donnelly*, 159 F.3d at 412. The State Intervenors are not changing the "question[s] of law or fact" underlying Plaintiffs'

21

causes of action. Moreover, Plaintiffs' action, if successful, would directly harm the State Intervenors' significant interests.

Therefore, having satisfied all the factors, the State Intervenors request, in the alternative, permission to intervene.

## CONCLUSION

For these reasons, the State Intervenors respectfully request that the Court grant their intervention as of right or, in the alternative, permissive intervention.


Dated: July 8, 2025         Respectfully Submitted,

**AUSTIN KNUDSEN**
Attorney General of Montana

*/s/ Christian B. Corrigan*
Christian B. Corrigan
  *Solicitor General*
Brent Mead
  *Deputy Solicitor General*
Michael D. Russell
  *Assistant Attorney General*
MONTANA DEPARTMENT OF JUSTICE
P.O. Box 201401
Helena, Montana 59620-1401
(406) 444-2026
Christian.Corrigan@mt.gov
Brent.Mead2@mt.gov
Michael.Russell@mt.gov

*/s/ Justin D. Smith*
Justin D. Smith*
JAMES OTIS LAW GROUP, LLC
530 Maryville Centre Drive
Suite 230
St. Louis, Missouri 63141
(816) 678-2103
Justin.Smith@james-otis.com
* *Pro hac vice application forthcoming*

*Counsel for State of Montana*


TREG TAYLOR
Attorney General of Alaska

*/s/ David W. Duffy*
David W. Duffy*, Alaska Bar No. 0605016
Assistant Attorney General
Alaska Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Phone: (907) 269-5601
Facsimile: (907) 276-3697
david.duffy@alaska.gov
* *Pro hac vice application forthcoming*

*Counsel for State of Alaska*


TIM GRIFFIN
Attorney General of Arkansas

*/s/ Noah P. Watson*
Noah P. Watson*
Deputy Solicitor General
Office of the Arkansas Attorney General
101 West Capitol Avenue

23

Little Rock, Arkansas 72201
(501) 682-1019
noah.watson@arkansasag.gov
* *Pro hac vice application forthcoming*

*Counsel for State of Arkansas*


JAMES UTHMEIER
Attorney General of Florida

Jeffrey P. DeSousa
*Acting Solicitor General*

*/s/ Christine K. Pratt*
Christine K. Pratt
Assistant Solicitor General
Florida Attorney General's Office
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
Christine.pratt@myfloridalegal.com
* *Pro hac vice application forthcoming*

*Counsel for State of Florida*


CHRISTOPHER M. CARR
Attorney General of Georgia

*/s/ Elijah J. O'Kelley*
Elijah J. O'Kelley
Deputy Solicitor General
Office of the Georgia Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(470) 816-1342

24

eokelley@law.ga.gov
* *Pro hac vice application forthcoming*

*Counsel for State of Georgia*


RAÚL R. LABRADOR
Attorney General of Idaho

*/s/ Michael A. Zarian*
Michael A. Zarian
*Deputy Solicitor General*
Office of the Idaho Attorney General
700 W Jefferson St #210
Boise, Idaho 83720
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
michael.zarian@ag.idaho.gov
* *Pro hac vice application forthcoming*

*Counsel for State of Idaho*


THEODORE E. ROKITA
Attorney General of Indiana

*/s/ James A. Barta*
James A. Barta
*Solicitor General*
Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, Indiana 46204
Phone: (317) 232-0709
Fax: (317) 232-7979
Email: James.Barta@atg.in.gov
* *Pro hac vice application forthcoming*

25

*Counsel for State of Indiana*

BRENNA BIRD
Attorney General of Iowa

*/s/ Eric H. Wessan*
Eric H. Wessan*
Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov
* *Pro hac vice application forthcoming*

*Counsel for State of Iowa*

KRIS W. KOBACH
Attorney General of Kansas

*/s/ James R. Rodriguez*
James R. Rodriguez (KS 29172)
  *Assistant Attorney General*
Kansas Office of the Attorney General
120 SW 10th Avenue, Floor 2
Topeka, Kansas 66612
Phone: (785) 368-8197
jay.rodriguez@ag.ks.gov
* *Pro hac vice application forthcoming*

*Counsel for State of Kansas*

LIZ MURRILL
Attorney General of Louisiana

*/s/ J. Benjamin Aguiñaga*
J. Benjamin Aguiñaga*
  *Solicitor General*
Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, Louisiana 70804
(225) 326-6766
AguinagaB@ag.louisiana.gov
* *Pro hac vice application forthcoming*

*Counsel for State of Louisiana*


ANDREW T. BAILEY
Attorney General of Missouri

*/s/ Samuel C. Freedlund*
Samuel C. Freedlund, #73707MO
  *Deputy Solicitor General*
Office of the Attorney General
815 Olive Street, Suite 200
St. Louis, Missouri 63101
Tel. (314) 340-7366
Fax (573) 751-0774
Samuel.Freedlund@ago.mo.gov
* *Pro hac vice application forthcoming*

*Counsel for State of Missouri*


MICHAEL T. HILGERS
Attorney General of Nebraska

*/s/ Cody Barnett*
Cody Barnett*

27

*Solicitor General*
Office of the Attorney General
1445 K Street, Rm 2115
Lincoln, Nebraska 68508
(402) 471-2683
cody.barnett@nebraska.gov
* *Pro hac vice application forthcoming*

*Counsel for State of Nebraska*


DREW H. WRIGLEY
Attorney General of North Dakota

*/s/ Philip Axt*
Philip Axt*
  *Solicitor General*
600 E. Boulevard Ave., Dept. 125
Bismarck, North Dakota 58505
Phone: (701) 328-2210
Email: pjaxt@nd.gov
* *Pro hac vice application forthcoming*

*Counsel for State of North Dakota*


GENTNER DRUMMOND
  Attorney General of Oklahoma

*/s/ Garry M. Gaskins, II*
Garry M. Gaskins, II*
  *Solicitor General*
Jennifer L. Lewis
  *Deputy Attorney General*
Office of the Attorney General of Oklahoma
313 NE Twenty-First St.
Oklahoma City, Oklahoma 73105
(405) 521-3921

28

garry.gaskins@oag.ok.gov
*Pro hac vice application forthcoming*

*Counsel for State of Oklahoma*

MARTY J. JACKLEY
Attorney General of South Dakota

*/s/ Amanda Miiller*
By: Amanda Miiller*, SD Bar No. 4271
  *Deputy Attorney General*
1302 East Highway 14, Suite 1
Pierre, South Dakota 57501-8501
Telephone: (605) 773-3215
amanda.miiller@state.sd.us
*Pro hac vice application forthcoming*

*Counsel for State of South Dakota*


KEN PAXTON
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Ralph Molina
Deputy First Assistant Attorney General

Austin Kinghorn
Deputy Attorney General for Civil Litigation

Kellie E. Billings-Ray
Chief, Environmental Protection Division

*/s/ Wesley S. Williams*
Wesley S. Williams*
  *Assistant Attorney General*

29

Texas Bar No. 24108009
Wesley.Williams@oag.texas.gov
OFFICE OF THE ATTORNEY GENERAL
ENVIRONMENTAL PROTECTION DIVISION
P.O. Box 12548 (MC-066)
Austin, Texas 78711-2548
(512) 463-2012 | Fax: (512) 320-0911
*Pro hac vice application forthcoming*

*Counsel for State of Texas*


DEREK E. BROWN
Attorney General of Utah

*/s/ Stanford Purser*
Stanford Purser*
  *Solicitor General*
Office of the Utah Attorney General
160 E. 300 S., 5th floor
Salt Lake City, Utah 84111
(801) 366-0533
spurser@agutah.gov
*Pro hac vice application forthcoming*

*Counsel for State of Utah*


JOHN B. MCCUSKEY
Attorney General of West Virginia

*/s/ Michael R. Williams*
Michael R. Williams*
  *Solicitor General*
Office of the Attorney General
of West Virginia
State Capitol Complex
Building 1, Room E-26

1900 Kanawha Blvd. E
Charleston, West Virginia 25301
(304) 558-2021
michael.r.williams@wvag.gov
*Pro hac vice application forthcoming*

*Counsel for State of West Virginia*


KEITH G. KAUTZ
Attorney General of Wyoming

*/s/ Ryan Schelhaas*
Ryan Schelhaas*
  *Chief Deputy Attorney General*
Office of the Wyoming Attorney General
109 State Capitol
Cheyenne, Wyoming 82002
(307) 777-5786
ryan.schelhaas@wyo.gov
*Pro hac vice application forthcoming*

*Counsel for the State of Wyoming*

DOUGLAS B. MOYLAN
Attorney General of Guam

*/s/ Douglas B. Moylan*
Douglas B. Moylan
Office of the Attorney General of Guam
590 S. Marine Corps. Drive
ITC Bldg., Ste. 902
Tamuning, Guam  96913, USA
671-475-3324
671-475-4703 (fax)
dbmoylan@oagguam.org
*Pro hac vice application forthcoming*
*Counsel for the U.S. Territory of Guam*

31

## CERTIFICATE OF SERVICE

I hereby certify that, on July 8, 2025, I caused a true and correct copy of the foregoing to be submitted to the Clerk of Court for filing in accordance with Local Rule 24.1(a), which electronic filing by the Clerk will cause the service of the foregoing upon all parties who have entered in the case.

*/s/ Christian B. Corrigan*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Brief is compliant with Local Rule 7.1(d)(2)(A) because it contains 3,969 words, according to Microsoft Word, excluding those portions identified in Local Rule 7.1(d)(2)(E).

*/s/ Christian B. Corrigan*

32