Adam R.F. Gustafson
*Acting Assistant Attorney General*
Robert N. Stander
*Deputy Assistant Attorney General*
Environment & Natural Resources Div.
United States Department of Justice

Michael S. Sawyer
Erik Van De Stouwe
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel:   (202) 514-5273
       (202) 305-0247
E-mail: michael.sawyer@usdoj.gov
        erik.van.de.stouwe@usdoj.gov

Philip R. Dupre
Miranda Jensen
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044-7611
Tel:   (202) 598-9530
       (202) 598-3071
Email: phillip.r.dupre@usdoj.gov
        miranda.jensen@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| **EVA LIGHTHISER**; et al.<br><br>                    Plaintiffs,<br><br>     v.<br><br>**DONALD J. TRUMP**, in his official capacity as President of the United States; et al.<br><br>                    Defendants. | Case No: CV-25-54-BU-DLC<br><br>**DEFENDANTS' OPPOSITION TO PRELIMINARY INJUNCTION MOTION** |

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

BACKGROUND ....................................................................................2

    I.     Previous Youth Climate Litigation ........................................2

          A.    *Juliana v. United States*, 947 F.3d 1159 (9th Cir. 2020). ...........2

          B.    *Clean Air Council v. United States*, 362 F. Supp. 3d 237 (E.D. Pa. 2019)..............................................................................4

          C.    *G.B. v. EPA*, No. CV 23-10345-MWF, 2024 WL 3009302 (C.D. Cal. May 8, 2024). .............................................................4

    II.    Challenged Executive Orders...............................................5

          A.    EO 14154: Unleashing American Energy ..................................5

          B.    EO 14156: Declaring a National Energy Emergency................7

          C.    EO 14261: Reinvigorating America's Beautiful Clean Coal Industry ..................................................................................8

    III.    Plaintiffs' Complaint ...........................................................8

STANDARD OF REVIEW ..................................................................10

ARGUMENT .......................................................................................11

    i.     Plaintiffs Have Failed to Demonstrate They Have Standing to Seek the Requested Preliminary Injunction. ......................................11

          A.    Plaintiffs cannot show that their alleged climate injuries will be redressed by a favorable ruling.....................................12

               1.    Plaintiffs' climate injuries are not substantially likely to be redressed by an injunction of the EOs. .................13

               2.    In seeking to enjoin the implementation of the EOs, Plaintiffs ask this Court for non-justiciable relief. ........14

          B.    Plaintiffs cannot show that any cognizable climate injuries are traceable to the three challenged executive orders. ............17

i

C.    Plaintiffs lack standing to bring challenges to alleged climate science funding and personnel decisions. ....................20

II.    The Court Lacks Jurisdiction over Plaintiffs' claims for Multiple Reasons...................................................................................24

A.    Plaintiffs' challenge to the President's declaration of a National Energy Emergency raises a non-justiciable political question. .......................................................................24

B.    Sovereign immunity requires that Plaintiffs' claims be heard through the judicial review schemes created by Congress .....................................................................................27

C.    The Court lacks jurisdiction to enjoin agency actions subject to the exclusive jurisdiction of the courts of appeal.....29

D.    Where other statutes do not provide for judicial review, Plaintiffs' statutory challenges to agency actions and inaction must be brought under the APA.................................31

III.    Plaintiffs Have Failed To Establish That They Are Entitled To The Extraordinary Remedy of a preliminary injunction....................33

A.    Plaintiffs have failed to establish a likelihood of success, or even serious questions, as to the merits. ...................................33

1.    Substantive due process claims ...................................... 33

2.    Claim 3 - EPA................................................................. 38

3.    Claim 4 - USGCRP......................................................... 40

4.    Claim 5 – Science at NASA, NIH, NSF, NOAA, and DOT .............................................................................. 41

B.    Plaintiffs are not likely to suffer imminent, irreparable harm absent an injunction. ................................................................42

C.    The balance of hardships weighs heavily against injunctive relief. .........................................................................................44

IV.    Any preliminary injunction must be accompanied by an appropriate bond....................................................................................46

CONCLUSION ...................................................................................................47

## TABLE OF AUTHORITIES

**Other Authorities**

*Alexander v. Sandoval*,
  532 U.S. 275 (2001) ...............................................................................32

*All. for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ...............................................................10

*All. for the Wild Rockies v. Petrick*,
  68 F.4th 475 (9th Cir. 2023) ..................................................................42

*Allegheny Def. Project v. FERC*,
  964 F.3d 1 (D.C. Cir. 2020)...................................................................37

*Bd. of Governors, FRS v. MCorp Fin., Inc.*,
  502 U.S. 32 (1991) .................................................................................28

*Bd. of Regents of State Colls. v. Roth*,
  408 U.S. 564 (1972) ...............................................................................37

*Beame v. Friends of the Earth*,
  434 U.S. 1310 (1977) .............................................................................42

*Burnette v. Carothers*,
  No. 3:94-CV-00420 (EBB), 1998 WL 136177 (D. Conn. Mar. 11, 1998).........36

*Cal. Dump Truck Owners Ass'n v. Nichols*,
  784 F.3d 500 (9th Cir. 2015).................................................................30

*Cal. Energy Comm'n v. U.S. Dep't of Energy*,
  585 F.3d 1143 (9th Cir. 2009)...............................................................30

*California v. Trump*,
  613 F. Supp. 3d 231 (D.D.C. 2020) ......................................................19

*CareToLive v. von Eschenbach*,
  525 F. Supp. 2d 952 (S.D. Ohio 2007)..................................................35

*Center for Biological Diversity v. Trump*,
  453 F.Supp.3d 11 (D.D.C. 2020) .................................................. 25, 26

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971) ...............................................................................32

*Clapper v. Amnesty International USA*,
    568 U.S. 398 (2013) ..........................................................................................11

*Clean Air Council v. United States*,
    362 F. Supp. 3d 237 (E.D. Pa. 2019).............................................................4, 36

*Cnty. of Sacramento v. Lewis*,
    523 U.S. 833 (1998) ..........................................................................................37

*Collins v. Harker Heights*,
    503 U.S. 115 (1992) .................................................................................... 33, 37

*D'Augusta v. Am. Petroleum Inst.*,
    117 F.4th 1094 (9th Cir. 2024)..........................................................................26

*Delaware Riverkeeper Network v. FERC*,
    895 F.3d 102 (D.C. Cir. 2018) ..........................................................................37

*Dep't of State v. Munoz*,
    602 U.S. 899 (2024) .................................................................................... 34, 36

*Dobbs v. Jackson Women's Health Org.*,
    597 U.S. 215 (2022) .................................................................................... 33, 34

*Drakes Bay Oyster Co. v. Jewell*,
    747 F.3d 1073 (9th Cir. 2014)...........................................................................10

*Driftless Area Land Conserv. v. Rural Utils. Serv.*,
    74 F.4th 489 (7th Cir. 2023)..............................................................................39

*Dunn & Black, P.S. v. United States*,
    492 F.3d 1084 (9th Cir. 2007)...........................................................................27

*Ely v. Velde*,
    451 F.2d 1130 (4th Cir. 1971)...........................................................................35

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) ..........................................................................................38

*FDA v. Wages & White Lion Invs., L.L.C.*,
    145 S. Ct. 898 (2025) ........................................................................................38

*FDIC v. Meyer*,
    510 U.S. 471 (1994) ..........................................................................................27

*Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*,
    493 U.S. 331 (1990) ..........................................................................................22

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992) ...........................................................................28

*G.B. v. EPA*,
   No. CV 23-10345-MWF, 2024 WL 3009302 (C.D. Cal. May 8, 2024)4, 5, 12, 13

*Guertin v. Michigan*,
   912 F.3d 907 (6th Cir. 2019) ...............................................................35

*Haig v. Agee*,
   453 U.S. 280 (1981) ...........................................................................26

*Hawaii v. Trump*,
   859 F.3d 741 (9th Cir.) .......................................................................28

*Jachetta v. United States*,
   653 F.3d 898 (9th Cir. 2011) ...............................................................27

*Jorgensen v. Cassiday*,
   320 F.3d 906 (9th Cir. 2003) ...............................................................46

*Juliana v. United States*,
   217 F. Supp. 3d 1224 (D. Or. 2016) .....................................................36

*Juliana v. United States*,
   339 F. Supp. 3d 1062 (D. Or. 2018) .....................................................28

*Juliana v. United States*,
   947 F.3d 1159 (9th Cir. 2020) .................................................... passim

*Kraushaar v. Flanigan*,
   45 F.3d 1040 (7th Cir. 1995) ...............................................................38

*Laird v. Tatum*,
   408 U.S. 1 (1972) ...............................................................................16

*Lake v. City of Southgate*,
   No. 16-10251, 2017 WL 767879 (E.D. Mich. Feb. 28, 2017)..................... 35, 36

*Lane v. Pena*,
   518 U.S. 187 (1996) ...........................................................................27

*Lochner v. New York*,
   198 U.S. 45 (1905) .............................................................................34

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .................................................................. 11, 16

*M.S. v. Brown,*
    902 F.3d 1076 (9th Cir. 2018) ............................................................12

*McConnell v. Fed. Election Comm'n,*
    540 U.S. 93 (2003) ............................................................................18

*Meland v. WEBER,*
    2 F.4th 838 (9th Cir. 2021) ................................................................22

*Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n,*
    453 U.S. 1 (1981) ..............................................................................35

*Mississippi v. Johnson,*
    71 U.S. (4 Wall.) 475 (1866) .............................................................28

*Missouri v. Biden,*
    52 F.4th 362 (8th Cir. 2022) ..............................................................19

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ................................................................ 32, 38, 39

*Murthy v. Missouri,*
    603 U.S. 43 (2024) ...................................................................... 10, 11

*Nat'l Sea Clammers Ass'n v. City of New York,*
    616 F.2d 1222 (3d Cir. 1980) ............................................................35

*Nat'l Urb. League v. Trump,*
    No. CV 25-471 (TJK), 2025 WL 1275613 (D.D.C. May 2, 2025)......................22

*Navajo Nation v. Dep't of the Interior,*
    876 F.3d 1144 (9th Cir. 2017) ............................................................31

*Norton v. S. Utah Wilderness All.,*
    542 U.S. 55 (2004) .............................................................................32

*Nuclear Regulatory Commission v. Texas,*
    145 S. Ct. 1762 (2025) ................................................................ 28, 32

*Oakland Tribune, Inc. v. Chronicle Publ'g Co.,*
    762 F.2d 1374 (9th Cir. 1985) ............................................................42

*Perfect 10, Inc. v. Google, Inc.,*
    653 F.3d 976 (9th Cir. 2011) ..............................................................43

*Plaut v. Spendthrift Farm, Inc.,*
    514 U.S. 211 (1995) ...........................................................................14

*Pub. Util. Comm'r of Or. v. Bonneville Power Admin.*,
  767 F.2d 622 (9th Cir. 1985) ................................................................29

*Raines v. Byrd*,
  521 U.S. 811 (1997) ..........................................................................11

*Schweiker v. Chilicky*,
  487 U.S. 412 (1988) ..........................................................................29

*Seila L. LLC v. Consumer Fin. Prot. Bureau*,
  591 U.S. 197 (2020) ..........................................................................45

*Seminole Tribe of Fla. v. Florida*,
  517 U.S. 44 (1996) ............................................................................29

*Seven County Infrastructure Coalition v. Eagle County, Colo.*,
  145 S. Ct. 1497 (2025) ........................................................................6

*SF Chapter of A. Philip Randolph Inst. v. U.S. EPA*,
  No. C, 07-04936 CRB, 2008 WL 859985 (N.D. Cal. Mar. 28, 2008) ................36

*Sierra Club v. Trump*,
  929 F.3d 670 (9th Cir. 2019) ................................................................31

*Sierra Club v. U.S. Dep't of Energy*,
  134 F.4th 568 (D.C. Cir. 2025) .............................................................30

*Sulphur & Chem Co. v. United States*,
  666 F.3d 1174 (9th Cir. 2012) ..............................................................39

*Telecomms. Rsch. & Action Ctr. v. FCC*,
  750 F.2d 70 (D.C. Cir. 1984) ................................................................29

*Town of Chester v. Laroe Estates, Inc.*,
  581 U.S. 433 (2017) ..........................................................................12

*Trump v. CASA, Inc.*,
  No. 24A884, 2025 WL 1773631 (U.S. June 27, 2025) .................... 14, 15, 44, 46

*Trump v. Hawaii*,
  585 U.S. 667 (2018) ..........................................................................25

*U.S. Dep't of Energy v. Ohio*,
  503 U.S. 607 (1992) ..........................................................................39

*United States v. Mitchell*,
  463 U.S. 206 (1983) ..........................................................................27

*United States v. Richardson,*
    418 U.S. 166 (1974) ...................................................................................23

*W. Radio Servs. Co. v. U.S. Forest Serv.,*
    578 F.3d 1116 (9th Cir. 2009)...................................................................31

*Washington Env't Council v. Bellon,*
    732 F.3d 1131 (9th Cir. 2013) ............................................................ 17, 19

*Washington v. Glucksberg,*
    521 U.S. 702 (1997) ...................................................................................34

*West Virginia v. EPA,*
    597 U.S. 697 (2022) ...................................................................................38

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas,*
    5 F.4th 997 (9th Cir. 2021).........................................................................32

*Winter v. NRDC,*
    555 U.S. 7 (2008) .......................................................................................10

*Ziglar v. Abbasi,*
    582 U.S. 120 (2017) ...................................................................................25

*Zivotofsky v. Clinton,*
    566 U.S. 189 (2012) ...................................................................................26

**Regulations**

15 U.S.C. § 2933 ...............................................................................................41

15 U.S.C. § 2936 ...............................................................................................40

15 U.S.C. §§ 717-717z.......................................................................................30

42 U.S.C. § 6306(b)(1).......................................................................................30

42 U.S.C. § 7412(i)(4) .......................................................................................20

42 U.S.C. § 7604 ...............................................................................................39

42 U.S.C. § 7607(b) ...........................................................................................39

42 U.S.C. § 7607(d) ...........................................................................................40

5 U.S.C. § 702 ...................................................................................................27

5 U.S.C. § 706(2) ..............................................................................................31

H.R. 1, 119th Cong. (2025)(enacted)................................................................21

U.S. CONST. art. III  § 1 ........................................................................................14

**9**

Fed. R. Civ. P. 12(b) .............................................................................................4

 **13**

Exec. Order No. 14154, 90 Fed. Reg. 8353 (Jan. 20, 2025)........................... passim

Exec. Order No. 14156, 90 Fed. Reg. 8433 (Jan. 20, 2025)................. 7, 24, 25, 26

Exec. Order No. 14210, 90 Fed. Reg. 9669 (Feb. 11, 2025)...................................22

Exec. Order No. 14261, 90 Fed. Reg. 15517 (Apr. 8, 2025).............................8, 39

Exec. Order No. 14262, 90 Fed. Reg. 15521 (Apr. 8, 2025)..................................20

Exec. Order No. 14303, 90 Fed. Reg. 22601 (May 23, 2025)............................9, 40

Proclamation No. 10914, 90 Fed. Reg. 16777 (Apr. 8, 2025)................................20

# TABLE OF ABBREVIATIONS

APA – Administrative Procedure Act
CAA – Clean Air Act
CWA – Clean Water Act
DOE – Department of Energy
DOI – Department of the Interior
DOT – Department of Transportation
EO – Executive Order
EOP – Executive Office of the President
EPA – Environmental Protection Agency
EPCA – Energy Policy and Conservation Act
ESA – Endangered Species Act
EV – Electric Vehicle
GHG – greenhouse gas
IIJA – Infrastructure Investment and Jobs Act
IRA – Inflation Reduction Act
LNG – liquefied natural gas
MLA – Mineral Leasing Act
NASA – National Aeronautics and Space Administration
NCA – National Climate Assessment
NEPA – National Environmental Policy Act
NGA  - Natural Gas Act
NIH – National Institute of Health
NOAA – National Oceanic and Atmospheric Administration
NSF – National Science Foundation
OCSLA – Outer Continental Shelf Lands Act
OMB – Office of Management and Budget
SMCRA – Surface Mining Control and Reclamation Act
USGCRP – U.S. Global Change Research Program

## INTRODUCTION

This case is the latest episode in a climate-change crusade demanding that federal district courts oversee the nation's energy economy. Two months after the Supreme Court denied certiorari over their first climate lawsuit, three Plaintiffs from *Juliana v. United States*, 947 F.3d 1159 (9th Cir. 2020)—accompanied by reinforcements—return to this Court with recycled claims asserting substantive due process rights to "enjoy this terrestrial existence," "pursue happiness in living," and have a "stable climate system." Compl. ¶ 255, Dkt. 1. But their new lawsuit fails to solve a fundamental problem with their old one: because Article III does not empower courts to redress global climate change, cases seeking such relief "must be presented to the political branches of government." *Juliana*, 947 F.3d at 1165.

Given this redressability problem, Plaintiffs purport to minimize their requested relief by focusing their Complaint on three Executive Orders (EOs) establishing certain federal energy priorities. But their preliminary injunction motion reveals that Plaintiffs seek an unmanageable across-the-board review of this administration's entire energy policy, sweeping in numerous additional Executive Branch actions concerning matters as varied as government efficiency initiatives, budget priorities, and science policy. Plaintiffs thus seek an order broadly enjoining the "unleashing of fossil fuels," Pls.' Br. 44, Dkt. 25, that would serve only to engender innumerable disputes about whether future agency actions violate that amorphous order. Just as the *Juliana* court lacked jurisdiction to enjoin "the

government's promotion of fossil fuels," 947 F.3d at 1170–71, this Court cannot enjoin the "unleashing" of fossil fuels.

In addition to this core jurisdictional defect, the Court should deny Plaintiffs' preliminary injunction on additional jurisdictional, merits, and equitable grounds explained below.

## BACKGROUND

## I.    PREVIOUS YOUTH CLIMATE LITIGATION

### A.    *Juliana v. United States*, 947 F.3d 1159 (9th Cir. 2020).

The *Juliana* litigation began in 2015, when twenty-one youth plaintiffs sought "an order requiring the government to develop a plan to 'phase out fossil fuel emissions and draw down excess atmospheric $CO_2$.'" 947 F.3d at 1164–65. They sued a broad range of Executive Branch actors, including the President and eight cabinet officers. And they alleged that "a host of federal policies, from subsidies to drilling permits, spanning 'over 50 years,'" *id.* at 1169, contributed so significantly to climate change that the government had violated plaintiffs' alleged substantive due process rights "to a 'climate system capable of sustaining human life,'" *id.* at 1164.

After the district court denied the government's motion to dismiss for lack of standing, a series of mandamus petitions, stay applications, and requests for interlocutory appeal eventually resulted in the Ninth Circuit resolving the core standing dispute. *Id.* at 1165–66. And the Ninth Circuit correctly concluded that

2

plaintiffs lacked standing because they could not establish that their requested relief was "both (1) substantially likely to redress their injuries; and (2) within the district court's power to award." *Id.* at 1170.

The Ninth Circuit expressed serious doubts that Plaintiffs could show that their requested relief was "substantially likely" to redress their asserted climate injuries, such as flooding, water scarcity, etc. *Id.* As the Ninth Circuit explained, even "enjoin[ing] the Executive from exercising discretionary authority expressly granted by Congress" to steward energy development, would not "halt the growth of carbon dioxide levels in the atmosphere, let alone decrease that growth." *Id.*

But the court did not definitively resolve the substantial likelihood inquiry, as plaintiffs could "not surmount the remaining hurdle—establishing that the specific relief they seek is within the power of an Article III court." *Id.* at 1171. The Ninth Circuit held that it lacked power to issue Plaintiffs' requested relief of enjoining "the government's promotion of fossil fuels" and drawing down atmospheric emissions, *id.* at 1170–71, which "require[d] consideration of competing social, political, and economic forces, which must be made by the People's elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country," *id.* at 1172 (citation modified). Article III does not permit courts to issue a broad environmental injunction while leaving the policy details of how to accomplish that goal to the political branches because "the plaintiffs' request for a

3

remedial plan would subsequently require the judiciary to pass judgment on the sufficiency of the government's response to the order, which necessarily would entail a broad range of policymaking." *Id.*

**B.    *Clean Air Council v. United States*, 362 F. Supp. 3d 237 (E.D. Pa. 2019).**

While *Juliana* required an interlocutory appeal to resolve, other youth climate lawsuits have been appropriately dismissed under Federal Rule of Civil Procedure 12(b). In *Clean Air Council*, the court dismissed a similar challenge to various environmental "Rollbacks"—*e.g.*, an environmental EO, budget priorities, agency staffing cuts, website changes, and board replacements—that plaintiffs alleged collectively violated their substantive due process rights. 362 F. Supp. 3d at 242–44. The Court dismissed these challenges for lack of standing and on the merits for failing to state a substantive due process violation.

**C.    *G.B. v. EPA*, No. CV 23-10345-MWF, 2024 WL 3009302 (C.D. Cal. May 8, 2024).**

The Central District of California recently dismissed another youth climate lawsuit presenting similar substantive due process claims. In *G.B.*, plaintiffs alleged that the Environmental Protection Agency (EPA) was statutorily required to protect human health and welfare, and that its failure to do so by allowing greenhouse gas (GHG) emissions violated their Fifth Amendment substantive due process rights. 2024 WL 3009302, at *1–2. The court dismissed the suit for lack of redressability, holding that the case was "on all fours" with *Juliana*. *Id.* at *3. Rejecting Plaintiffs'

argument that *Juliana* was wrongly decided, the court held it "must follow the Ninth Circuit's binding decisions." *Id.* at *4.

## II.    CHALLENGED EXECUTIVE ORDERS

### A.    EO 14154: Unleashing American Energy

On January 20, 2025, President Donald J. Trump issued EO 14154, which calls for unleashing numerous forms of American energy. 90 Fed. Reg. 8353. It establishes the Executive Branch's policy to bolster national energy security and combat high energy and transportation costs by unleashing America's affordable and reliable energy and natural resources through:

- encouraging energy exploration and production on federal lands, including non-fuel mineral production and processing;

- safeguarding the American people's freedom to choose consumer goods, such as automobiles and household appliances; and

- improving regulatory decision-making through, e.g., "rigorous, peer-reviewed scientific analysis."

*Id.* at 8353–54. This policy applies to numerous natural resources, including not only certain fossil fuels, but also hydropower, biofuels, nuclear energy, and the critical minerals required to develop Plaintiffs' preferred technologies, like electric vehicles (EVs) and wind turbines. *See id.*

The EO instructs the implementation of this policy in three challenged ways. *First*, section 3 of the EO calls for agencies to review their actions that unduly burden

5

domestic energy resources, *id.* as Congress has entrusted many agencies with responsibility for regulating various aspects of the nation's energy economy. For example:

- The Department of the Interior (DOI) regulates the production and exploration of minerals from federal lands under statutes like the Mineral Leasing Act (MLA), Outer Continental Shelf Lands Act (OCSLA), and Surface Mining Control and Reclamation Act (SMCRA);

- The Department of Transportation (DOT) regulates vehicle fuel economy and the Department of Energy (DOE) regulates appliance efficiency under the Energy Policy and Conservation Act (EPCA); and

- EPA regulates air pollutants under the Clean Air Act (CAA).

*Second*, section 5 of the EO instructs agencies to improve permitting efficiency under the National Environmental Policy Act (NEPA). *Id.* at 8355–56. The Supreme Court recently held that a similar "course correction" under NEPA is necessary to accord with Congressional design, as the statute was not intended to become a tool for delaying development. *Seven County Infrastructure Coalition v. Eagle County, Colo.*, 145 S. Ct. 1497, 1514 (2025).

*Third*, section 7 of the EO instructs agencies to pause outgoing disbursements under the Inflation Reduction Act (IRA) and the Infrastructure Investment and Jobs

Act (IIJA) pending a review intended to "prioritize cost-effectiveness, American workers and businesses, and the sensible use of taxpayer money." 90 Fed. Reg. 8357.

**B.    EO 14156: Declaring a National Energy Emergency**

Using his authority under the National Emergencies Act, President Trump declared a national energy emergency to combat "high energy prices that devastate Americans, particularly those living on low- and fixed-incomes," bolster national energy security, strengthen trade relationships with allies, and improve our energy infrastructure to support numerous domestic industries that require "a reliable, diversified, and affordable supply of energy." 90 Fed. Reg. 8433.

Like the Unleashing American Energy EO, this EO is not limited to fossil fuels. It also includes uranium, critical minerals, biofuels, geothermal, and moving water. *Id.* at 8436.

The EO directs agencies to respond to this emergency in several ways. *First*, it directs agencies to explore emergency authorities to enhance domestic energy production, processing, and transportation capacity, including the Defense Production Act. *Id.* at 8434. *Second*, it calls for expediting the delivery of energy infrastructure through lawful emergency authorities under the Clean Water Act (CWA) and the Endangered Species Act (ESA). *Id.* at 8434–36.

7

## A.    EO 14261: Reinvigorating America's Beautiful Clean Coal Industry

EO 14261 determines that coal is essential to national and economic security. 90 Fed. Reg. 15517. It designates coal as a "mineral" under EO 14241, which takes measures to Increase American Mineral Production. *See id.*

EO 14261 directs agencies to undertake a study on the relationship between coal reserves, electricity costs, and grid reliability. *Id.* And it instructs agencies to prioritize federal coal leasing in areas identified by study. *Id.*

It also directs agencies to "consider revising or rescinding" agency action that seeks to transition the nation away from coal production and electricity generation. *Id.* at 15518. Finally, it instructs agencies to take steps to promote and identify export opportunities for coal and coal technologies. *Id.*

## II.    PLAINTIFFS' COMPLAINT

Like the *Juliana* plaintiffs, Plaintiffs are a group of young Americans primarily alleging climate-related injuries from wildfire smoke, flooding, heat, etc. *See* Compl. ¶¶ 10–33. They allege that their climate-related injuries are exacerbated by the challenged EOs because every additional ton of GHG emissions causes them further harm. *Id.* ¶ 324.

Plaintiffs present the same substantive due process claims as were brought in *Juliana*, claiming a violation of their constitutional rights to life, liberty, and freedom

from state-created danger. *Id.* ¶¶ 251–71, 322–29. They also bring three *ultra vires* challenges to the EOs:

*First*, repeating an unsuccessful argument from *G.B.*, Plaintiffs contend that the CAA requires the EPA to more aggressively regulate fossil fuel pollution than called for by the challenged EOs. *Id.* ¶¶ 272–91; 295–303. They also allege that the IRA requires EPA to expend certain funds, *id.* ¶¶ 292–94, without explaining how Plaintiffs might benefit from these specific funds.

*Second*, Plaintiffs contend that the EOs violate statutes establishing the U.S. Global Change Research Program (USGCRP), *id.* ¶¶ 304–07, even though the EOs do not mention that program.

*Third*, Plaintiffs contend that the EOs violate various federal science statutes by dismantling, suppressing, and scrubbing climate science, *id.* ¶¶ 308–21, even though the EOs do not mention climate science. Plaintiffs allegations cover numerous agencies, including the National Aeronautics and Space Administration (NASA), the National Oceanic and Atmospheric Administration (NOAA), the National Science Foundation (NSF), and the National Institute of Health (NIH). *Id.* Rather than suppress science, the EOs specifically call for U.S. energy policy to rely on "rigorous, peer-reviewed scientific analysis." 90 Fed. Reg. 8354. Elsewhere, the President has called for "Restoring Gold Standard Science" in unchallenged EO 14303, 90 Fed. Reg. 22601.

## STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction, a plaintiff must establish that (1) it is likely to prevail on the merits of its substantive claims, (2) it is likely to suffer imminent, irreparable harm absent an injunction, (3) the balance of equities favors an injunction, and (4) an injunction is in the public interest. *Id.* at 20. The analyses of the public interest and balance of equities merge when the government is a party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). When the hardship balance "tips *sharply* toward the plaintiff," the Ninth Circuit has held that "serious questions going to the merits" "can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (emphasis added).[1]

Because plaintiffs bear the burden of establishing standing throughout the lawsuit, they must make a "clear showing" that they are "likely" to establish each element of standing at the preliminary injunction stage. *Murthy v. Missouri*, 603 U.S. 43, 58 (2024). Plaintiffs "must demonstrate standing for each claim that they press

---

[1] Defendants respectfully disagree that this formulation accords with Supreme Court precedent including *Winter*, and thus preserve this issue for appeal, while recognizing that this Court is bound by Ninth Circuit law.

against each defendant, and for each form of relief that they seek." *Id.* at 61 (citation modified).

## ARGUMENT

## I.    PLAINTIFFS HAVE FAILED TO DEMONSTRATE THEY HAVE STANDING TO SEEK THE REQUESTED PRELIMINARY INJUNCTION.

To demonstrate Article III standing, Plaintiffs must establish that (1) they "have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation modified). Article III standing serves to "prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty International USA*, 568 U.S. 398, 408 (2013). In keeping with that purpose, a court's inquiry must be "especially rigorous when reaching the merits of the dispute would force [it] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997).

**A.     Plaintiffs cannot show that their alleged climate injuries will be redressed by a favorable ruling.**

To establish the third element of standing—redressability—"plaintiffs must show that the relief they seek is both (1) substantially likely to redress their injuries; and (2) within the district court's power to award." *Juliana*, 947 F.3d at 1170 (citing *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018)). A plaintiff, moreover, must make this showing for "each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (citation omitted).

The redressability analysis here is controlled by the Ninth Circuit's decision in *Juliana*. There, much as here, a group of youth asserted that the government had violated their right to a "climate system capable of sustaining human life" by promoting fossil fuels. *Juliana*, 947 F.3d at 1164. And those Plaintiffs similarly sought an injunction requiring "cessation of the government's promotion of fossil fuels." *Id.* at 1170–71. Thus, "*Juliana* is on all fours with this action." *G.B.*, 2024 WL 3009302, at *3.

Despite *Juliana*, Plaintiffs continue to seek redress for climate-related injuries through an injunction against the federal government's promotion of fossil fuels. Plaintiffs do not mention—let alone distinguish—*Juliana*, and confine their entire redressability discussion to a single sentence. *See* Pls.' Br. 19. Plaintiffs' counsel thus repeat their error of encouraging a district court in the Ninth Circuit to hold that

"*Juliana* was wrongly decided." *G.B.*, 2024 WL 3009302, at *4. "The Court must follow the Ninth Circuit's binding decisions where applicable." *Id.*

      1.    Plaintiffs' climate injuries are not substantially likely to be redressed by an injunction of the EOs.

As *Juliana* establishes, Plaintiffs cannot make the two-part showing for redressability for the claims of relief sought in the Complaint. The plaintiffs in *Juliana* sought an injunction "requiring the government not only to cease permitting, authorizing, and subsidizing fossil fuel use, but also to prepare a plan subject to judicial approval to draw down harmful emissions." 947 F.3d at 1170. Notwithstanding the extraordinary breadth of the requested injunction, the Ninth Circuit expressed serious skepticism that the requested relief could redress the plaintiffs' climate injuries, given the complexity and global nature of the problem. *Id.* (explaining that not even complete "elimination of the challenged pro-carbon [federal] fuels programs would by itself prevent further injury to the plaintiffs" because "many of the emissions causing climate change happened decades ago or come from foreign and non-governmental sources").

Plaintiffs cannot contend that the injunction against three EOs sought here would likely redress their climate-based injuries more fully than the broader injunction sought—and deemed suspect—in *Juliana*. Even according to Plaintiffs' own evidence, the challenged EOs—in conjunction with other unchallenged executive branch actions—would change annual global emissions by about one

percent, *infra* 18–19, an amount that "will not suffice" to reduce the global consequences of climate change, *see id.* at 1171. Because Plaintiffs have failed to carry their burden of demonstrating that enjoining the three EOs would "halt the growth of carbon dioxide levels in the atmosphere, let alone decrease that growth," *id.* at 1170, they lack standing to seek a preliminary injunction. Indeed, recent history shows that global GHG emissions continue to grow, even when the United States cuts emissions. LaRose Decl. ¶¶ 4–7.

> 2.    In seeking to enjoin the implementation of the EOs, Plaintiffs ask this Court for non-justiciable relief.

Even if a favorable judgment could theoretically provide such redress, Plaintiffs still would not "surmount the remaining hurdle" in the redressability test— "establishing that the specific relief they seek is within the power of an Article III court." *Juliana*, 947 F.3d at 1171. The "judicial Power of the United States," U.S. CONST. art. III, § 1, is "one to render dispositive judgments" in Article III "cases and controversies." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218-19 (1995) (citation omitted). As with the *Juliana* effort to "enjoin the Executive from exercising discretionary authority expressly granted by Congress," 947 F.3d at 1170, the unbounded relief that Plaintiffs seek here—enjoining the Executive's oversight of discretionary energy policy delegated by Congress—asks the Court to impermissibly "exercise general oversight of the Executive Branch." *Trump v. CASA, Inc.*, 606 U.S. ---, No. 24A884, 2025 WL 1773631, at *15 (June 27, 2025).

In asking the Court to enjoin much of the Executive Branch from implementing the challenged EOs, Plaintiffs' requested relief "improperly intrudes on a coordinate branch of the Government and prevents the Government from enforcing its policies against nonparties." *Id.* at *14 (citation modified). Plaintiffs seek to enjoin not only numerous federal agencies—*e.g.*, EPA, DOI, DOE, DOT, NASA, NOAA, NSF, NIH—but also the Executive Office of the President (EOP), including the Office of Management and Budget (OMB), from even considering regulatory revisions to lower energy costs, strengthen grid reliability, or promote American energy exports.

Such an overbroad injunction would far exceed this Court's power. An injunction is "only as good as the court's power to enforce it." *Juliana*, 947 F.3d at 1173. For Plaintiffs' requested relief to have any effect, the Court would have to consider whether thousands of potential subsequent agency actions—such as revisions to EPA regulations under the CAA, amendments to DOT's vehicle fuel economy standards and DOE's appliance efficiency standards under EPCA, DOE's pipeline and export approvals under the National Gas Act (NGA), and DOI's regular oil and gas lease sales under the MLA and OCSLA, to name only a few—violate the Court's order. Because Congress has entrusted review of most of those agency actions to the exclusive jurisdiction of the courts of appeal, *infra* 29–31, this Court has no power to enforce such an order.

Plaintiffs' evidentiary submission demonstrates the unmanageable nature of its requested injunction. Their record comprises disparate speeches, budget requests, real estate terminations, agency reorganization plans, regulatory proposals, website postings, and personnel decisions. *See generally* Olson Decl., Dkt. 25-25. Article III does not allow for suits that seek such "broad-scale investigation" into government functions, which "would have the federal courts [act] as virtually continuing monitors of the wisdom and soundness of Executive action." *Laird v. Tatum*, 408 U.S. 1, 14–15 (1972).

Federal courts cannot perform such a sweeping policy review, because the "Constitution's central mechanism of separation of powers depends largely upon common understanding of what activities are appropriate to legislatures, to executives, and to courts." *Defs. of Wildlife*, 504 U.S. at 559–60. As the *Juliana* court recognized, plaintiffs may challenge discrete government actions (or inaction), but their demand for changes to the government's overall regulation of fossil fuels (and associated emissions) "must be made to the political branches or to the electorate at large" rather than in a single district court, 947 F.3d at 1175, because policy decisions that "require consideration of competing social, political, and economic forces, . . . must be made by the People's elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country," *id.* at 1172 (citation modified).

16

The Court should accordingly dismiss the case as not justiciable under Article III principles.

**B.     Plaintiffs cannot show that any cognizable climate injuries are traceable to the three challenged executive orders.**

To establish the second element of standing, Plaintiffs must show that their alleged injuries are traceable to the challenged government actions, *i.e.*, the three challenged EOs, rather than unchallenged government actions or the actions of third parties that are not before the Court. Because Plaintiffs cannot establish a likelihood that the challenged EOs provide "a 'meaningful contribution' to global GHG levels," they cannot meet their burden to establish causation. *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1146 (9th Cir. 2013).

Plaintiffs' causal connection between their asserted injuries and their challenged action is far weaker than provided in *Juliana*. The *Juliana* plaintiffs arguably established causation, in the Ninth Circuit's view, by challenging 50 years of "federal subsidies and leases" for fossil fuels, which accounted for 25% of the fossil fuels extracted in the United States, thus contributing to the 25% of historical worldwide emissions attributable to the United States. 947 F.3d at 1169. Unlike in *Juliana*, however, Plaintiffs challenge EOs that could not have affected them before 2025; nor do Plaintiffs even attempt to contextualize how the challenged EOs might ultimately contribute to historical worldwide emissions and thus cause their asserted injuries.

17

Because the challenged EOs have no historical contribution to the global GHG emission levels allegedly driving Plaintiffs' injuries, Plaintiffs must show that the challenged EOs will cause them an actual or imminent climate injury. They proffer only one witness that attempts to do so: Jesse Jenkins. *See* Jenkins Decl., Dkt. 25-20. Yet even according to Jenkins' model, the challenged EOs are not expected to have any measurable effect on emissions before 2027. *Id.* ¶ 19. Jenkins instead opines that—*ten years from now*—the challenged EOs will contribute to increased annual emissions by 0.51 Gt $CO_2$-e, *id.* ¶ 9, which amounts to about 1% of annual global emissions.[2] Such a far-off, remote impact is insufficient to make Plaintiffs' climate injuries "fairly traceable" to the challenged EOs. *See McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 226 (2003), *overruled on other grounds by Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010) (holding that a potential injury five years in the future was "too remote temporally to satisfy Article III standing").

Even Jenkins' decade-from-now calculation is entirely speculative, as it relies on two incorrect assumptions. *First*, he assumed that the challenged EOs "block the build out of wind, solar, [and] battery storage," Jenkins Decl. ¶ 8, when the challenged EOs say nothing about those technologies. *Second*, he assumed that there would be a complete repeal of EPA GHG regulations and DOE efficiency

---

[2] Sawyer Decl. ¶ 4, Ex. C (showing that annual global GHG emissions exceeded 50 Gt $CO_2$-e in 2019).

regulations, *id.*, when the challenged EOs merely call for agencies to "consider revising or rescinding Federal actions" that burden energy, *e.g.*, 90 Fed. Reg. at 15518. Jenkins' assumed complete repeal is unfounded because the distinction "between an Executive Order's precipitating a review" of a rule and "its requiring . . . the repeal" of the rule "is both real and significant." *See California v. Trump*, 613 F. Supp. 3d 231, 249 (D.D.C. 2020). Although Jenkins may "fear" the consequences of "hypothetical future regulation," such hypothetical fears are insufficient to create standing. *Missouri v. Biden*, 52 F.4th 362, 369 (8th Cir. 2022). Because Plaintiffs have failed to provide a clear showing that any of their alleged injuries are traceable to the challenged EOs, Plaintiffs have failed to carry their burden to establish causation.

These fatal flaws in Jenkins' analysis leave Plaintiffs "simply saying" that the challenged EOs "contribute (in some undefined way and to some undefined degree) to their injuries." *Bellon*, 732 F.3d at 1142–43 (finding no standing to challenge agency regulation of five oil refineries). The Ninth Circuit in *Bellon* held that such amorphous contributions to climate injuries relied "on an attenuated chain of conjecture insufficient to support standing." *Id.* (citation modified). "Because a multitude of independent third parties are responsible for the changes contributing to Plaintiffs' injuries, the causal chain is too tenuous to support standing." *Id.* at 1144 (citation omitted).

Attempting to distinguish their case from the oil-refinery emissions insufficient to create standing in *Bellon*, Plaintiffs present anecdotes across the Executive Branch. *E.g.*, Compl. ¶¶ 175 (DOI sold 34 oil and gas leases), 176 (DOI extended coal production at Spring Creek Mine), 164 (President exempting certain stationary sources from EPA regulation for two years); Jenkins Decl. Ex. C (DOE extending life of Eddystone Generating Station for three months). But these anecdotes merely serve to prove the absence of causation by the challenged EOs, as these other executive actions either predate the challenged EOs (as with the oil and gas lease sales which were planned in 2024[3] or the coal mine expansion which was first approved in 2012[4]) or are caused by other unchallenged Presidential actions (as with the stationary source exemption[5] or the Eddystone Generating Station extension[6]).

## C. Plaintiffs lack standing to bring challenges to alleged climate science funding and personnel decisions.

No Plaintiff is a federal employee, contractor, or recipient of any federal funding affected by three challenged EOs. They nevertheless claim that they are

---

[3] Sawyer Decl. ¶ 2, Ex. A.

[4] Sawyer Decl. ¶ 3, Ex. B.

[5] Presidential Proclamation No. 10914, which Plaintiffs have not challenged, uses the President's authority under 42 U.S.C. § 7412(i)(4), to exempt certain stationary sources from recently issued EPA regulations. 90 Fed. Reg. 16777.

[6] This extension was issued to effectuate unchallenged Executive Order 14262, *Strengthening the Reliability and Security of the United States Electric Grid*, 90 Fed. Reg. 15521. *See* Jenkins Decl. Ex. C, at ECF 44.

injured by a myriad of decisions that allegedly suppressed climate science. Pls.' Br. 17–18. These claims assert that the challenged EOs have caused the cancellation of the National Climate Assessment (NCA), disbanding of USGCRP, termination of various scientific grants, and staffing cuts at agencies like NOAA.

Plaintiffs fail to show injury, traceability, or redressability for these claims.

Starting with traceability, Plaintiffs fail to provide any evidence that any of the indirect effects of the alleged climate science funding and personnel cuts are attributable to the executive orders. Only section 7 of EO 14154 pertains at all to agency funding decisions, and it calls for a temporary pause on the disbursement of funds appropriated under the IRA or the IIJA to allow for Executive Branch review. But Plaintiffs have not established that the paused funding that allegedly injures them was authorized under either of these two statutes. Even if they had, their challenge to the EO pause is now moot, as Congress recently rescinded unobligated IRA funds. *See* H.R. 1, 119th Cong., Title VI (2025).

Plaintiffs' traceability arguments are even weaker for their funding cut concerns that are not related to funding under the IRA and IIJA. None of the challenged EOs call for deleting climate data; to the contrary, they explicitly call for "provid[ing] opportunity for public comment and rigorous, peer-reviewed scientific analysis." 90 Fed. Reg. 8354. Nor do any of the challenged EOs direct staffing cuts at NOAA or any other federal agency, although other EOs, not challenged here, call

for federal agency staffing reductions. *See, e.g.*, EO 14210, Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative, 90 Fed. Reg. 9669 (Feb. 11, 2025). And none of the challenged EOs mention the NCA or the USGCRP. Plaintiffs therefore fail to show that their alleged injuries are traceable to the challenged EOs, instead of other executive orders or policy decisions.

Even taking at face value Plaintiffs' simplistic characterization of hundreds of individual funding, contractor, and personnel decisions, Plaintiffs fail to connect these actions to their theory of injury. Though Plaintiffs have alleged that some specific grants have been cancelled, they do not allege how they are particularly injured by any such funding cuts.[7] "Under the Supreme Court's prudential standing rule, a 'plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Meland v. WEBER*, 2 F.4th 838, 847 (9th Cir. 2021) (quoting *Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990)). Plaintiffs cannot step into the shoes of those funding recipients, particularly where funding recipients have filed

---

[7] Even if Plaintiffs were directly funded by sources paused under section 7 of E.O. 14154, they would still have not established a constitutional injury from an executive directive to report and review certain programs. *Nat'l Urb. League v. Trump*, No. CV 25-471 (TJK), 2025 WL 1275613, at *9 (D.D.C. May 2, 2025).

their own lawsuits to challenge funding pauses. *See, e.g.*, *Sustainability Institute v. Trump*, Case No. 25-cv-2152 (D.S.C.).

Although Plaintiffs allege that they "use climate science the government produces," Pls.' Br. 18; *see also* Compl. ¶¶ 200, 221, a review of their declarations indicates a diffuse set of generalized fears. Plaintiff Joseph Lee worries that the Mauna Loa Observatory may stop measuring atmospheric $CO_2$ levels, Lee Decl. ¶ 21, Dkt. 25-13, but as of June 5, 2025, it had not, Sawyer Decl. ¶ 6, Ex. E. Plaintiff Avery McRae states that she needs access to NOAA climate science for her academic coursework and to understand the weather in Florida. McRae Decl. ¶ 21, Dkt. 25-9. But she has not explained how specifically she has "be[en] harmed by the lack of access to [specific] climate science and data," *id.*, let alone how that harm is traceable to the challenged executive orders. Without a likely explanation of how they are injured, Plaintiffs have nothing more than the "genuine interest" in a matter that is insufficient to establish standing. *United States v. Richardson*, 418 U.S. 166, 177 (1974).

Several Plaintiffs also allege that they attend, or will attend, colleges that receive NSF grants. *See e.g.,* Reynolds Decl. ¶¶ 16–17, Dkt. 25-1; Compl. ¶ 231. None of the Plaintiffs allege that any cuts to climate science funding attributable to the challenged EOs will hinder their ability to attend their undergraduate or graduate program of choice. Ms. Reynolds states that by freezing and cancelling grants, the

NSF "limits the educational and professional opportunities that are available to me," Reynolds Decl. ¶ 16, and Mr. Lee states that he switched his major from environmental policy to economics because of funding cuts, Lee Decl. ¶ 19, but none of the Plaintiffs even alleges that such funding cuts are attributable to the challenged EOs. Plaintiffs' desire to maintain federal funding for their preferred academic research programs does not create a constitutionally cognizable injury traceable to the challenged federal conduct or redressable by their requested relief.

In sum, Plaintiffs have not shown that this lawsuit satisfies the test for standing. Accordingly, the Court should dismiss the case for lack of Article III jurisdiction.

## II.     THE COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS FOR MULTIPLE REASONS.

In addition to these standing defects, Plaintiffs' claims suffer numerous other jurisdictional defects because they seek to circumvent the judicial review regimes prescribed by Congress. In asking the Court to review the President's declaration of a national emergency and to enjoin numerous agencies from revising their regulations, Plaintiffs ask this Court to exceed the jurisdiction that Congress has assigned it, and thus violate Article III of the Constitution.

### A.     Plaintiffs' challenge to the President's declaration of a National Energy Emergency raises a non-justiciable political question.

In  E.O. 14156, the President has declared a national energy emergency. Invoking the National Emergency Act, the President emphasizes the importance of

24

ensuring an "affordable and reliable energy supply" both for domestic prosperity and to "help our country compete with hostile foreign powers, strengthen relations with allies and partners, and support international peace and security." 90 Fed. Reg. 8433. Believing this declaration to be "false," Pls.' Br. 2–3, Plaintiffs ask the Court to preliminary enjoin the implementation of this declaration.

But the Court has no jurisdiction to review the President's declaration of a national emergency. "Any rule of constitutional law that would inhibit the flexibility of the President to respond to changing world conditions should be adopted only with the greatest caution, and our inquiry into matters of entry and national security is highly constrained." *Trump v. Hawaii*, 585 U.S. 667, 704 (2018) (citation modified). Cases such as this, which directly challenge the President's national security determinations, "'raise[] concerns for the separation of powers,' by intruding on the President's constitutional responsibilities in the area of foreign affairs." *Id*. (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 142 (2017)).

Consistent with these principles, courts have steadfastly refused to answer the political question raised by a president's invocation of an emergency under the National Emergency Act. *See, e.g.*, *Center for Biological Diversity v. Trump*, 453 F.Supp. 3d 11, 31–32 (D.D.C. 2020) (reviewing emergency declarations and recognizing that "no court has ever reviewed the merits of such a declaration").

Under the political question doctrine, courts "lack authority to decide a case when it involves a 'textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it.'" *D'Augusta v. Am. Petroleum Inst.*, 117 F.4th 1094, 1101 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1478 (2025) (quoting *Zivotofsky v. Clinton*, 566 U.S. 189, 195 (2012)). Here, "'[m]atters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention,' since the Constitution commits those issues to the Executive and Legislative Branches." *Center for Biological Diversity*, 453 F.Supp. 3d at 31–32 (quoting *Haig v. Agee*, 453 U.S. 280, 292 (1981)). The Court is not empowered to review the President's determination that "our Nation's dangerous energy situation inflicts unnecessary and perilous constraints on our foreign policy."  90 Fed. Reg. at 8433. Nor is there any judicially discoverable or manageable standard for determining what constitutes a national energy emergency. "Energy security is an increasingly crucial theater of global competition," *id.*, and courts are ill equipped to assess the contours of such national security questions. *See D'Augusta*, 117 F.4th at 1102 (finding no judicially manageable standard to review President's conduct of energy foreign policy because "oil plays a crucial role in our country's economic and national security interests, increasing the complexity of the foreign relations implications").

The Court must therefore decline Plaintiffs' invitation to second-guess the President's declaration of a national energy emergency.

**B.    Sovereign immunity requires that Plaintiffs' claims be heard through the judicial review schemes created by Congress**

Next, "the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Jachetta v. United States*, 653 F.3d 898, 903 (9th Cir. 2011) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). A "waiver of sovereign immunity cannot be implied, but 'must be unequivocally expressed in statutory text.'" *Id.* (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)). The "terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (citation modified). And as the parties invoking jurisdiction, Plaintiffs must identify a valid waiver that encompasses their claims. *See Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007).

Plaintiffs do not, and cannot, carry that burden. Section 702 of the Administrative Procedure Act (APA) does not waive sovereign immunity for challenges to Presidential actions, as that provision is limited to claims against "an agency or an officer or employee thereof." 5 U.S.C. § 702. As Congress explained when adding that provision, it constituted a "[p]artial [e]limination of [s]overeign [i]mmunity" "applicable only to functions falling within the definition of 'agency'" under the APA. S. Rep. No. 94-996, at 10 (1976). Because the President is not an

27

"agency," *Franklin v. Massachusetts*, 505 U.S. 788, 800 (1992), § 702 does not waive sovereign immunity for challenges to Presidential actions.[8]

Nor does the *ultra vires* doctrine permit Plaintiffs to present statutory compliance arguments against the challenged EOs. In *Nuclear Regulatory Commission v. Texas*, 145 S. Ct. 1762 (2025) (*NRC*), the Supreme Court emphasized that *ultra vires* review is "strictly limited" and does not apply whenever an executive actor "has arguably reached a conclusion which does not comport with the law." *Id.* at 1175–76 (citation modified). Rather, *ultra vires* review "applies only when" an action is "entirely in excess of . . . delegated powers and contrary to a specific prohibition in a statute." *Id.* "*Ultra vires* review is also unavailable if, as is usually the case, a statutory review scheme provides aggrieved persons 'with a meaningful and adequate opportunity for judicial review,' or if a statutory review scheme forecloses all other forms of judicial review." *Id*. at 1776 (quoting *Bd. of Governors, FRS v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991)).

---

[8] For similar reasons, courts lack "jurisdiction of a bill to enjoin the President in the performance of his official duties." *Franklin*, 505 U.S. at 802–03 (quoting *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1866)); *see also Hawaii v. Trump*, 859 F.3d 741, 788 (9th Cir.) (vacating district court injunction against President), *vacated and remanded on other grounds*, 583 U.S. 941 (2017). The district court in *Juliana* thus dismissed the President from the suit. *Juliana v. United States*, 339 F. Supp. 3d 1062, 1079 (D. Or. 2018), *rev'd and remanded*, 947 F.3d 1159 (9th Cir. 2020).

Here, persons aggrieved by forthcoming agency actions in response to the challenged EOs have meaningful and adequate opportunities for judicial review. When the EPA revises its CAA regulations or DOE revises its appliance efficiency standards, for example, aggrieved parties may challenge those actions exclusively in the courts of appeal. *Infra* 29–31. Certain other agency actions are reviewable in the district courts under the APA. Thus, like the respondents in *NRC*, who "basically dress[ed] up a typical statutory-authority argument as an *ultra vires* claim," Plaintiffs' "argument falls well shy of a meritorious [*ultra vires*] claim." 145 S. Ct. at 1176. "Where Congress has created a remedial scheme for the enforcement of a particular federal right," courts "have, in suits against federal officers, refused to supplement that scheme with one created by the judiciary." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 74 (1996) (citing *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988)).

**C.    The Court lacks jurisdiction to enjoin agency actions subject to the exclusive jurisdiction of the courts of appeal.**

Plaintiffs' action asks this Court to intrude on the exclusive jurisdiction of the courts of appeal by enjoining agency actions that can be challenged only in appellate courts. But "where a statute commits review of final agency action to the court of appeals, any suit seeking relief that might affect the court's future jurisdiction is subject to its exclusive review." *Pub. Util. Comm'r of Or. v. Bonneville Power Admin.*, 767 F.2d 622, 626 (9th Cir. 1985); *see also Telecomms. Rsch. & Action Ctr.*

*v. FCC*, 750 F.2d 70, 72 (D.C. Cir. 1984). This Court thus cannot enjoin agency defendants from taking final agency actions that lie within the exclusive jurisdiction of appellate courts.

This disposes of most of Plaintiffs' suit. Most of their alleged injuries from increased emissions are based in the assumed "repeal, or non-enforcement, of all [EPA] GHG regulations, and [DOE] efficiency rules." Jenkins Decl. ¶ 8; Compl. ¶¶ 281-291 (alleging violations of the CAA); ¶ 192 (alleging violations of EPCA). Plaintiffs also challenge DOE's approval of liquefied natural gas (LNG) exports, Compl. ¶189, which was done under the authority of the NGA, 15 U.S.C. §§ 717-717z. All these agency actions lie within the exclusive jurisdiction of the courts of appeal. *E.g.*, *Cal. Dump Truck Owners Ass'n v. Nichols*, 784 F.3d 500, 506 (9th Cir. 2015) (the CAA "channels review of final EPA action exclusively to the courts of appeal, *regardless of how the grounds for review are framed*" (citation omitted)); *Cal. Energy Comm'n v. Dep't of Energy*, 585 F.3d 1143, 1148 (9th Cir. 2009) (jurisdiction of circuit courts under EPCA extends to all DOE actions "closely intertwined with the exercise of DOE's authority under" one of the statutes listed in 42 U.S.C. § 6306(b)(1)); *Sierra Club v. U.S. Dep't of Energy*, 134 F.4th 568, 571 (D.C. Cir. 2025) (resolving direct petition for review of DOE "final order approving the [LNG] Project's export application"). Because those agency actions are subject

to the exclusive jurisdiction of the courts of appeal, this Court cannot enjoin those agencies from revising their regulations.

**D.    Where other statutes do not provide for judicial review, Plaintiffs' statutory challenges to agency actions and inaction must be brought under the APA**

The APA authorizes a reviewing court to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "contrary to constitutional right, power, privilege, or immunity," among other legal defects, 5 U.S.C. § 706(2), and to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1). The APA thus provides a "comprehensive remedial scheme" for "person[s] adversely affected or aggrieved by agency action." *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1122–23 (9th Cir. 2009) (citation omitted).

Plaintiffs do not bring their *ultra vires* claims under the APA. But this does not entitle them to circumvent the APA's arbitrary and capricious standard, because only in the narrowest of circumstances will courts permit litigants to evade a congressionally mandated judicial review scheme. Although the Ninth Circuit has recognized such an exception for claims "challenging violations of constitutional rights in the absence of a discrete agency action that caused the violation," *Juliana*, 947 F.3d at 1167; *see also Sierra Club v. Trump*, 929 F.3d 670, 699 (9th Cir. 2019); *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1172 (9th Cir. 2017), no such

31

exception exists for statutory claims, *see NRC*, 145 S. Ct. 1762; *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001).

For Plaintiffs' statutory claims, the Court should decline to invent a new remedial scheme in place of the one painstakingly outlined by Congress. Plaintiffs are required to specify the agency actions (and failures to act) that they seek to challenge, and the agency's conduct must be reviewed, if at all, under the administrative record prepared for each action. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971), *abrogated on other grounds by Califano v. Sanders,* 430 U.S. 99 (1977). And in adjudicating the case under the APA's arbitrary and capricious standard, "a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Plaintiffs have provided no explanation for why the Court should jettison these standards in this case. Nor have they explained their entitlement to bundle together scores of actions undertaken by a dozen different agencies to launch the sort of "broad programmatic attack" that is foreclosed by the APA. *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1010 (9th Cir. 2021) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61–62 (2004)).

### III.    PLAINTIFFS HAVE FAILED TO ESTABLISH THAT THEY ARE ENTITLED TO THE EXTRAORDINARY REMEDY OF A PRELIMINARY INJUNCTION.

#### A.    Plaintiffs have failed to establish a likelihood of success, or even serious questions, as to the merits.

##### 1.    Substantive due process claims

Even were the Court to find that it likely had jurisdiction over Plaintiffs'

substantive due process claims, those claims fail on the merits for several reasons.

The Due Process Clause does not state a substantive right to "enjoy this

terrestrial existence" or to a "stable climate system," as Plaintiffs suggest. Compl. ¶

255. Nor does it contain Plaintiffs' desired right to federal government promotion or

prohibition of various energy sources. Plaintiffs are thus asking the Court to find

those substantive rights implied in the Fifth Amendment rights to life and liberty,

although the Supreme Court "has long been 'reluctant' to recognize rights that are

not mentioned in the Constitution." *Dobbs v. Jackson Women's Health Org.*, 597

U.S. 215, 239 (2022) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992)).

This judicial resistance to recognizing unenumerated rights derives from

respect for co-equal branches. Because the "treacherous field" of substantive due

process "has sometimes led the Court to usurp authority that the Constitution entrusts

to the people's elected representatives," the Court has carefully "guard[ed] against

the natural human tendency" to adopt its "own ardent views about the liberty that

Americans should enjoy," lest its jurisprudence deteriorate into "the freewheeling

judicial policymaking that characterized discredited decisions such as *Lochner v. New York*, 198 U.S. 45 (1905)." *Dobbs*, 597 U.S. at 239–40 (citation modified). The Supreme Court has thus repeatedly instructed courts considering novel due process claims to "exercise the utmost care whenever . . . asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into [judicial] policy preferences." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citation modified).

To discipline this natural tendency for judicial policymaking, the Supreme Court has adopted a "two-step inquiry" for resolving substantive due process claims. *Dep't of State v. Munoz*, 602 U.S. 899, 910 (2024) (citing *Glucksberg*, 521 U.S. at 720–21). *First*, Plaintiffs must provide a "careful description of the asserted fundamental liberty interest." *Id. Second*, Plaintiffs must demonstrate that the asserted right is "objectively, deeply rooted in this Nation's history and tradition." *Id.* Plaintiffs fail at both steps of the inquiry.

Like other unsuccessful substantive due process claimants, Plaintiffs' asserted right is "difficult to pin down." *Id.* Rather than provide the requisite "careful description" of their asserted right, Plaintiffs assert a broad spectrum of amorphous rights, rarely dwelling on a particular one. *E.g.*, Compl. ¶ 255 (the "right of living, breathing persons to enjoy this terrestrial existence" requires "a life-sustaining, stable climate system"); *id.* (the right of children "to develop healthfully into their

34

full adult living form"); *id.* ¶ 265 (rights to "personal security, bodily integrity, dignity, opportunity to pursue happiness, the right to practice culture, and the right to form families"). Their failure to carefully describe the asserted right provides sufficient ground to deny their claim. *E.g.*, *CareToLive v. von Eschenbach*, 525 F. Supp. 2d 952, 965 (S.D. Ohio 2007) (rejecting substantive due process claim asserting a right to "'the preservation of a man's health,' a 'right of control over one's body' and 'personal security' including 'a person's legal and uninterrupted enjoyment of his life, his limbs, his body, [and] his health'" for failing to comply with *Glucksberg*'s "careful description" requirement).

Plaintiffs' obfuscation attempts to avoid the near universal rejection of substantive due process claims to environmental rights. *See, e.g., Guertin v. Michigan*, 912 F.3d 907, 921-22 (6th Cir. 2019) (The "Constitution does not guarantee a right to live in a contaminant-free, healthy environment."); *Nat'l Sea Clammers Ass'n v. City of New York*, 616 F.2d 1222, 1237-38 (3d Cir. 1980) (finding it "established in this circuit and elsewhere that there is no constitutional right to a pollution-free environment"), *vacated on other grounds sub nom. Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1 (1981); *Ely v. Velde*, 451 F.2d 1130, 1139 (4th Cir. 1971) (observing that arguments "in support of a constitutional protection for the environment" have not "been accorded judicial sanction"); *Lake v. City of Southgate*, No. 16-10251, 2017 WL 767879, at *4 (E.D.

Mich. Feb. 28, 2017) ("[W]henever federal courts have faced assertions of fundamental rights to a 'healthful environment' or to freedom from harmful contaminants, they have invariably rejected those claims."); *SF Chapter of A. Philip Randolph Inst. v. U.S. EPA*, No. C 07-04936 CRB, 2008 WL 859985, at *7 (N.D. Cal. Mar. 28, 2008) (rejecting asserted rights to be free from climate change pollution and to have a certain quality of life); *Burnette v. Carothers*, No. 3:94-CV-00420 (EBB), 1998 WL 136177, at *5 (D. Conn. Mar. 11, 1998) ("there exists no constitutional right to be free from environmental pollution").[9]

Ultimately, Plaintiffs' Complaint asserts a constitutional right to federal policy disfavoring fossil fuels and promoting other energy sources (*e.g.*, solar power and EVs). It is impossible to see how such a right to government promotion of modern technologies can be "objectively, deeply rooted in this Nation's history and tradition." *See Munoz*, 602 U.S. at 910 (citation omitted). The Supreme Court has emphasized that "the Due Process Clause was intended to prevent government officials 'from abusing [their] power, or employing it as an instrument of

---

[9] An outlier among this collection of cases is the district court's erroneous decision in *Juliana v. United States*, 217 F. Supp. 3d 1224 (D. Or. 2016), *rev'd and remanded*, 947 F.3d 1159 (9th Cir. 2020). Not only did the district court lack jurisdiction over the case when it rendered its decision, *Juliana*, 947 F.3d at 1175, but it's reasoning and conclusions "certainly contravened or ignored longstanding authority," *Clean Air Council*, 362 F. Supp. 3d at 250; *accord City of Southgate*, 2017 WL 767879, at *4, n.3.

oppression.'" *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998) (quoting *Collins,* 503 U.S. at 126). That Plaintiffs may prefer EVs or solar power, and believe them to be the best energy policy for the nation, is a political—not a constitutional—dispute, because making environmental policy involves balancing "competing social, political, and economic forces." *Collins*, 503 U.S. at 128.

Lacking any historical analogue for their asserted right to EVs and solar power, Plaintiffs attempt to import state law into the Fifth Amendment. Pls.' Br. 32–35. Relying on provisions of Montana and Hawaii law, Plaintiffs seek to use the outcomes of two state court lawsuits to take control of the Federal Government's stewardship of the nation's energy economy. But Plaintiffs overlook that environmental rights under state constitutions do not create federal liberty interests. *Delaware Riverkeeper Network v. FERC*, 895 F.3d 102, 108 (D.C. Cir. 2018), (rejecting the argument that the Pennsylvania Constitution's "right to a healthy environment can itself fairly be described as a 'liberty' interest" because it "bears no relationship to the quintessential liberty interest—'freedom from bodily restraint'" and it does not "protect activities that have been held to constitute federally protected liberty interests" (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572 (1972))), *overruled on other grounds by Allegheny Def. Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020). Additionally, "the Supreme Court has never held that such state-created interests constitute a fundamental liberty interest protected under a

*substantive* due process theory. Rather, the Court has analyzed state-created liberties under a *procedural* due process theory." *Kraushaar v. Flanigan*, 45 F.3d 1040, 1047 (7th Cir. 1995). Because endowing such state-created interests with substantive due process protections under the Fifth Amendment would invert the Supremacy Clause of the Constitution, the Court should decline Plaintiffs' state-liberties argument.

### 2.    Claim 3 - EPA

In addition to the jurisdictional hurdles discussed above, Plaintiffs are unlikely to succeed on the merits of Claim 3. Plaintiffs allege in Claim 3 that EPA is acting *ultra vires* as it cannot implement the challenged EOs without violating the CAA. Plaintiffs' core theory is that the CAA is a one-way ratchet for phasing out fossil fuels; after EPA adopts regulations that raise the costs of using fossil fuels, in Plaintiffs' view, EPA can no longer revise those regulations. *See* Pls.' Br. at 22–24 (citing *West Virginia v. EPA*, 597 U.S. 697, 723 (2022)).

Plaintiffs' argument violates black-letter administrative law establishing that agencies may reconsider their prior actions. *E.g.*, *FDA v. Wages & White Lion Invs., L.L.C.*, 145 S. Ct. 898, 917 (2025); *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). Because "regulatory agencies do not establish rules of conduct to last forever," "an agency must be given ample latitude to adapt their rules and policies to . . . changing circumstances." *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto Ins. Co.*, 463 U.S. 29, 42 (1983) (citation omitted).

In asking the Court to enjoin the EPA from even "consider[ing] revising or rescinding" its existing regulations, *see* 90 Fed. Reg. 15518, Plaintiffs are asking the Court to upend administrative law. The Court cannot step into the role of EPA Administrator and determine as a preliminary matter whether and to what extent EPA can even consider revising its standards. *See Driftless Area Land Conserv. v. Rural Utils. Serv.*, 74 F.4th 489, 494-95 (7th Cir. 2023) (holding that district court erred in declaring proposed agency action unlawful under the APA). Such relief would raise separation-of-powers concerns, similar to those underlying the Ninth Circuit's decision in *Juliana*, 947 F.3d at 1171-72.

Plaintiffs' challenges to non-final agency action are not ripe for the Court's review. *See Mont. Sulphur & Chem Co. v. United States*, 666 F.3d 1174, 1183 (9th Cir. 2012). Through the CAA, Congress has provided for judicial review of final agency actions. *See* 42 U.S.C. § 7607(b). Congress also created a cause of action for suits against EPA when it fails to perform a mandatory duty under the Act. 42 U.S.C. § 7604. But Congress has not waived the United States' sovereign immunity for review of non-final agency actions, and waivers of sovereign immunity are to be narrowly construed. *See Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992).

Regardless, EPA may reconsider its prior actions, provided the agency follows the proper procedures. *See State Farm*, 463 U.S. at 51-52. The challenged EOs do not exempt EPA or any other agency from complying with statutory

39

requirements, including the applicable opportunities for public notice and comment. *See* 42 U.S.C. § 7607(d); 90 Fed. Reg. 9436-37; *id.* at 8359; *id.* at 15519-20. EPA thus has statutory authority to implement the EOs consistent with existing law, and Plaintiffs have not demonstrated that EPA is acting *ultra vires*.

### 3.    Claim 4 - USGCRP

Plaintiffs' fourth claim focuses on "disbanding USGCRP and defunding and canceling the NCA pursuant to the EOs." Br. 25. This claim fails at the outset, as Plaintiffs have failed to connect any decisions involving USGCRP or the NCA to the challenged EOs, which do not even mention those programs.[10] Rather than connect these decisions to the challenged EOs, Plaintiffs tellingly cite to Project 2025 instead of an executive branch action. Dkt. 25-15 ¶ 25.

In any event, Plaintiffs are unlikely to succeed on their underlying argument that USGCRP will fail to meet its statutory duty to prepare a quadrennial assessment that "analyzes current trends in global change, both human-inducted and natural, and projects major trends for the subsequent 25 to 100 years." 15 U.S.C. § 2936. Plaintiffs' evidence admits such an assessment is not due until late "2027 or 2028."

---

[10] In contrast, unchallenged EO 14303 – Restoring Gold Standard Science specifically mentions the content of the most recent NCA, while "restoring a gold standard for science to ensure that federally funded research is transparent, rigorous, and impactful, and that Federal decisions are informed by the most credible, reliable, and impartial scientific evidence available." 90 Fed. Reg. 22601 (May 29, 2025) ("Scientists have warned that presenting RCP 8.5 as a likely outcome is misleading.").

Olson Decl. Ex. WW, at ECF 370. Because they have provided no reason to believe that USGCRP will be unable to meet that far-away deadline, Plaintiffs are unlikely to succeed on claim 4.[11]

### 4.      Claim 5 – Science at NASA, NIH, NSF, NOAA, and DOT

Plaintiffs' fifth claim attacks a smorgasbord of agency actions—from NASA's termination of a real estate lease, to personnel reductions and database funding decisions at NOAA; from the reorganization of NSF and DOT, to grant terminations at NIH—all under the guise of an *ultra vires* challenge to energy EOs that do not call for such agency restructuring. *See* Pls.' Br. 25–28.

Plaintiffs are unlikely to succeed on the merits of their claim, as they cannot even show the described agency actions were taken to implement the challenged EOs, as opposed to the other unchallenged EOs governing government efficiency and scientific standards.

Additionally, as explained above, Plaintiffs have not shown how they are injured by any of the described agency restructurings or funding terminations. At best, Plaintiffs claim injuries from the alleged deletion of climate data by NASA. *See* Pls.' Br. 27. But Plaintiffs have not provided any evidence that NASA even

---

[11] To the extent that Plaintiffs seek to challenge Presidential oversight over the composition of USGCRP under 15 U.S.C. § 2933, they have not articulated any cognizable waiver of sovereign immunity or cause of action to seek judicial review of such Presidential action. *See supra* 27–28.

deleted such climate data, which is still accessible on NASA's website.  Sawyer Decl. ¶ 7, Ex. F.

In sum, Plaintiffs' fifth claim presents an unmanageable challenge to a wide variety of agency actions unconnected to the challenged EOs. Because Plaintiffs have failed to show how those agency actions inflict any injury on them, they have failed to establish a likelihood of success on their fifth claim.

### B.    Plaintiffs are not likely to suffer imminent, irreparable harm absent an injunction.

A preliminary injunction cannot issue without a likelihood of "imminent, irreparable harm absent an injunction." *All. for the Wild Rockies v. Petrick*, 68 F.4th 475, 490 (9th Cir. 2023). Plaintiffs' significant delay in seeking an injunction thus "implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Publ'g Co.,* 762 F.2d 1374, 1377 (9th Cir. 1985). In waiting nearly five months— 144 days—after two inauguration-day EOs issued to seek a preliminary injunction, Plaintiffs' delay "vitiates much of the force of their allegations of irreparable harm." *Beame v. Friends of the Earth*, 434 U.S. 1310, 1313 (1977) (holding that 110-day delay undercut claimed irreparable harm).

This lack of imminent harm is confirmed by their only witness that attempts to measure how the challenged EOs will affect emissions (and thus Plaintiffs' climate-related harms). *See* Jenkins Decl. ¶ 7 (describing study analyzing "impacts of the changes in federal policy that President Trump has directed through his

Executive Orders"). Although that study attempts to quantify how emissions will change from Executive Branch policy, beyond the challenged EOs,[12] it was unable to quantify any such effect before 2027. *Id.* ¶¶ 18-19. Jenkins' attempt to measure any immediate emissions impact is limited to identifying a handful of energy approvals, *see id.* ¶ 20, which is insufficient to even create standing for climate-related harms, let alone irreparable harm. *Supra* 19–20.

In addition to lacking imminent injury, Plaintiffs have failed to establish the requisite causal nexus between their alleged harms and their requested injunction. To demonstrate "a sufficient causal connection between" their claimed irreparable harm and the activity to be enjoined, Plaintiffs must show "the requested injunction would forestall" that harm. *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981 (9th Cir. 2011). Here, Plaintiffs' claimed climate-related harms occurred before the challenged EOs issued. *E.g.*, Dkt. 25-4 ¶¶ 14-15 (flooding occurred in 2022). Because the requested injunction against the EOs would not forestall the recurrence of harms predating the challenged EOs, Plaintiffs have not established cognizable irreparable harm.

---

[12] For example, he discusses presidential actions to "block the build out of wind," presumably referring to a Presidential memorandum pausing wind permitting pending a comprehensive review that is not challenged in this litigation. *Compare* Jenkins Decl. ¶ 8, *with* Olson Decl. Ex. B, at ECF 50–52.

Indeed, Plaintiffs' proffered testimony demonstrates another causal problem with Plaintiffs' attempted irreparable harm showing. In purporting to quantify the emissions effects of Executive Branch policy, Jenkins focused almost entirely on agency actions that lie within the exclusive jurisdiction of the courts of appeal. *Compare* Jenkins Decl. ¶ 8, 20 (focusing on the repeal of EPA GHG regulations, DOE efficiency rules, and DOE export approvals), *with supra* 29–31 (demonstrating that such actions can be reviewed only by appellate courts). Plaintiffs have thus failed to carry their burden to show that the requested preliminary injunction would forestall Plaintiffs' claimed harms from increased emissions, particularly where the Court cannot issue a preliminary injunction that tramples on the exclusive jurisdiction of appellate courts.

### C.  The balance of hardships weighs heavily against injunctive relief.

"When a federal court enters a universal injunction against the Government, it improperly intrudes on a coordinate branch of the Government and prevents the Government from enforcing its policies against nonparties." *CASA*, 2025 WL 1773631, at *14 (citation modified). Such judicial excess inflicts "irreparable harm" on the Government. *Id.*

The irreparable harm to the Government in this case would be immense. Plaintiffs' requested universal injunction intrudes on core areas of Executive Branch authority, including foreign affairs (*e.g.*, by halting energy exports) and national security (*e.g.*, by obstructing grid reliability measures). It would prevent the current

44

administration from reconsidering regulations adopted by the previous administration, thus effectively curtailing the President's term in office and foiling the will of the American people exercised through the recent election. And it would stymie the "energetic executive" deemed essential by the Framers, *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 223 (2020), by forcing the Executive Branch to use inefficient permitting processes when delivering vital infrastructure projects to the public.

Plaintiffs' requested injunction would also inflict tremendous harm on the public, by reducing the reliability of the energy grid and domestic supply chains. It would greatly increase the potential for power outages, by 100 times (*i.e.*, 10,000%) in 2030. *See* Sawyer Ex. D, at 1. It would harm efforts to strengthen the domestic supply chain for critical minerals, *see* Harker Decl. ¶¶ 3–5, Exs. A–B, thus harming efforts to produce numerous energy technologies, including Plaintiffs' preferred technologies, Kokkinos Decl. ¶¶ 2–4, Exs. A–B. If Plaintiffs succeed in seeking an injunction that forces power plants or mines to shut down imminently, they would devastate thousands of workers and their families, not to mention entire communities, such as Colstrip, Montana, that depend on those jobs.

Because the balance of harms weighs heavily against Plaintiffs' requested injunction, the Court should deny their requested relief.

45

## IV.    ANY PRELIMINARY INJUNCTION MUST BE ACCOMPANIED BY AN APPROPRIATE BOND.

Rule 65(c) permits a court to grant preliminary injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Although Ninth Circuit law allows a district court to "dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct," *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003), such a determination is no longer possible in this case following *Trump v. Casa*, where the Supreme Court recently held that a universal injunction against the Government inflicts irreparable harm on the Executive Branch by improperly intruding on a coordinate branch and preventing the Government from enforcing its policies. *See* 2025 WL 1773631, at *14–15.

Because Plaintiffs' requested preliminary injunction would substantially harm the government—by stopping numerous agencies from undertaking rulemakings, by requiring agencies to disburse funding before completing a review to better steward taxpayer dollars, by forcing agencies to use inefficient methods of permitting numerous forms of energy infrastructure—a substantial bond of at least $1 billion should be required to compensate the government for this harm.

Such a bond would not "effectively deny access to judicial review," as Plaintiffs claim. *See* Pls.' Br. 46–47. Plaintiffs would still be entitled to have their

claims adjudicated by this Court and higher courts as appropriate. The bond would only be required if Plaintiffs seek to impose an immediate remedy before a higher court can review the validity of their novel substantive due process theories.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' preliminary injunction motion in its entirety.

DATED: 11th day of July, 2025.

Respectfully submitted,

Adam R.F. Gustafson
*Acting Assistant Attorney General*
Robert N. Stander
*Deputy Assistant Attorney General*
Environment & Natural Resources Div.
United States Department of Justice

*/s/ Michael S. Sawyer*
Michael S. Sawyer
Erik Van de Stouwe
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 514-5273 (Sawyer)
Tel: (202) 305-0247 (Van de Stouwe)

michael.sawyer@usdoj.gov
erick.van.de.stouwe@usdoj.gov

Miranda M. Jensen
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 598-3071
miranda.jensen@usdoj.gov

*Attorneys for Defendants*

## **<u>CERTIFICATE OF COMPLIANCE</u>**

Pursuant to L.R. 7.1(d)(2)(E), I certify that the foregoing brief has a word count of 10,865 words, excluding the portions exempted by L.R. 7.1(d)(2)(E) and the Table of Abbreviations.

*/s/ Michael S. Sawyer*
Michael S. Sawyer
