Roger Sullivan
McGARVEY LAW
345 1st Avenue East
Kalispell, MT 59901
(406) 752-5566
rsullivan@mcgarveylaw.com

Philip L. Gregory*
GREGORY LAW GROUP
1250 Godetia Drive
Redwood City, CA 94062
(650) 278-2957
pgregory@gregorylawgroup.com

Julia A. Olson*
Andrea K. Rodgers*
Nathan Bellinger*
OUR CHILDREN'S TRUST
1216 Lincoln St.
Eugene, OR 97401
(415) 786-4825
julia@ourchildrenstrust.org
andrea@ourchildrenstrust.org
nate@ourchildrenstrust.org

Daniel C. Snyder*
Haley Nicholson*
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600
dsnyder@publicjustice.net
hnicholson@publicjustice.net

*Attorneys for Plaintiffs*
*Admitted pro hac vice*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| **EVA LIGHTHISER**; et al. <br> Plaintiffs, <br><br> v. <br><br> **DONALD J. TRUMP**, in his official capacity as President of the United States; et al. <br> Defendants. | Case No: CV-25-54-BU-DLC <br><br> **REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ ii

I.    INTRODUCTION.............................................................................1

II.   A PRELIMINARY INJUNCTION IS NECESSARY TO PREVENT
      IRREPARABLE HARM TO PLAINTIFFS ....................................................1

      A.    This Court Has Jurisdiction ......................................................1

            1.    Plaintiffs Have Article III Standing .......................................2

                  a.    The Supreme Court's Recent Opinions in *Diamond Alternative
                        Energy* and *Gutierrez* Are Controlling, not *Juliana* .........................2

                  b.    Plaintiffs' Imminent Injuries Are Traceable to the Challenged EOs .4

                  c.    Plaintiffs' Imminent Injuries Will Be Partially Redressed by
                        Equitable Relief .................................................................8

            2.    The Constitutionality of the President's Energy Emergency EO Is
                  Not a Political Question ........................................................10

            3.    The Ninth Circuit Has Already Rejected Defendants' APA and
                  Sovereign Immunity Arguments ...............................................12

      B.    Plaintiffs Meet the Serious Questions and Likelihood of Success
            Standards..............................................................................14

            1.    Plaintiffs Show Deprivations of Enumerated and Recognized Rights .14

            2.    The EOs Are Ultra Vires in Requiring EPA to Unleash Pollution ........16

            3.    Defendants Do Not Contest a Peer-Reviewed NCA Will Not Be
                  Prepared ..........................................................................17

            4.    Defendants' Dismantling of Climate Science Pursuant to the EOs
                  Harms Plaintiffs ................................................................17

      C.    Plaintiffs' Injuries Will Be Irreparable Absent an Injunction.....................18

      D.    The Balance of Hardships and the Public Interest Weigh Heavily in
            Favor of a Preliminary Injunction............................................20

III.  SEEKING A $1 BILLION BOND FROM YOUTH ENFORCING THEIR
      CONSTITUTIONAL RIGHTS IS UNPRECEDENTED ..............................22

IV.   CONCLUSION ................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Arc of California v. Douglas*,
    757 F.3d 975 (9th Cir. 2014) ........................................................................ 19, 20

*Baker v. Carr*,
    369 U.S. 186 (1962) .................................................................................... 10, 11

*Barahona-Gomez v. Reno*,
    167 F.3d 1228 (9th Cir. 1999) ............................................................................ 22

*Boumediene v. Bush*,
    553 U.S. 723 (2008) .......................................................................................... 14

*Caterpillar Inc. v. Williams*,
    482 U.S. 386 (1987) .......................................................................................... 13

*Climate United Fund v. Citibank*,
    No. 25-CV-698, 2025 WL 1118430 (D.D.C. Apr. 15, 2025) .............................. 22

*Dalton v. Specter*,
    511 U.S. 462 (1994) .......................................................................................... 12

*Diamond Alternative Energy, LLC v. EPA*,
    145 S. Ct. 2121 (2025) .................................................................................. passim

*Doe #1 v. Trump*,
    957 F.3d 1050 (9th Cir. 2020) ............................................................................ 14

*Doe v. Horne*,
    115 F.4th 1083 (9th Cir. 2024) ........................................................................... 19

*FDA v. All. for Hipp. Med.*,
    602 U.S. 367 (2024) ............................................................................................ 2

*Flathead Warming Ctr. v. City of Kalispell*,
    756 F. Supp. 3d 985 (D. Mont. 2024) ........................................................... 18, 20

*GTA Containers, Inc. v. United States*,
    103 Fed. Cl. 471 (2012) ..................................................................................... 21

*Gutierrez v. Saenz*,
   145 S. Ct. 2258 (2025) ................................................................................passim

*Held v. Montana*,
   560 P.3d 1235 (Mont. 2024) ....................................................................5

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010).....................................................................................11

*Imperial Sovereign Ct. of Montana v. Knudsen*,
   684 F. Supp. 3d 1095 (D. Mont. 2023) ...................................................21

*Juliana v. United States*,
   947 F.3d 1159 (9th Cir. 2020) ..........................................................passim

*McNary v. Haitian Refugee Ctr., Inc.*,
   498 U.S. 479 (1991)..................................................................................13

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012)....................................................................18

*Menges v. Knudsen*,
   538 F. Supp. 3d 1082 (D. Mont. 2021) ...................................................22

*Murphy Co. v. Biden*,
   65 F.4th 1122 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 1111 (2024)....................12

*Navajo Nation v. Dep't of the Interior*,
   876 F.3d 1144 (9th Cir. 2017) .................................................................13

*Palantir USG, Inc. v. United States*,
   129 Fed. Cl. 218 (2016) ...........................................................................21

*People of State of Calif. ex rel. Van de Kamp v. Tahoe Reg'l Plan. Agency*,
   766 F.2d 1319 (9th Cir. 1985) .................................................................22

*Perfect 10, Inc. v. Google, Inc.*,
   653 F.3d 976 (9th Cir. 2011) ...................................................................19

*Rodriguez v. Robbins*,
   715 F.3d 1127 (9th Cir. 2013) .................................................................22

*Sierra Club v. Trump*,
    929 F.3d 670 (9th Cir. 2019) ......................................................... 12, 13

*Trump v. CASA, Inc.*,
    No. 24A884, 2025 WL 1773631 (U.S. June 27, 2025) ....................... 20

*Trump v. United States*,
    603 U.S. 593 (2024) .......................................................................... 14

*Uzuegbunam v. Preczewski*,
    592 U.S. 279 (2021) .......................................................................... 10

*Washington Env't Council v. Bellon*,
    732 F.3d 1131 (9th Cir. 2013) ............................................................ 5

*Washington v. Glucksberg*,
    521 U.S. 702 (1997) .......................................................................... 15

*Washington v. Trump*,
    847 F.3d 1151 (9th Cir. 2017) .......................................................... 14

*Wolff v. McDonnell*,
    418 U.S. 539 (1974) .......................................................................... 16

*Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*,
    No. 25-CV-00097, 2025 WL 1116157 (D.R.I. Apr. 15, 2025) ........... 22

*Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579 (1952) .......................................................................... 14

*Ziglar v. Abbasi*,
    582 U.S. 120 (2017) .......................................................................... 13

*Zivotofsky v. Clinton*,
    566 U.S. 189 (2012) ..................................................................... 10, 11

**Constitutional Provisions**

U.S. Const. amend. V ............................................................................. 15

U.S. Const. art. I .................................................................................... 12

U.S. Const. art. I, § 7 ............................................................................. 12

U.S. Const. art. II......................................................................................12

U.S. Const. art. II, § 3.............................................................................12

**Rules**

Fed. R. Evid. 702........................................................................................1

**Other Authorities**

Exec. Order No. 14154, Unleashing American Energy, 90 Fed. Reg. 8353
   (Jan. 29, 2025).....................................................................................7

## I.    INTRODUCTION

Defendants' Opposition to Preliminary Injunction Motion fails to provide a credible factual basis or constitutional authority for the challenged Executive Orders ("EOs"), which irreparably harm Plaintiffs' lives and liberties. Defendants neither bring forward qualified experts[1] nor contest Plaintiffs' experts on climate science, economics, health, or energy, or Plaintiffs' fact witnesses. Defendants misconstrue Dr. Jenkins' modeling demonstrating the EOs' *immediate* effect on greenhouse gas emissions ("GHG") and the suppression of renewable energy, which Plaintiffs correct in supplemental declarations filed herewith. Defendants also ignore recent Supreme Court precedent directly supporting Plaintiffs' standing in this case.

## II.    A PRELIMINARY INJUNCTION IS NECESSARY TO PREVENT IRREPARABLE HARM TO PLAINTIFFS

### A.    This Court Has Jurisdiction

Defendants' standing arguments ignore binding precedent, mischaracterize Plaintiffs' claims, and ask this Court to turn a blind eye to the unrefuted scientific evidence before it on the harms to Plaintiffs. Plaintiffs do not ask or require this Court to broadly "redress global climate change." Opp'n.1. Rather, Plaintiffs ask this Court to redress Plaintiffs' harms from the unleashing—by these EOs—of fossil fuel pollution and the coordinate dismantling of science. Plaintiffs' claims are justiciable.

---

[1] Plaintiffs reserve the right to object to unqualified expert opinions by Kokkinos, Harker, LaRose. Fed. R. Evid. 702.

### 1.    Plaintiffs Have Article III Standing

Plaintiffs adequately address standing by "answer[ing] a basic question—'What's it to you?'" *Diamond Alternative Energy, LLC v. EPA*, 145 S. Ct. 2121, 2133 (2025) (quoting *FDA v. All. for Hipp. Med.*, 602 U.S. 367, 379 (2024)). Plaintiffs' answer: our lives, our health, our safety, our families, our culture, our economic resources, and our dignity.

### a.    The Supreme Court's Recent Opinions in *Diamond Alternative Energy* and *Gutierrez* Are Controlling, not *Juliana*

Since Plaintiffs moved for preliminary relief but before Defendants responded, the Supreme Court issued two new opinions on standing which decisively support Plaintiffs' standing here and crystallize the proper analysis for determining injury, traceability, and importantly—redressability—for all federal courts. *Diamond Alternative Energy*, supra; *Gutierrez v. Saenz*, 145 S. Ct. 2258 (2025). These standing precedents direct this Court's analysis, not *Juliana v. United States*, 947 F.3d 1159 (9th Cir. 2020).

In *Diamond* and *Gutierrez*, the Supreme Court reversed Circuit Courts' denial of standing on redressability grounds and clarified how injury, traceability, and redressability are satisfied: "monetary costs 'are of course an injury;'" and even "one dollar['s]" worth of redress is enough. *Diamond*, 145 S. Ct. at 2135 (internal citations omitted); *Gutierrez*, 145 S. Ct. at 2268-69 (removal of one legal barrier to real-world

redress is sufficient, even if other barriers remain). On redressability, the Supreme Court ruled that courts have jurisdiction to redress constitutional injuries—like those alleged here—with declaratory judgments by ordering a change in the legal status of the parties and eliminating the government's unlawful justification for its conduct, even if the plaintiff never achieves full redress. *Gutierrez*, 145 S. Ct. at 2266.

Because the Ninth Circuit's 2020 opinion in *Juliana* preceded these new precedents on redressability, *Juliana* does not bind this Court's analysis; the Supreme Court's opinions do. This Court need not decide whether the Ninth Circuit's 2020 redressability analysis in *Juliana* would hold up after *Diamond* and *Gutierrez* because this case is not *Juliana*, which had different substantive due process claims for relief not involving these EOs, did not include ultra vires claims, and sought a different remedy. *Juliana*, 947 F.3d at 1169-70 (plaintiffs' "sole claim is that the government has deprived them of a substantive constitutional right to a 'climate system capable of sustaining human life,'" and "[t]he crux of the plaintiffs' requested remedy is an injunction requiring the government not only to cease permitting, authorizing, and subsidizing fossil fuel use, but also to prepare a plan subject to judicial approval to draw down harmful emissions."). Accordingly, Defendants' reliance on *Juliana* is misplaced where *Gutierrez* unequivocally holds that a declaratory judgment regarding constitutional injuries satisfies redressability, regardless of what happens next. *Gutierrez*, 145 S. Ct. at 2266-69.

*Diamond* and *Gutierrez* clearly direct this Court's analysis and support the conclusion that Plaintiffs have met their standing burden to proceed.

### b.    Plaintiffs' Imminent Injuries Are Traceable to the Challenged EOs

On traceability, the Court can make "commonsense inferences" that the EOs will have their intended effect of unleashing fossil fuels, producing less renewable energy, and selling fewer EVs and "will likely 'cause downstream'" effects on "others in the chain," like Plaintiffs who breathe the polluted air and suffer from the increasing temperatures. *Diamond*, 145 S. Ct. at 2136-37 (internal citation omitted) (policies designed to increase EV sales will harm gasoline sellers by reducing gasoline sales). These "commonsense inferences" are directly supported by Plaintiffs' unrefuted expert declarations that the EOs are already doing just that, causing more pollution, trapping more heat, and injuring Plaintiffs. Jenkins ¶¶18,21; Jenkins Suppl. ¶¶2-6; Erickson ¶¶13-19; Erickson Suppl. ¶¶16-19; Byron ¶17; Balmes ¶¶20,24,28. The resulting pollution will heat the states where Plaintiffs live faster than the rest of the country. Running ¶¶29-30.

Every additional ton of fossil fuel production and pollution that *could have been avoided*, but is instead intentionally "unleashed" by the EOs, is an added injury to Plaintiffs whose lives, security, health, culture, familial choices, and finances are at significant risk and will be made worse by each added ton of pollution and

increment of heat. Defendants do not dispute that *every additional ton* of $CO_2$ emitted today makes Plaintiffs' injuries worse. Running ¶¶18-19,28; Byron ¶17.[2]

Defendants do not get a free pass under the ultra vires EOs to cause more harm simply because the climate system is already polluted and Plaintiffs' bodies are already harmed. *See Diamond*, 145 S. Ct. at 2135 (ruling that even if more EVs are being sold, if fuel producers could make $1 more in fuel sales without the challenged policies, that is enough for standing); *see also Held*, 560 P.3d at 1254-55. Indeed, the evidence of past harm to Plaintiffs from fossil fuel pollution is itself evidence of likely future harm caused by policies directing more fossil fuel development. *Diamond*, 145 S. Ct. at 2137 (evidence of past harm shows contested policies—or their elimination—likely "would make a difference"). Defendants' EOs and their implementation cause Plaintiffs concrete, particularized, imminent injuries, all of which are undisputed by Defendants, e.g.:

**Injury to life:** Every increment of increased heat increases Joseph's risk of death or bodily harm, because "when I get too hot, I suffer life-threatening heat

---

[2] Defendants' reliance on *Washington Environmental Council v. Bellon*, 732 F.3d 1131 (9th Cir. 2013), is unpersuasive because it relies on 12-year-old-outdated science. It is also distinguishable because the unrefuted evidence here shows the challenged EOs will cause globally significant GHG emissions and every additional ton of $CO_2$ further dangerously warms the planet and injures Plaintiffs. Jenkins ¶¶9,18; Jenkins Suppl. ¶5; Running ¶¶18,28; Jacobson ¶¶30-31,35; Balmes ¶¶21-25,28,30. Moreover, these same arguments on injury and traceability were rejected by the Ninth Circuit more recently, *Juliana*, 947 F.3d at 1169, and by the Montana Supreme Court, *Held v. Montana*, 560 P.3d 1235, 1254-55 (Mont. 2024).

illness." Joseph ¶6. Joseph has been hospitalized, intubated, and nearly died from dangerous heat exposure, and is sensitive to any increase in extreme heat more fossil fuel pollution will cause. Joseph ¶¶6-8; Byron ¶¶20,23-24. Joseph and other Plaintiffs are at high risk of suffering death, injury, and interruption of daily life from increased heat, meaning every increase causes Joseph and Plaintiffs compounding harm. Byron ¶¶20,22-24; *id.* ¶17 ("each additional ton of pollution increases the risk of death"). Olivia, J.K., and N.K. have respiratory diseases, including asthma that is so severe that even a small increase in wildfire smoke caused by more heat endangers their lives. Compl.¶¶13,18; Byron ¶¶24-25.

**Injury to recognized liberties:** Every increment of heat exacerbates hurricane danger for Avery. Since 2023, Avery has evacuated *four times* to avoid death or bodily harm from major hurricanes, costing her thousands of dollars to buy safety. Avery ¶¶7-11. More fossil fuel pollution means more heat, which causes storms to intensify into major hurricanes, impacting the area where Avery and Delaney live, and risking their personal security. Delaney ¶¶9-10; *see also* Eva ¶¶11-17 (more river flooding).

Every increase in fossil fuel-polluted air and attendant smoke season increases harm to Plaintiffs J.K., N.K., Olivia, and Joseph who suffer from respiratory illnesses that lead to medications, hospitalization, and indoor confinement, stripping them of the opportunity to be outside—happy, safe, and dignified in their bodies. Balmes

6

¶¶17-19,29-32; Byron ¶20; Olivia ¶¶5,10; Anderson ¶¶3-5; Joseph ¶¶4,7-9. Plaintiffs J.M., Avery, and Rikki, who have not yet developed asthma, but are at increasing risk, cannot shelter from smoke indoors because they ranch or farm, and "caring for animals needs to get done regardless of the air quality." J.M. ¶4; Avery ¶3; Compl.¶11. At the same time, Plaintiffs' opportunities to engage in long-standing cultural traditions are being eroded. Kalālapa ¶¶5-6. For others, climate dangers caused by Defendants' "unleashing" of fossil fuels is the primary obstacle preventing them from having children. Olivia ¶10; Avery ¶2.

**Injury from ultra vires conduct-EPA:** Defendants do not disclaim that EPA "immediately pause[d] the disbursement of funds appropriated through the Inflation Reduction Act of 2022 (Public Law 117-169) or the Infrastructure Investment and Jobs Act (Public Law 117-58)" including programs designed to expand the use of EVs, wind, solar, and storage of renewable energy. 90 Fed. Reg. 8353, 8357. J.M.is injured by the pause in these programs because she cannot replace the diesel school buses at her school with electric buses, which would eliminate the local pollution she breathes and reduce greenhouse gases in her community. J.M. ¶¶10-11. Every one of the alternative energy and EV projects EPA paused or canceled from the EOs adds more avoidable fossil fuel pollution to the climate system and more avoidable, dangerous heat in Plaintiffs' lives. Jenkins ¶14; Running ¶18.

**Injury from ultra vires conduct-USGCRP:** The loss of the next National Climate Assessment ("NCA") deprives Plaintiffs of a critical scientific resource designed to assess, predict, and respond to the dangers climate change poses to Plaintiffs' lives, personal security, and communities. MacCracken ¶¶8,12,16,18,24; Delaney ¶10 (uses NCA).

**Injury from ultra vires conduct-Science:** Defendants do not disclaim that federal climate science is one of the "undue burden[s]" Defendants are "suspend[ing], revis[ing] or rescind[ing]" pursuant to the EOs. MacCracken ¶¶24-26; Jonesi ¶¶10-11,14, Ex. I; Olson ¶¶10,12,13(Ex. I at 24 "ending 'Green New Deal' initiatives"; at 12 "executive orders," "climate change"),42,53; DiLiberto ¶¶17,20-23; McLean ¶¶32,16,17,23, Exs. B,C; Olson Suppl. ¶¶3-4,8-9,23. Plaintiffs like Delaney, Avery, and Joseph are harmed by funding cuts for climate science and public health research, agency restructuring, and the ensuing dismantling of systems designed to warn and protect their health and lives from hurricanes, extreme heat, fossil fuel pollution, and wildfire smoke. Byron ¶¶37-40; Balmes ¶¶33,36; Whitlock ¶¶22,27; McLean ¶¶19,25-28; Delaney ¶¶14-18; Avery ¶21; Joseph ¶¶21-23.

### c.    Plaintiffs' Imminent Injuries Will Be Partially Redressed by Equitable Relief

To show redressability, Plaintiffs need only "show a predictable chain of events that would likely result from judicial relief and redress the plaintiff's injury." *Diamond*, 145 S. Ct. at 2139 (internal quotations omitted). Plaintiffs have met their

evidentiary burden to show that declaring unconstitutional or enjoining the EOs would predictably pause their intended effects of "unleashing" fossil fuels, "reinvigorating" coal, blocking renewables and EVs, and disabling climate science, thereby avoiding more fossil fuel pollution and preventing at least some of Plaintiffs' imminent injuries. *See id.* at 2137 (rejecting EPA's and California's arguments, unsupported by record evidence, that the challenged policies no longer had any effect on the market and would not change anything if invalidated); Joseph ¶¶20,27.

Plaintiffs do not ask the Court to redress all past GHG pollution and the climate change past emissions caused. That there are other factors in Plaintiffs' injuries or that relief may not be fully vindicated "does not vitiate" standing to argue Defendants are violating Plaintiffs' constitutional rights. *Gutierrez*, 145 S. Ct. at 2268. As the Supreme Court just admonished:

> To deny standing based on a theory that invalidating an important [policy] would actually have zero impact ... requires a degree of economic and political clairvoyance that is difficult for a court to maintain. That is particularly so when the government [policy] may be skewing the market at issue. So courts should exercise caution before denying standing because of a claimed lack of [causation or] redressability rooted in questionable economic speculation.

*Diamond*, 145 S. Ct. at 2140. Plaintiffs need not guarantee that every injury would be fully redressed by a favorable decision, only that their requested relief would significantly increase the likelihood of some redress. *Id.* at 2133, 2135.

9

At minimum, given the undisputed economic harms at stake (Stiglitz ¶¶11,14-53; Heal ¶¶9-16; Avery ¶¶8-11; Jacobson ¶¶18,26-27; Jacobson Suppl. ¶26), an injunction would provide far more than "one dollar" of economic benefit to Plaintiffs, which "would satisfy the redressability component of Article III standing." *Diamond*, 145 S. Ct. at 2135 (citing *Uzuegbunam v. Preczewski*, 592 U.S. 279, 292 (2021)). Indeed, "it would be surprising and unusual if invalidating the [EOs] did not redress [Plaintiffs'] injuries." *Id.* at 2137. Plaintiffs have satisfied their burden to establish standing under the controlling tests in *Diamond Alternative Energy* and *Gutierrez*.

### 2. The Constitutionality of the President's Energy Emergency EO Is Not a Political Question

"[T]he Judiciary has a responsibility to decide cases properly before it, even those it would gladly avoid." *Zivotofsky v. Clinton*, 566 U.S. 189, 194 (2012) (internal quotes and citation omitted). The political question doctrine is "a narrow exception to that rule." *Id.* at 195. Defendants attempt to invoke two (of six) political question doctrine factors for the Energy Emergency EO, but neither applies. Opp'n.24-27; *Baker v. Carr*, 369 U.S. 186, 217 (1962).

Defendants claim "a textually demonstrable constitutional commitment of the issue to a coordinate political department." *Baker*, 369 U.S. at 217; Opp'n.26. Yet they cite no constitutional text *at all*, let alone text "demonstrably commit[ting]" domestic energy policy or presidential preference for fossil fuels over wind, solar,

batteries, and EVs to the Executive. By contrast, the Constitution textually commits adjudication of Plaintiffs' "life," "liberty," and ultra vires claims to the judicial branch. *See Zivotofsky*, 566 U.S. at 196-97 ("[N]o exclusive commitment to the Executive of the power to determine the constitutionality of [his conduct]" even on issues touching foreign affairs.) "[I]t is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance." *Baker*, 369 U.S. at 211. The Supreme Court's "precedents ... make clear that concerns of national security and foreign relations do not warrant abdication of the judicial role." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 34 (2010).[3]

Defendants' invocation of a "lack of judicially discoverable and manageable standards for resolving" Plaintiffs' claim also fails. *Baker*, 369 U.S. at 217. Like the state gerrymandering in *Baker*, "[t]he question here is the consistency of [government] action with the Federal Constitution." *Id.* at 226. The tiers of scrutiny have long been a manageable set of judicial standards for constitutional questions. In a claim involving fundamental rights, Defendants have the means to proffer evidence that their policies are necessary for a compelling state interest and are narrowly tailored. They have done neither here. The political question doctrine is inapplicable.

---

[3] Significantly, Plaintiffs are not challenging the National Energy Emergency EO under the National Emergency Act, *contra* Opp'n.24-25, but rather under the Constitution.

### 3.    The Ninth Circuit Has Already Rejected Defendants' APA and Sovereign Immunity Arguments

Binding precedent establishes that constitutional claims challenging multiple government actions are justiciable outside the Administrative Procedure Act ("APA") review strictures. *Juliana*, 947 F.3d. at 1167-68. As to Plaintiffs' ultra vires claims, Defendants are correct that Plaintiffs are not bringing them under the APA, but err in characterizing them as "statutory claims." Opp'n.32. While not every claim challenging presidential actions as ultra vires is necessarily a violation of the Constitution, here Plaintiffs allege that the EOs are ultra vires because they exceed constitutional authority and violate the separation of powers outlined in Articles 1 and 2, the Take Care Clause, and the Presentment Clause. Compl.¶¶301,306,319; *Sierra Club v. Trump*, 929 F.3d 670, 696-97 (9th Cir. 2019) (argument that defendants violated separation of powers principles makes claim "fundamentally a constitutional one"); *Dalton v. Specter*, 511 U.S. 462, 472 (1994). Moreover, each EO invokes the Constitution as legal authority, underscoring the constitutional nature of Plaintiffs' ultra vires claims. Compl.Ex.1 at 1, Ex.2 at 1, Ex.3 at 1; *Dalton*, 511 U.S. at 473 (courts look to basis of President's asserted authority in determining the difference between constitutional and statutory claims). Plaintiffs' ultra vires claims are thus fundamentally constitutional claims and can proceed directly under the Constitution. *Murphy Co. v. Biden*, 65 F.4th 1122, 1130 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 1111 (2024).

12

Defendants' argument that a small subset of actions taken by EPA and DOE to implement the EOs can only be reviewed by Circuit Courts does not foreclose justiciability because Plaintiffs are not bringing a challenge to any individual final agency action of the EPA or DOE to which the Clean Air Act ("CAA") or Natural Gas Act ("NGA") judicial review provisions apply. Compl.¶1, Prayer for Relief; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987) (plaintiffs choose which claims to bring). There is no mechanism in the CAA or NGA to adjudicate the constitutionality of the challenged EOs, which direct agency defendants to take those unconstitutional regulatory actions, or the numerous government actions implementing them; therefore, accepting Defendants' argument would impermissibly foreclose a constitutional remedy for Plaintiffs. *Sierra Club*, 929 F.3d at 697. Plaintiffs' challenge to the EOs and Defendants' implementing actions can, and must, proceed directly under the Constitution. *Juliana*, 947 F.3d. at 1167-68; *Ziglar v. Abbasi*, 582 U.S. 120, 144 (2017); *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991).

Sovereign immunity also does not bar Plaintiffs' claims. Even though Plaintiffs' constitutional claims are justiciable outside of the APA, section 702 still acts as a waiver of sovereign immunity for Defendant agencies. *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1172 (9th Cir. 2017). As to the President, Supreme Court jurisprudence is clear that courts can evaluate the constitutionality

13

of presidential conduct and issue equitable relief, which is what Plaintiffs are asking for here. Compl.¶1, Prayer; *Washington v. Trump*, 847 F.3d 1151, 1164 (9th Cir. 2017) (per curiam) ("[I]t is beyond question that the federal judiciary retains the authority to adjudicate constitutional challenges to executive action."); *Trump v. United States*, 603 U.S. 593, 608 (2024) ("If the President claims authority to act but in fact exercises mere 'individual will' and 'authority without law,' the courts may say so.") (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 655 (1952)).

Sovereign immunity also does not preclude Plaintiffs' requested injunctive relief against the President. *See, e.g.*, *Boumediene v. Bush*, 553 U.S. 723, 771 (2008) (upholding court's power to order the President to release prisoners held as enemy combatants); *Washington*, 847 F.3d at 1169 (upholding injunctive relief in constitutional challenge to official Presidential action); *Doe #1 v. Trump*, 957 F.3d 1050, 1070 (9th Cir. 2020) (same). Defendants' cited authority is not to the contrary. Opp'n.28, n.8. Accordingly, sovereign immunity does not preclude Plaintiffs' constitutional claims against Defendant agencies or the President.

## B. Plaintiffs Meet the Serious Questions and Likelihood of Success Standards

### 1. Plaintiffs Show Deprivations of Enumerated and Recognized Rights

14

Defendants mischaracterize Plaintiffs' Fifth Amendment right to life and liberty claims as unenumerated and unrecognized. Opp'n.33-36. But the right to life needs no *Glucksberg* analysis. It is an inalienable right enumerated in the Constitution. U.S. Const. amend. V. Plaintiffs' citation to historical definitions of "life" at the time of the founding does not transform the right into one that is unenumerated. Defendants do not dispute that fossil fuel pollution kills people and harms Plaintiffs' lives. Defendants do not dispute that more fossil fuel pollution will exacerbate Plaintiffs' asserted injuries by increasing heat, smoke, and floods. In light of the uncontested nature of these core factual issues, Plaintiffs have raised serious questions and are likely to succeed on their Fifth Amendment claims.

Defendants' citation to cases involving claims to "environmental rights" is a red herring and premised on a fundamental misunderstanding of Plaintiffs' due process claims. Opp'n.35-36. Plaintiffs do not bring unenumerated environmental rights claims as in those cases. On the contrary, in addition to the enumerated right to life, Plaintiffs claim the challenged EOs violate recognized liberty interests to their "personal security, bodily integrity, dignity, opportunity to pursue happiness, the right to practice culture, and the right to form families." Compl.¶¶253-54,265,323. Defendants completely ignore these already-recognized liberty interests that Plaintiffs assert and the state-created danger doctrine. Plaintiffs separately claim deprivation of certain liberty interests already enumerated and codified by their state

15

constitutions. "'[L]iberty,' like property, is protected by the Constitution, 'even when the liberty itself is a statutory creation of the State.'" *Gutierrez*, 145 S. Ct. at 2265 n.1 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)).

Plaintiffs do not ask this Court to recognize new unenumerated fundamental rights. And Defendants do not contest that there are at least some fundamental rights at stake that require a strict scrutiny analysis of the EOs and their implementation. Nowhere do Defendants demonstrate that the EOs are *necessary* to meet a compelling government interest or that they are *narrowly tailored* to achieve that interest. Olson Suppl. ¶13 (President Trump: "We're not going to approve windmills unless something happens that's an emergency."). At bottom, the false declaration of a national energy emergency by the Executive does not trump Plaintiffs' enumerated constitutional rights to life and recognized rights to liberty.

## 2.     The EOs Are Ultra Vires in Requiring EPA to Unleash Pollution

Plaintiffs do not argue EPA cannot reconsider prior administrative actions. *Contra* Opp'n.38. Plaintiffs also do not request that the Court determine what EPA can consider in revising its standards. Opp'n.39. Rather, Plaintiffs raise serious questions they are likely to succeed on: President Trump's EOs and Defendant Zeldin's implementing directives cannot mandate that EPA act in a manner that violates Plaintiffs' constitutional rights or rewrites EPA's statutory directives, as proscribed by Congress in the CAA, and which the evidence shows is already

happening. Compl.¶¶277-91. Defendants' response does not dispute that EPA is implementing the EOs to their intended effect by unleashing fossil fuels, blocking renewable energy projects, and dismantling climate science, as detailed by a former EPA employee. Jonesi ¶¶6-20; *see also* Olson Suppl. ¶¶3-4,7-8. Nor do Defendants provide any constitutional or statutory authority for these actions.

### 3.  Defendants Do Not Contest a Peer-Reviewed NCA Will Not Be Prepared

The loss of the NCA is part of Defendants' efforts to dismantle climate science pursuant to the EOs and will further endanger Plaintiffs' lives and personal security. *Supra* II.A.1.b. When the Trump administration shuttered the USGCRP and dismissed the hundreds of scientists working on the Sixth NCA, which Defendants do not dispute happened, the effect was a "fatal blow to the next report." Olson Ex.XX. Defendants do not dispute it takes years to prepare a peer-reviewed NCA and with no one working on it, the 2027/28 deadline will not be met. *Id.*; Olson Ex.WW; Whitlock ¶23.

### 4.  Defendants' Dismantling of Climate Science Pursuant to the EOs Harms Plaintiffs

Contrary to Defendants' argument, Opp'n.41, Plaintiffs *have* presented detailed evidence, undisputed with counter-evidence, about how Plaintiffs are personally harmed by Defendants' attacks on science. *Supra* p.7-8. Just because NASA still has a webpage with some information about climate change, Opp'n.41-

42, does not mean Defendants are not actively dismantling scientific institutions/research critical for Plaintiffs' understanding of the dangers posed by climate change. Olson ¶¶44-47; Olson Suppl. ¶¶3-4,7-8. Defendants have no response to their public admissions or the declarations of former government employees establishing that dismantling climate science and funding, as alleged in the Complaint, is part of implementing the EOs. *Supra* p.7-8; *see* Olson Suppl. ¶¶8-9,15-18,21-23.

### C.    Plaintiffs' Injuries Will Be Irreparable Absent an Injunction

"[I]t is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Flathead Warming Ctr. v. City of Kalispell*, 756 F. Supp. 3d 985, 1005 (D. Mont. 2024) (cleaned up) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). That, in conjunction with Plaintiffs' *undisputed* injuries, which worsen with each additional ton of climate pollution Defendants cause, satisfies Plaintiffs' burden to show irreparable harm is now and imminent. *Supra* II.A.1.b.

Defendants' claim that Dr. Jenkins was "unable to quantify" any EO impact on emissions before 2027 is wrong, mischaracterizes the record, and reveals Defendants' lack of understanding of modeling. *See* Jenkins ¶¶17-21; Erickson ¶¶10-15. On the contrary, there is "an immediate change in the trajectory of U.S. emissions beginning in 2025" and that increase in emissions only grows over time. Jenkins

Suppl. ¶2. Moreover, businesses are making decisions *today* in response to the EOs to cancel the build-out of billions of dollars in renewable energy projects and cancel the rollout of new EV models; these decisions lock in additional GHG emissions that otherwise would have been avoided. Jenkins Suppl. ¶¶3-4,6. These decisions will result in Plaintiffs' exposure to an *additional* 310 million metric tons of carbon dioxide equivalents from 2025-2027, more than annual emissions of most countries, including the United Kingdom. *Id*. ¶5; *see also* Jacobson Suppl. ¶¶23-25. Plaintiffs' requested preliminary injunction would unquestionably "forestall" Plaintiffs' injuries by preventing Defendants from unleashing more fossil fuel pollution pursuant to the EOs *right now*. *Perfect 10, Inc. v. Google, Inc*., 653 F.3d 976, 981 (9th Cir. 2011); Jenkins Suppl. ¶¶3-6; Jacobson Suppl. ¶23.

Plaintiffs did not engage in "significant delay," which purportedly "implies a lack of urgency and irreparable harm." *Contra* Opp'n.42. Filing the preliminary injunction motion 144 days from the initial imposition of the sweeping and complex EOs "was not a long delay in this context." *Doe v. Horne*, 115 F.4th 1083, 1111 (9th Cir. 2024); *Arc of California v. Douglas*, 757 F.3d 975, 990-91 (9th Cir. 2014) ("in the context of ongoing, worsening injuries … the magnitude of the potential harm becomes apparent gradually"). Here, the EOs command the promotion of fossil fuels and suppression of renewable energy and climate science across multiple agencies. Plaintiffs acted when full-force implementation became apparent. Plaintiffs,

19

therefore, made the "prudent" decision to evaluate Defendants' responses, their "cumulative impact," Plaintiffs' "ongoing, worsening injuries", and the "magnitude of the potential harm" before moving for injunctive relief. *Arc of California*, 757 F.3d at 990-91. Since Plaintiffs filed their motion, Defendants have taken additional steps to implement the EOs, causing further injury to Plaintiffs, underscoring the urgency of a preliminary injunction. Olson Suppl. ¶¶3-10.

To relieve these 22 Plaintiffs from immediate injuries caused by the EOs, the EOs must be preliminarily enjoined. The Supreme Court recently affirmed district courts' power to issue traditional injunctions as broad as necessary to provide "complete relief" to a plaintiff, even if the injunction incidentally benefits non-parties as well. *Trump v. CASA, Inc.*, No. 24A884, 2025 WL 1773631, at *10-12 (U.S. June 27, 2025). The universal preliminary injunction struck down in *CASA*— barring the government from enforcing its citizenship EOs against *anyone*, including non-plaintiffs—differs from the traditional injunction sought here, which is as narrowly crafted as possible to protect *these Plaintiffs*. *Id.* at *15.

### D.    The Balance of Hardships and the Public Interest Weigh Heavily in Favor of a Preliminary Injunction

"[A]ll citizens have a stake in upholding the constitution, meaning it is always in the public interest to prevent the violation of a party's constitutional rights." *Flathead Warming Ctr.*, 756 F. Supp. 3d at 1006-07. Constitutional violations "never

serve the public interest." *Imperial Sovereign Ct. of Montana v. Knudsen*, 684 F. Supp. 3d 1095, 1108 (D. Mont. 2023).

Plaintiffs' imminent injuries are wide-ranging, grave, and irreparable. *Supra* II.A.1.b. By comparison, Defendants will suffer no harm for the reasons stated in Plaintiffs' opening brief and expert declarations, to which Defendants offer no reliable counter-evidence. Opp'n.12-24,44-45.

Defendants contend, without evidence or experts, that injunctive relief would intrude on "foreign affairs" and "national security." Opp'n.44. Such conclusory, unsupported allegations are inadequate to rebut sworn testimony from Plaintiffs' experts. "[M]erely conclusory assertions of national security do not suffice to defeat motions for injunctive relief." *Palantir USG, Inc. v. United States*, 129 Fed. Cl. 218, 294-95 (2016). Without evidence of how enjoining the EOs would harm foreign affairs or national energy security, this Court cannot give Defendants' sweeping contentions the "careful consideration" the law requires. *GTA Containers, Inc. v. United States*, 103 Fed. Cl. 471, 493 (2012).

By comparison, testimony from Plaintiffs' experts demonstrate the numerous benefits to public health, the economy, and energy security from moving away from fossil fuels, not towards them, including that there is no risk to grid reliability or the supply of critical minerals, steel production, carbon filters, or plastics for the health

care system. *See, e.g.*, Jacobson ¶¶14-23; Jacobson Suppl. ¶¶4-11, ¶¶12-20; Olson ¶53; Erickson Suppl. ¶¶5-7,9-14.

The dearth of Defendants' "evidence" combined with Plaintiffs' unquestionable irreparable harm tilts the balance of equities heavily in Plaintiffs' favor. *Menges v. Knudsen*, 538 F. Supp. 3d 1082, 1120-21 (D. Mont. 2021).

## III.    SEEKING A $1 BILLION BOND FROM YOUTH ENFORCING THEIR CONSTITUTIONAL RIGHTS IS UNPRECEDENTED

No more than a nominal bond is warranted from these youth plaintiffs who sue to protect their most fundamental right—to life. This principle is well-settled in public-interest litigation enjoining unlawful executive action. *See, e.g.*, *People of State of Calif. ex rel. Van de Kamp v. Tahoe Reg'l Plan. Agency*, 766 F.2d 1319 (9th Cir. 1985) (no bond); *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) (nominal bond). Recent cases waive bonds altogether where, as here, the government provides no evidence of its supposed harm. *See, e.g.*, *Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, No. 25-CV-00097, 2025 WL 1116157, at *24 (D.R.I. Apr. 15, 2025); *Climate United Fund v. Citibank*, No. 25-CV-698, 2025 WL 1118430, at *2 (D.D.C. Apr. 15, 2025). The federal government "cannot suffer harm from an injunction that merely ends an unlawful practice[.]" *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

## IV.    CONCLUSION

A preliminary injunction should be granted with no bond.

DATED this 18th day of July, 2025, at Eugene, OR.

Respectfully submitted,

*/s/ Julia A. Olson*
Julia A. Olson
Andrea K. Rodgers
Nathan Bellinger
OUR CHILDREN'S TRUST
1216 Lincoln St.
Eugene, OR 97401
(415) 786-4825
julia@ourchildrenstrust.org
andrea@ourchildrenstrust.org
nate@ourchildrenstrust.org

Roger Sullivan
McGARVEY LAW
345 1st Avenue East
Kalispell, MT 59901
(406) 752-5566
rsullivan@mcgarveylaw.com

Philip L. Gregory
GREGORY LAW GROUP
1250 Godetia Drive
Redwood City, CA 94062
(650) 278-2957
pgregory@gregorylawgroup.com

Daniel C. Snyder
Haley Nicholson
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600
dsnyder@publicjustice.net
hnicholson@publicjustice.net

23

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(d)(2)(E), I certify that the foregoing brief has a word count of 5,000 words, excluding the portions exempted by L.R. 7.1(d)(2)(E) and pursuant to the Court's order granting an enlargement of the word limit. Doc. 36.

*s/ Julia A. Olson*
Julia A. Olson

24