Adam R.F. Gustafson
 *Acting Assistant Attorney General*
Robert N. Stander
 *Deputy Assistant Attorney General*
Environment & Natural Resources Div.
United States Department of Justice

Michael S. Sawyer
Erik Van de Stouwe
Natural Resources Section
Miranda Jensen
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044-7611
Tel:   (202) 514-5273
        (202) 305-0247
        (202) 598-3071
E-mail: michael.sawyer@usdoj.gov
          erik.van.de.stouwe@usdoj.gov
          miranda.jensen@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION**

| | |
|---|---|
| **EVA LIGHTHISER**; et al.<br><br>                    Plaintiffs,<br><br>    v.<br><br>**DONALD J. TRUMP**, in his official capacity as President of the United States; et al.<br><br>                    Defendants. | Case No: CV-25-54-BU-DLC<br><br>**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS** |

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

BACKGROUND ....................................................................................2

    I.     PREVIOUS YOUTH CLIMATE LITIGATION .................................2

    II.    CHALLENGED EXECUTIVE ORDERS.........................................2

    III.   PLAINTIFFS' COMPLAINT .....................................................4

STANDARDS OF REVIEW ......................................................................6

ARGUMENT .......................................................................................7

    I.     PLAINTIFFS' CLAIMS ARE NONJUSTICIABLE ...........................7

         A.    Plaintiffs Lack Article III Standing .............................7

             1.    Plaintiffs lack redressability for climate injuries.............8

             2.    Plaintiffs do not plausibly allege a cognizable injury ....17

             3.    Plaintiffs fail to plausibly allege that their climate injuries are traceable to the three challenged executive orders ............................................................20

             4.    Plaintiffs fail to plausibly allege standing to challenge climate science funding and personnel decisions ..........................................................21

         B.    Plaintiffs' *Ultra Vires* Claims Are Not Justiciable ..................22

         C.    The Court Should Dismiss The President As A Defendant......28

    II.    THE COMPLAINT FAILS ON THE MERITS.................................29

         A.    Plaintiffs' substantive due process claims fail as a matter of law...........................................................29

             1.    The Due Process Clause does not require particular energy policies .................................................29

          2.    State law cannot create a federal substantive due process right to federal energy policy ............................34

    B.    Plaintiffs' *ultra vires* claims fail as a matter of law.................36

          1.    The Executive Orders require that their implementation be consistent with the law ...................37

          2.    Plaintiffs fail to state cognizable *ultra vires* claims against the agency Defendants ........................38

                a.    Plaintiffs' third cause of action does not allege a cognizable claim against the EPA or related Defendants..................................................39

                b.    Plaintiffs' fourth cause of action fails to plausibly allege a claim related to the alleged cancellation of the National Climate Assessment ............................................................41

                c.    Plaintiffs' fifth cause of action fails to plausibly allege a claim .......................................42

                d.    Plaintiffs do not plead cognizable grounds to challenge the President's declaration of a National Energy Emergency ................................44

CONCLUSION ......................................................................................46

# TABLE OF AUTHORITIES

Page(s)

**Other Authorities**

*Abcarian v. Levine*,
No. CV-167106-FMO, 2019 WL 13038412 (C.D. Cal. Jan. 3, 2019)................32

*Abigail All. for Better Access to Developmental Drugs v. von Eschenbach*,
495 F.3d 695 (D.C. Cir. 2007) ............................................................................31

*AFGE v. Trump*,
139 F.4th 1020 (9th Cir. 2025)................................................................................38

*Albright v. Oliver*,
510 U.S. 266 (1994) ............................................................................................34

*Alec L. ex rel. Loortz v. McCarthy*,
561 F. App'x 7 (D.C. Cir.) ..................................................................................36

*Alec L. v. McCarthy*,
135 S. Ct. 774 (2014) ..........................................................................................36

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,
No. 25-4014, 2025 WL 2180674 (9th Cir. Aug. 1, 2025)..................................45

*Am. Foreign Serv. Ass'n v. Trump*,
No. 25-5184, 2025 WL 1742853 (D.C. Cir. June 20, 2025)..............................24

*Appleby v. City of New York*,
271 U.S. 364 (1926) ............................................................................................35

*Arizona v. Mayorkas*,
600 F. Supp. 3d 994 (D. Ariz. 2022)............................................................ 25, 26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................... 7, 17, 39

*Badgerow v. Walters*,
596 U.S. 1 (2022) ..................................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..............................................................................................7

*Bldg. & Constr. Trades Dep't v. Allbaugh*,
295 F.3d 28 (D.C. Cir. 2002) ...................................................................... 37, 38

*Brittain v. Hansen*,
   451 F.3d 982 (9th Cir. 2006) ................................................................31

*California v. Texas*,
   593 U.S. 659 (2021) ...........................................................................15

*California v. Trump*,
   407 F. Supp. 3d 869 (N.D. Cal. 2019) ................................................45

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .............................................................................8

*Clean Air Council v. United States*,
   362 F.Supp. 3d 237 (E.D. Pa. 2019)....................................................2

*Clinton v. City of New York*,
   524 U.S. 417 (1998) ...........................................................................25

*Collins v. City of Harker Heights*,
   503 U.S. 115 (1992) ............................................... 16, 30, 31, 34

*Cty. Of Sacramento v. Lewis*,
   523 U.S. 833 (1998) ..................................................... 32, 33, 34

*Dalton v. Specter*,
   511 U.S. 462 (1994) ...........................................................................23

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ................................................................7

*Delaware Riverkeeper Network v. FERC*,
   895 F.3d 102 (D.C. Cir. 2018) ...........................................................34

*Dep't of State v. Munoz*,
   602 U.S. 899 (2024) ...........................................................................30

*Dep't of Educ. v. California*,
   145 S. Ct. 966 (2025)..........................................................................26

*DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*,
   489 U.S. 189 (1989) ...........................................................................31

*Diamond Alternative Energy, LLC v. EPA*,
   145 S. Ct. 2121 (2025) ........................................... 11, 12, 19

*Dobbs v. Jackson Women's Health Org.*,
   597 U.S. 215 (2022) ...........................................................................34

iv

*Franceschi v. Yee*,
887 F.3d 927 (9th Cir. 2018) ...............................................................33

*Franklin v. Massachusetts*,
505 U.S. 788 (1992) .............................................................................28

*G.B. v. EPA*,
No. CV 23-10345-MWF, 2024 WL 3009302 (C.D. Cal. May 8, 2024)2, 9, 10, 13

*Gonzalez-Fuentes v. Molina*,
607 F.3d 864 (1st Cir. 2010) ...............................................................32

*Gutierrez v. Saenz*,
145 S. Ct. 2258 (2025) ................................................................. 11, 35

*Haig v. Agee*,
453 U.S. 280 (1981) .............................................................................45

*Hawaii v. Trump*,
859 F.3d 741 (9th Cir. 2017) ...............................................................28

*Holder v. Humanitarian L. Project*,
561 U.S. 1 (2010) .................................................................................45

*Idaho v. Coeur d'Alene Tribe*,
521 U.S. 261 (1997) .............................................................................35

*Illinois Cen. Rail Co. v. Illinois*,
146 U.S. 387 (1892) .............................................................................35

*In re Gilman*,
887 F.3d 956 (9th Cir. 2018) ...................................................... 10, 11

*In re Murray Energy Corp.*,
788 F.3d 330 (D.C. Cir. 2015) .............................................................27

*In re United States*,
No. 24-684, 2024 WL 5102489 (9th Cir. May 1, 2024) ............................ 1, 4, 10

*Juliana v. United States,*
145 S. Ct. 1428 (2025) ................................................................. 10, 14

*Juliana v. United States*,
339 F. Supp. 3d 1062 (D. Or. 2018)....................................... 4, 5, 9, 29

*Juliana v. United States*,
947 F.3d 1159 (9th Cir. 2020)..................... 1, 2, 4, 8, 9, 11, 12, 14, 15, 16, 17, 20

*Juliana v. United States,*
   No. 24-645, 2024 WL 5125252 (U.S.)....................................................................13

*Juliana v. United States,*
   No. 24-645, 2025 WL 524212 (U.S.).....................................................................13

*Kennedy v. City of Ridgefield,*
   439 F.3d 1055 (9th Cir. 2006)...............................................................................31

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
   511 U.S. 375 (1994) ................................................................................................6

*Kraushaar v. Flanigan,*
   45 F.3d 1040 (7th Cir. 1995).................................................................................35

*Lair v. Bullock,*
   697 F.3d 1200 (9th Cir. 2012)...............................................................................10

*Lochner v. New York,*
   198 U.S. 45 (1905) ................................................................................................34

*Long Sault Dev. Co. v. Call,*
   242 U.S. 272 (1916) ..............................................................................................35

*Lowry v. Barnhart,*
   329 F.3d 1019 (9th Cir. 2003)...............................................................................33

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) .................................................................... 8, 11, 14, 17, 18

*Lunn v. City of Los Angeles,*
   629 F. Supp. 3d 1007 (C.D. Cal. 2022).................................................................32

*M.S. v. Brown,*
   902 F.3d 1076 (9th Cir. 2018)..................................................................................8

*Maya v. Centex Corp.,*
   658 F.3d 1060 (9th Cir. 2011)..................................................................................7

*Mayes v. Biden,*
   67 F.4th 921 (9th Cir.)...........................................................................................25

*Miller v. Gammie,*
   335 F.3d 889 (9th Cir. 2003)..................................................................................10

*Mississippi v. Johnson,*
   71 U.S. 475 (1866) ................................................................................................25

*Moran v. Clarke,*
     296 F.3d 638 (8th Cir.2002) ...............................................................32

*Mullins v. Oregon,*
     57 F.3d 789 (9th Cir. 1995) ...............................................................33

*Myers v. United States,*
     272 U.S. 52 (1926) ...............................................................37

*Nat'l Park Hosp. Ass'n v. Dep't of Interior,*
     538 U.S. 803 (2003) ...............................................................42

*Nuclear Regul. Comm'n v. Texas,*
     145 S. Ct. 1762 (2025) ..................................... 22, 24, 26, 43, 44

*Penilla v. City of Huntington Park,*
     115 F.3d 707 (9th Cir. 1997) ...............................................................31

*Phillips Petroleum Co. v. Mississippi,*
     484 U.S. 469 (1988) ...............................................................35

*PPL Montana, LLC v. Montana,*
     565 U.S. 576 (2012) ...............................................................35

*Preschooler II v. Clark Cnty. Sch. Bd. of Trs.,*
     479 F.3d 1175 (9th Cir. 2007) ...............................................................32

*Pub. Util. Comm'r of Or. v. Bonneville Power Admin.,*
     767 F.2d 622 (9th Cir. 1985) ...............................................................27

*Raines v. Byrd,*
     521 U.S. 811 (1997) ...............................................................8

*Rochester Pure Waters Dist. v. EPA,*
     960 F.2d 180 (D.C. Cir. 1992) ...............................................................40

*Rochin v. California,*
     342 U.S. 165 (1952) ...............................................................32

*Rsch. & Action Ctr. v. FCC,*
     750 F.2d 70 (D.C. Cir. 1984) ...............................................................27

*San Francisco v. Trump,*
     897 F.3d 1225 (9th Cir. 2018) ...............................................................38

*Seila L. LLC v. CFPB,*
     591 U.S. 197 (2020) ...............................................................24

*Shively v. Bowlby*,
  152 U.S. 1 (1894) ....................................................................35

*Sierra Club v. Costle*,
  657 F.2d 298 (D.C. Cir. 1981) ...............................................37

*Sierra Club v. Trump*,
  929 F.3d 670 (9th Cir. 2019) ................................... 23, 24, 26

*Train v. City of New York*,
  420 U.S. 35 (1975) ..................................................................26

*Trump v. AFGE*,
  No. 24A1174, 606 U.S. ---, 2025 WL 1873449 (U.S. July 8, 2025) ...................38

*Trump v. Hawaii*,
  583 U.S. 941 (2017) ................................................................28

*United States v. 32.42 Acres of Land, More or Less, Located in San Diego Cnty.*,
  683 F.3d 1030 (9th Cir. 2012) ...............................................35

*United States v. Orozco-Acosta*,
  607 F.3d 1156 (9th Cir. 2010) ...............................................16

*United States v. Spawr Optical Rsch., Inc.*,
  685 F.2d 1076 (9th Cir. 1982) ...............................................45

*United States v. Texas*,
  599 U.S. 670 (2023) ......................................................... 12, 13

*Uzuegbunam v. Preczewski*,
  141 S. Ct. 792 (2021) ..............................................................10

*Vietnam Veterans of Am. v. Cent. Intel. Agency*,
  811 F.3d 1068 (9th Cir. 2016) ...............................................43

*Warth v. Seldin*,
  422 U.S. 490 (1975) ..................................................................7

*Wash. Env't Council v. Bellon*,
  732 F.3d 1131 (9th Cir. 2013) ......................................... 20, 21

*Washington v. Glucksberg*,
  521 U.S. 702 (1997) ................................................................30

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*,
  5 F.4th 997 (9th Cir. 2021) ....................................................28

*Wolff v. McDonnell*,
   418 U.S. 539 (1974) .................................................................35

*Wood v. Ostrander*,
   879 F.2d 583 (9th Cir. 1989) ....................................................31

**Regulations**

15 U.S.C. § 2936 ........................................................................42

33 U.S.C. §§ 893(a) ....................................................................44

42 U.S.C. § 1862 ........................................................................44

42 U.S.C. § 4364(c) ...................................................................41

42 U.S.C. § 7432 ........................................................................40

42 U.S.C. § 7434 ........................................................................40

42 U.S.C. § 7437 ........................................................................40

42 U.S.C. § 7438 ........................................................................40

43 U.S.C. § 1349(c)(1) ...............................................................27

49 U.S.C. § 32909(a)(1) .............................................................27

5 U.S.C. § 704 ...........................................................................43

5 U.S.C. § 706(1) ................................................................. 41, 43

50 U.S.C. § 1601 ..........................................................................4

Pub.L. 119-21, 139 Stat 72 (July 4, 2025) ....................... 22, 40

**12**

90 Fed. Reg. 15517 (Apr. 14, 2025) ...............................................2

90 Fed. Reg. 8353 (Jan. 29, 2025) .............................. 2, 3, 21

90 Fed. Reg. 8433 (Jan. 20, 2025) ...................... 2, 4, 24, 44, 45

## INTRODUCTION

Article III of the Constitution does not provide a mechanism for litigants who are unhappy about federal energy policy to seek an injunction against the President aimed at reducing global greenhouse gas emissions. For this reason, the U.S. Court of Appeals for the Ninth Circuit repeatedly rejected the efforts of a similar group of youth plaintiffs to leverage judicial power to set climate policy for the United States. *Juliana v. United States*, 947 F.3d 1159 (9th Cir. 2020) (9th Cir. 2021); *see also In re United States*, No. 24-684, 2024 WL 5102489 (9th Cir. May 1, 2024), *cert. denied*, 145 S. Ct. 1428 (2025).

Plaintiffs' most recent complaint suffers from the same jurisdictional defects as those of *Juliana*. A self-designated group of children and young Plaintiffs claim they are better positioned to set national energy policy than the President of the United States. Those grievances are for the political branches, not the courts. Plaintiffs maintain they are injured by climate change, but they fail to show how their requested declaratory and equitable relief will redress those injuries. And in challenging dozens of discrete (and non-final) agency actions in one omnibus complaint, Plaintiffs transparently attempt to circumvent statutory judicial review provisions under the Administrative Procedure Act (APA), the Clean Air Act (CAA), and numerous other statutes. The Court should again reject these efforts to forge a

1

judicially constructed end-run around the democratic process and statutory review schemes.

Because Plaintiffs lack Article III standing, among other defects, Defendants move to dismiss under Rule 12(b)(1). Additionally, Defendants move under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## BACKGROUND

### I.    PREVIOUS YOUTH CLIMATE LITIGATION

This is the most recent in a long-running series of unsuccessful cases espousing substantive due process claims to redress climate change. As more fully explained in Defendants' Opposition to Plaintiffs' preliminary injunction motion, courts have dismissed each of these prior suits for lack of standing. *See* Defs.' PI Opp'n, 2–5, Dkt. 34 (citing *Juliana v. United States*, 947 F.3d 1159 (9th Cir. 2020); *see also Clean Air Council v. United States*, 362 F. Supp. 3d 237 (E.D. Pa. 2019); *G.B. v. EPA*, No. CV 23-10345-MWF, 2024 WL 3009302 (C.D. Cal. May 8, 2024)).

### II.   CHALLENGED EXECUTIVE ORDERS

Plaintiffs challenge three executive orders (EOs): Executive Order 14154, Unleashing American Energy, 90 Fed. Reg. 8353–8359 (Jan. 29, 2025); Executive Order 14156, Declaring a National Energy Emergency, 90 Fed. Reg. 8433 (Jan. 20, 2025); Executive Order 14261, Reinvigorating America's Beautiful Clean Coal Industry and Amending Executive Order 14241, 90 Fed. Reg. 15517 (Apr. 14, 2025).

*See* Compl. ¶¶ 62–81.  The three challenged executive orders set energy policy for the Executive Branch and direct federal agencies to implement that policy "in a manner consistent with applicable law[.]"  A fuller description of these executive orders can be found in Defendants' PI Opposition Brief.  *See* Defs.' PI Opp'n 5–8. Briefly, however, Defendants offer the following outline of the challenged portions of the executive orders.

Plaintiffs challenge sections, 1–3, 5, and 7 of Executive Order 14154.  The first two sections outline policy goals, including promoting energy exploration and production, safeguarding consumer choice, and creating jobs and prosperity, and the third section directs agencies to review regulations and other agency actions that conflict with these policies and develop action plans consistent with their findings. 90 Fed. Reg. 8353–54.  The fifth section directs agencies make federal energy permitting more efficient, especially for projects deemed "essential for the Nation's economy or national security."  90 Fed. Reg. 8355–56.  The seventh section directs agencies to pause, pending review, the disbursement of funds appropriated through the Inflation Reduction Act of 2022 (IRA) or the Infrastructure Investment and Jobs Act of 2021 (IIJA).  90 Fed. Reg. 8357.

Plaintiffs also challenge sections 2–3 and 5–6 of Executive Order 14261, which in relevant part, promotes coal development and directs agencies to remove obstacles to the use of coal as an energy source.  90 Fed. Reg. 15517–18.  Finally,

Executive Order 14156 declared a national energy emergency under the National Emergencies Act, 50 U.S.C. § 1601 *et seq.* 90 Fed. Reg. 8433. To address "the active threat to the American people from high energy prices, the President directed agencies to use the "lawful emergency authorities" available to them to facilitate energy production, including on federal lands. 90 Fed. Reg. 8434–35.

III.    PLAINTIFFS' COMPLAINT

Plaintiffs are a group of 22 individuals, including seven minors proceeding through guardians ad litem, who allege injuries they attribute to climate change. Compl. ¶¶ 10–33. Three Plaintiffs—Avery McRae, Miko Vergun, and Isaac Vergun—were also plaintiffs in *Juliana*, where the Ninth Circuit twice rejected their claims for lack of redressability, 947 F.3d 1159; *In re United States*, 2024 WL 5102489, despite the attempts of Plaintiffs McRae and the Verguns to tie their climate-change injuries to "specific presidential actions" regarding coal mining, power plant emissions, fossil fuel pipelines, and the "expedition of environmental reviews and approvals for infrastructure projects," *Juliana v. United States*, 339 F. Supp. 3d 1062, 1078 (D. Or. 2018), *rev'd and remanded*, 947 F.3d 1159.

Plaintiffs bring this suit against the United States of America, the President, thirteen federal agencies, and numerous cabinet officers and federal officials. Compl. ¶¶ 34–61. Plaintiffs' sprawling complaint alleges a government-wide implementation of the executive orders in several ways that will exacerbate climate

4

change, and it also references—but does not challenge—other alleged Presidential actions cancelling federal wind energy projects, Compl. ¶ 128, granting stationary sources exemption from the U.S. Environmental Protection Agency's (EPA's) hazardous air pollutant rules to extend the longevity of coal-fired plants, *id*., ¶ 129, and directing agencies to repeal regulations they determined to be "unlawful" or "inconsistent with his EOs," *id*., ¶ 130.

Plaintiffs also allege that the agency Defendants implemented the executive orders in a manner injurious to them. Plaintiffs allege that EPA closed offices, terminated grants, began reconsidering regulations, fired personnel, withdrew permits, issued exemptions, and took other actions that would worsen climate change. Compl. ¶¶ 152–171. Plaintiffs also allege that the Department of the Interior (DOI), Department of Energy (DOE), Department of Transportation (DOT), and Army Corps of Engineers (Army Corps) have all eased permitting for fossil fuel projects and taken other actions to exacerbate climate change. *Id*. ¶¶ 173–202. Plaintiffs also bring allegations against agencies for their personnel, organizational, and grant-making decisions against the National Aeronautics and Space Administration (NASA), the National Oceanic and Atmospheric Association (NOAA), the U.S. Department of Commerce (DOC), the National Science Foundation (NSF) and the National Institute of Health (NIH). *Id*. ¶¶ 215–34.

Plaintiffs bring six claims for relief.  First, Plaintiffs assert substantive due process violations of their rights to life on the theory that the challenged executive orders and implementing actions threaten their health and well-being.  *Id.* ¶¶ 251–61.  Second, Plaintiffs assert a substantive due process violation of their right to liberty on the theory that the challenged actions interfere with their right to enjoy state public trust resources, including the Montana and Hawaii state constitutional rights to "a clean and healthful environment and a stable life-sustaining climate."  *Id.*, ¶¶ 262–71.   Third, Plaintiffs allege that the EPA's implementation of the executive orders is *ultra vires*.  *Id.*, ¶¶ 272–303.   Fourth, Plaintiffs allege that the "termination" of the National Climate Assessment is *ultra vires*.  *Id.*, ¶¶ 304–07. Fifth, Plaintiffs allege that Defendants' "wholesale suppression of climate science" is *ultra vires*.  *Id.*, ¶¶ 308–21.  Sixth, Plaintiffs allege that the challenged actions are unconstitutional under the state-created danger doctrine.  *Id.*, ¶¶ 322–29.  Plaintiffs request declaratory and injunctive relief against the challenged executive orders and their implementation.  *Id.* at 119–20.

## STANDARDS OF REVIEW

Federal district courts are of limited jurisdiction, and plaintiffs have the burden to demonstrate that a court has jurisdiction over their claims. *See Badgerow v. Walters*, 596 U.S. 1, 7 (2022); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  One jurisdictional prerequisite is Article III standing.  A court

reviews a motion to dismiss a complaint for lack of standing under Federal Rule of Civil Procedure 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Where the jurisdictional attack is facial, the court determines whether the allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction, accepting all material allegations in the complaint as true and construing them in favor of the party asserting jurisdiction. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975).

A court may also dismiss a complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). However, a court need not accept as true any legal conclusion set forth in a pleading. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ARGUMENT

I.    PLAINTIFFS' CLAIMS ARE NONJUSTICIABLE

    A.    Plaintiffs Lack Article III Standing.

7

Standing requirements "prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Thus, when Plaintiffs contend that an action of the political branches is unconstitutional, the Court must undertake an "especially rigorous" standing inquiry. *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997).

To demonstrate Article III standing, Plaintiffs must establish that (1) they "have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation modified).

1.    Plaintiffs lack redressability for climate injuries.

To establish the third element of standing—redressability—"plaintiffs must show that the relief they seek is both (1) substantially likely to redress their injuries; and (2) within the district court's power to award." *Juliana*, 947 F.3d at 1170 (citing *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018)).  As Defendants previously

explained, the redressability analysis here is controlled by the Ninth Circuit's decision in *Juliana*. Defs.' PI Opp'n 12–17.[1]

There, much as here, youth plaintiffs asserted that the Government had violated their substantive due process rights to a "climate system capable of sustaining human life" by promoting fossil fuels. *Juliana*, 947 F.3d at 1164. The *Juliana* plaintiffs similarly sought both a declaration that the Due Process Clause of the Fifth Amendment required "cessation of the government's promotion of fossil fuels," *id.* at 1170–71, and an injunction against "specific presidential actions" regarding "coal mining," power plant emissions, fossil fuel pipelines, and the "expedition of environmental reviews and approvals for infrastructure projects," *id.* at 1078. But the Ninth Circuit held that requested relief exceeded Article III power. 947 F.3d at 1170–73. Thus, "*Juliana* is on all fours with this action." Defs.' PI Opp'n 12 (quoting *G.B.*, 2024 WL 3009302, at *3).

Plaintiffs fail to distinguish *Juliana*. Their Complaint does not mention this Ninth Circuit precedent, even though three Plaintiffs were parties to *Juliana*. And their PI Reply merely highlights distinctions between this case and *Juliana*, without explaining how those distinctions create jurisdictional difference. *See e.g.*, PI Reply 3 (stating that *Juliana* "had different substantive due process claims" and "did not

---

[1] For brevity's sake, Defendants incorporate by reference the redressability arguments from their PI Opposition.

include *ultra vires* claims"). Unable to distinguish *Juliana* on jurisdictional grounds, Plaintiffs' counsel repeat their unsuccessful strategy of arguing that recent Supreme Court decisions *sub silentio* overrule this Ninth Circuit precedent.[2]

To establish that an intervening Supreme Court decision implicitly overruled Ninth Circuit precedent, Plaintiffs must show that "the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). Under this "high standard," precedents cannot be discarded merely when there is "'some tension' between the intervening higher authority and prior circuit precedent," or when intervening higher authority "'cast[s] doubt' on the prior circuit precedent." *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012) (citations omitted). Instead, "the reasoning and principles of [the later authority] would need to be so fundamentally inconsistent with our prior cases that our prior cases cannot stand." *In re Gilman*, 887 F.3d 956, 962 (9th Cir. 2018).

Plaintiffs cannot show that intervening Supreme Court decisions are "so fundamentally inconsistent" with *Juliana* that this on-point precedent must fall. *See id.* To the contrary, Plaintiffs' intervening Supreme Court decisions—*Gutierrez v.*

---

[2] *Compare* PI Reply 3 ("*Juliana* does not bind this Court's analysis; the Supreme Court's opinions do"), *with In re United States*, No. 24-684, 2024 WL 5102489, at *2 (9th Cir. May 1, 2024) (rejecting argument that *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021), created "an intervening change in law" that overruled *Juliana*), *cert. denied*, 145 S. Ct. 1428 (2025)); *G.B.*, 2024 WL 3009302, at *4 (same).

10

*Saenz*, 145 S. Ct. 2258 (2025) and *Diamond Alternative Energy, LLC v. EPA*, 145 S. Ct. 2121 (2025)—did not even address climate-injury standing. And neither decision involved the second redressability prong, *see Juliana*, 947 F.3d at 1170, as the requested relief in each case—declaratory relief in *Gutierrez* and invalidating agency action in *Diamond Alternative*—was within the lower courts' power to award.

In *Gutierrez*, the Supreme Court merely applied long-standing redressability principles for procedural injury claims in a manner that fully accords with *Juliana.* The death-row petitioner in *Gutierrez* had standing to bring a procedural due process challenge to state law that prevented him from obtaining allegedly exculpatory DNA testing because procedural injury claimants need not prove that their requested procedural relief would likely alter their substantive outcome. 145 S. Ct. at 2267–69 (holding that jurisdiction over "a procedural due process claim like the one Gutierrez presses" cannot be defeated by argument that "the same substantive outcome will result" (citing *Lujan*, 504 U.S. at 572 n.7)). That ruling aligns with *Juliana*, where the Ninth Circuit recognized the same redressability rules for procedural claims, while explaining that those rules do not apply to "a substantive due process claim." 947 F.3d at 1171 & n.7 (citing *Lujan*, 504 U.S. at 572 n.7). Because *Gutierrez* addressed procedural redressability—based on longstanding principles uniquely applicable to procedural rights—it is not even in tension with *Juliana*'s substantive redressability holding. *See Gilman*, 887 F.3d at 962. And Plaintiffs' substantive due

process and *ultra vires* claims are governed by *Juliana* as—unlike *Gutierrez*—Plaintiffs here assert "a substantive right, not a procedural one." *Juliana*, 947 F.3d at 1171 n.7.

In *Diamond Alternative*, the Supreme Court simply reaffirmed that producers generally have standing to challenge regulations designed to reduce the sale of their product. 145 S. Ct. at 2137–41. There, fuel producers challenged the EPA's preemption waiver for California regulations requiring automakers to "manufacture more electric vehicles and fewer gasoline-powered vehicles." *Id.* at 2129. Because "commonsense economic inferences about the operation of the automobile market" demonstrated that invalidating the state regulations "would likely mean more gasoline-powered automobiles, which would in turn likely mean more sales of gasoline and other liquid fuels by the fuel producers," the fuel producers established redressability without providing declarations from expert economists or directly regulated automakers. *Id.* at 2137–39. That holding in no way undercuts the redressability analysis in *Juliana*—which turned, not on the absence of specific evidentiary showings, but on the limits of Article III power.

Plaintiffs nonetheless seize on *Diamond Alternative's* commonplace statement that "monetary costs 'are of course an injury,'" *id.* at 2135 (quoting *United States v. Texas*, 599 U.S. 670, 676 (2023)), to discard *Juliana*, PI Reply 2 (omitting *Texas* as source of internal quotation). But Plaintiffs' ensuing conclusion—that

"some redress" of monetary injuries suffices to establish redressability, PI Reply 9–10—is not the law, as *Texas* holds. There, the plaintiffs lacked standing to enjoin the challenged federal policy—despite showing the policy would inflict "additional costs" on them—as their suit was "not the kind redressable by a federal court" based on historical practice. *Texas*, 599 U.S. at 676–78.  The omitted *Texas* decision thus reaffirms *Juliana's* second redressability prong—that the requested relief must be within the court's power.  Because that second redressability requirement was not at issue in *Diamond Alternative*—where the court of appeals indisputably had authority to invalidate the challenged final agency action under the Clean Air Act—there is no fundamental inconsistency between *Diamond Alternative* and *Juliana*.

Tellingly, the Supreme Court already rejected the three *Juliana* Plaintiffs' attempt to use the *Gutierrez* and *Diamond Alternative* cases to overturn *Juliana*.  In their unsuccessful certiorari petition, the three *Juliana* Plaintiffs claimed their prior case presented "largely the same question" as *Gutierrez* and *Diamond Alternative*. Cert. Pet., *Juliana v. United States*, No. 24-645, 2024 WL 5125252, at *20 (U.S.). And they asked the Supreme Court to "grant, vacate, and remand this case to the Ninth Circuit for further proceedings" after resolving the other cases.  *See id.* at *37. The United States opposed their petition, explaining that neither case addressed the limits on Article III power that underpinned *Juliana*.  Resps.' Opp'n, *Juliana v.*

13

*United States*, No. 24-645, 2025 WL 524212, at *14–16 (U.S.).  And the Supreme

Court denied their petition. *Juliana v. United States*, 145 S. Ct. 1428 (2025).

Nothing in Plaintiffs' Complaint compels a different result here. Plaintiffs

seek essentially the same injunctive relief that exceeded Article III power in *Juliana*;

neither *Gutierrez* nor *Diamond Alternative* is clearly irreconcilable with that binding

precedent. As in *Juliana*, Plaintiffs once again seek to enjoin the Executive Branch

from promoting fossil fuels by specifically enjoining presidential actions directing

agencies to bolster coal mining, reduce regulatory burdens on power plants, and

streamline environmental permitting. *See supra* at 2, 4–5.  Because such relief is

"beyond the power of an Article III court," Plaintiffs' request for injunctive relief

must be dismissed for lack of redressability.  *Juliana*, 947 F.3d at 1171.

As to Plaintiffs' requested declaratory relief, *Juliana* continues to control

because a "declaration that the government is violating the Constitution" based on

substantive constitutional claims "alone is not substantially likely to mitigate"

Plaintiffs' injuries.  947 F.3d at 1170.  Nothing in *Gutierrez* or *Diamond Alternative*

is clearly irreconcilable with that *Juliana* precedent; *Diamond Alternative* did not

address declaratory relief, and *Gutierrez* addressed declaratory relief only for a

procedural claim exempt from "the normal standards for redressability." *Lujan*, 504

U.S. at 572 n.7.  Because "plaintiffs here do not assert a procedural right, but rather

a substantive due process claim," the relaxed redressability standards for procedural

14

claims do not apply. *Juliana*, 947 F.3d at 1171. The Supreme Court has held that declaratory relief "is the very kind of relief that cannot alone supply jurisdiction otherwise absent," because federal courts cannot "issue what would amount to an advisory opinion without the possibility of any judicial relief." *California v. Texas*, 593 U.S. 659, 673 (2021) (citation modified).

As those two *Juliana* holdings dispose of the entirety of Plaintiffs' suit, the Court need go no further. Yet Plaintiffs' claims lack redressability for two additional reasons. *First*, Plaintiffs' requested declaratory relief also exceeds this Court's Article III power. In asking the Court to declare that substantive due process precludes federal promotion of fossil fuels due to climate change, Plaintiffs ask the Court to undertake "a host of complex policy decisions entrusted, for better or worse, to the wisdom and discretion of the executive and legislative branches" about how best to respond to climate change. *See Juliana*, 947 F.3d at 1171. If Article III permits courts to issue this requested declaratory relief, courts will soon be deluged with similar requests for declaratory relief that substantive due process prohibits federal promotion of disparate activities such as timber harvests, livestock grazing, and domestic industry like steelmaking, as all those activities involve GHG emissions, and that substantive due process requires federal promotion of renewable energy, public transit investments, carbon capture, and perhaps even low-carbon building technologies. But decisions that "require consideration of 'competing

15

social, political, and economic forces,' . . . must be made by the People's 'elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country.'" *Id.* at 1172 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 128–29 (1992)).

*Second*, Plaintiffs' requested injunctive relief is not "substantially likely to redress their injuries" arising from climate change. *Juliana*, 947 F.3d at 1170. As Defendants previously explained, the Ninth Circuit was skeptical that even the broader injunction requested in *Juliana* could redress climate change injuries, given the global nature of the problem. Defs.' PI Opp'n 12–14. Here, Plaintiffs allege that the challenged EOs will increase global annual emissions by less than one percent,[3] an amount that, if stopped, "will not suffice" to reduce the global consequences of climate change, *see Juliana*, 947 F.3d at 1171. Because Plaintiffs have failed to carry their burden of demonstrating that enjoining the three EOs would "halt the growth of carbon dioxide levels in the atmosphere, let alone decrease that growth," *id.* at 1170, their requested relief is not substantially likely to redress their climate-change injuries.

---

[3] Plaintiffs allege the challenged EOs will increase emissions by 0.26 Gt $CO_2$-e by 2030. Compl. ¶ 91. That is less than one percent of global annual emissions, Defs.' PI Opp'n 18 & n.2, a statistic the Court should judicially notice, *see United States v. Orozco-Acosta*, 607 F.3d 1156, 1164 n.5 (9th Cir. 2010) (taking judicial notice of government statistics).

For the foregoing reasons, the Court should dismiss Plaintiffs' suit for lack of redressability.

> 2.    Plaintiffs do not plausibly allege a cognizable injury.

To establish the first element of standing, Plaintiffs must plausibly allege concrete and particularized, actual or imminent injuries. *Lujan*, 504 U.S. at 560–61. The Ninth Circuit found that the *Juliana* plaintiffs met this standard, where they had allegedly already suffered specific injuries, such as water scarcity and flooding, attributable to the United States' historical share of global emissions.  947 F.3d at 1168–70 (stating "the United States accounted for over 25% of worldwide emissions from 1850 to 2012").  Here, however, Plaintiffs advance a far more abstract and novel theory of injury, claiming they are injured from "every additional ton of GHG pollution," *e.g.,* Compl. ¶ 3, that they equate with an unexplained "increment of heat," *id.* ¶¶ 11–22, 25–26, 29–32.  But even if unexplained increments of heating at a global scale could be a cognizable injury, Plaintiffs fail to "plead[] factual content that allows the Court to draw the reasonable inference" that each additional ton of GHG emissions causes some concrete, constitutionally meaningful increment of global heat, *Iqbal*, 556 U.S. at 678, let alone the requisite imminent, particularized, "perceptible harm" to Plaintiffs, *Lujan*, 504 U.S. at 566.

In addition to this pleading failure, Plaintiffs' novel additional-ton theory of standing must be rejected as "beyond all reason" to preserve the Article III limits

recognized by the Supreme Court in *Lujan*. *See id.* In that canonical standing decision, plaintiffs were not constitutionally injured by the construction of a dam "anywhere in the world," unless they had imminent plans to visit the dam site. *Id.* at 565–67 & n.3 (rejecting "novel standing theories" based on nexuses to species residing at dam site as "beyond the limit" and "pure speculation and fantasy"). But Plaintiffs' novel additional-ton theory of standing would upend *Lujan*, as dam construction—like nearly all infrastructure projects—results in GHG emissions.[4] This novel theory, if adopted, would enable Plaintiffs to vitiate standing doctrine, by objecting to dam construction (or livestock grazing, timber cutting, fertilizer use, etc.) "at the other end of the country" from where they reside, an outcome that *Lujan* rejected as entirely unreasonable. 504 U.S. at 572 n.7.

The overbroad and omnipresent nature of Plaintiffs' novel standing theory is demonstrated by its application to even Plaintiffs' desired climate solutions. For example, the production and transportation of wind turbines produce GHG emissions, which—according to Plaintiffs' novel theory—inflict constitutional injury through increments of heat. So too would Plaintiffs be injured by climate mitigation measures, such as fire breaks to halt wildfires or levy construction to prevent flooding, as both timber cutting and levy construction produce GHG

---

[4] The Court can take judicial notice that cement production involves GHG emissions. https://www.epa.gov/system/files/documents/2021-10/cement-carbon-intensities-fact-sheet.pdf.

emissions.  In enabling anyone to challenge essentially any infrastructure project anywhere in the country, Plaintiffs' novel standing theory cannot satisfy Article III, which requires plaintiffs to "show that they possess a *personal* stake in the dispute and are not mere bystanders." *Diamond Alternative*, 145 S. Ct. at 2133 (citation modified).  The Court should accordingly reject Plaintiffs' additional-ton injury theory as irreconcilable with Article III.[5]

The Court should also reject Plaintiffs' claims to be injured by the executive orders' directives that agencies reconsider certain prior actions.  While Plaintiffs may be able to establish Article III injury from final agency actions following such reconsideration, they have not plausibly alleged any way they are injured from the agency reconsideration process itself.  The Court should thus dismiss their challenge to the EO directives calling for agencies to reconsider their actions.

Similarly, Plaintiffs have failed to plausibly allege that they are injured by more efficient permitting processes called for by the challenged EOs.  Plaintiffs have no constitutionally cognizable interest in government inefficiency.  Indeed, those permitting efficiencies will help unleash low-carbon energy sources, such as

---

[5] Defendants respectfully incorporate by reference and preserve the arguments from their *Juliana* appeal brief that alleged climate injuries, such as flooding or water scarcity, are not cognizable under Article III, while recognizing that the Court is bound by *Juliana's* injury analysis.

hydropower, nuclear energy, and geothermal.  The Court should thus dismiss their challenge to the EO directives calling for improved permitting efficiency.

> 3.    Plaintiffs fail to plausibly allege that their climate injuries are traceable to the three challenged executive orders.

To establish the second element of standing, Plaintiffs must show that their alleged injuries are traceable to the challenged government actions, *i.e.*, the three challenged EOs, rather than to unchallenged government actions or the actions of third parties that are not before the Court.  Because Plaintiffs cannot establish a likelihood that the challenged EOs provide "a 'meaningful contribution' to global GHG levels," they cannot meet their burden to establish causation.  *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1146 (9th Cir. 2013).

Because their novel additional-ton injury theory violates Article III, *see supra* at 17–19, Plaintiffs must instead establish that the challenged EOs are a "substantial factor" in their alleged climate injuries.  *Juliana*, 947 F.3d at 1169 (citation omitted).  The *Juliana* plaintiffs made such allegations, in the Ninth Circuit's view, by challenging a half-century of federal policy amidst the United States' historical contribution of "over 25% of worldwide emissions."  *Id.*  In contrast, here, Plaintiffs have provided no plausible allegations establishing that the challenged EOs have contributed in any substantial way to their alleged climate injuries, as those EOs issued only this year and are still in the process of being implemented.  At best, Plaintiffs allege the challenged EOs will result in increased annual global emissions

by less than one percent by 2030, after the President's term in office expires. *See supra* at 16, n.3. Such a small, time-limited contribution to emissions is "too tenuous to support standing." *Bellon*, 732 F.3d at 1143–44.

<blockquote>

4.    Plaintiffs fail to plausibly allege standing to challenge climate science funding and personnel decisions.

</blockquote>

No Plaintiff is a federal employee, contractor, or recipient of any federal funding affected by the three challenged EOs. They nevertheless claim that they are injured by myriad decisions that allegedly suppressed climate science. These claims assert that the challenged EOs have caused the cancellation of the National Climate Assessment ("NCA"), the termination of various scientific grants, and staffing cuts at agencies like NOAA. But Plaintiffs also fail to show traceability or redressability for these claims, as Defendants previously explained. Defs.' PI Opp'n 20–24.

Plaintiffs fail to provide any evidence that any of the indirect effects of the alleged climate science funding and personnel cuts are traceable to the executive orders. Only section 7 of EO 14154 pertains to agency funding decisions, and it calls for a temporary pause on the disbursement of funds appropriated under the IRA or the IIJA to allow for Executive Branch review. But Plaintiffs have not established that the paused funding that allegedly injures them was authorized under either of these two statutes or was paused as a result of the Executive Order. Even if they had, their challenge to the disbursement pause is largely moot, as Congress recently

rescinded unobligated IRA funds.  *See* Pub. L. 119-21, H.R. 1, 119th Cong., Title VI, §§ 60001, 60002, 60013, 60016 (enacted 2025); *see also infra* at 40.

Similarly, Plaintiffs' requested relief of enjoining the challenged EOs will not redress their alleged harms from funding or personnel cuts.  Because the challenged EOs do not call for any personnel actions, enjoining those EOs will have no effect on agency workforces.  The same follows for climate science, which is not mentioned in any of the challenged EOs.

B.    Plaintiffs' *Ultra Vires* Claims Are Not Justiciable.

Plaintiffs' *ultra vires* claims seek the exact sort of judicial review that the Supreme Court just held "unavailable": *ultra vires* review outside a "statutory review scheme [that] provides aggrieved persons with a meaningful and adequate opportunity for judicial review." *Nuclear Regul. Comm'n v. Texas*, 145 S. Ct. 1762, 1776 (2025) (*NRC*) (citation modified).  Even when there is no adequate statutory review scheme, *ultra vires* claims are still "strictly limited" to exclude "typical statutory-authority argument[s]." *Id.* at 1775–76.  Unavailable unless the executive has acted "entirely in excess of its delegated powers and contrary to a *specific prohibition* in a statute," an *ultra vires* claim "is essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Id.* (citation modified).

Plaintiffs' *ultra vires* claims are replete with "typical statutory-authority argument[s]."  *See id.*  They cite many dozens of statutes scattered throughout the

U.S. Code.  Compl. ¶¶ 281–93, 305, 309–318.  And they allege that Defendants have "undermine[d]" and "circumvent[ed]" these statutes.  *See e.g.*, *id.* ¶¶ 274, 300, 305.

Despite their pleading, Plaintiffs now disavow bringing "statutory claims."  PI Reply 12.  Plaintiffs instead recast their *ultra vires* claims as raising "fundamentally constitutional" arguments under the separation of legislative and executive powers, Take Care Clause, and the Presentment Clause.  *Id.*  But the Supreme Court has rejected previous attempts to transform statutory-authority arguments into viable constitutional claims.  *See Dalton v. Specter*, 511 U.S. 462, 473 (1994) ("claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims").

Plaintiffs incorrectly assert that they can transform their statutory authority arguments into constitutional ones by invoking "separation of powers principles."  PI Reply 12 (citing *Sierra Club v. Trump*, 929 F.3d 670, 696–97 (9th Cir. 2019)).  Plaintiffs misread *Sierra Club*, which rejected the President's statutory *defense* to an Appropriations Clause claim asserting that he "would cause funds to be 'drawn from the Treasury' not 'in Consequence of Appropriations made by Law.'"  929 F.3d at 694 (quoting U.S. Const. art. I, § 9, cl. 7).  After Congress repeatedly declined to appropriate funds for a border wall, the Executive reprogrammed other funds for border wall construction, claiming statutory authority to do so.  Without such

statutory authority, the reprogramming violated the Appropriations Clause, "making Plaintiffs' claim fundamentally a constitutional one." *Id.* at 696–97.

Here, by contrast, Plaintiffs do not identify any "specific prohibition" in the Constitution against the challenged EOs. *See NRC*, 145 S. Ct. at 1776. They instead claim the Executive lacks "dedicate[d] authority over fossil fuels or energy production" under the Constitution. Compl. ¶ 276. Nor does the Constitution dedicate those issues to Congress. Instead, under our Constitutional system, the Legislature has enacted laws governing fossil fuels and energy production; the execution of those laws is entrusted to Executive departments. *See* Defs.' PI Opp'n 6 (highlighting responsibilities of DOI, DOE, DOT and EPA under various statutes). Those departments "remain[] subject to the ongoing supervision and control of the elected President"—"the most democratic and politically accountable official in Government." *Seila Law LLC v. CFPB*, 591 U.S. 197, 224 (2020). Because the challenged EOs exercise the President's supervisory responsibility as Chief Executive, Plaintiffs have failed to articulate any cognizable separation of powers claim.[6]

---

[6] Plaintiffs also disavow any effort to challenge the President's statutory authority to declare an emergency under the National Emergency Act. Reply 11 n.3. In doing so, Plaintiffs concede that the President had authority under that statute to declare the national energy emergency, and thus their *ultra vires* challenge to EO 14156 must fail. *See* Defs.' PI Opp'n 24–27; *see also Am. Foreign Serv. Ass'n v. Trump*, No. 25-5184, 2025 WL 1742853, at *2–3 (D.C. Cir. June 20, 2025) (holding that

Turning to the Take Care Clause, Plaintiffs do not provide a single case where courts assumed authority to review the President's "purely executive and political" duty "to see that the laws are faithfully executed." *Mississippi v. Johnson*, 71 U.S. 475, 499 (1866). Given the unique nature of the President's Take Care Clause authority, any "attempt on the part of the judicial department of the government to enforce the performance of such duties by the President might be justly characterized, in the language of Chief Justice Marshal, as 'an absurd and excessive extravagance.'" *Id.* Thus, "in the 150 years since *Johnson* was decided, no court has ever held that the Take Care Clause provides a mechanism to obtain affirmative relief against the President or other executive branch officials." *Arizona v. Mayorkas*, 600 F. Supp. 3d 994, 1011 (D. Ariz. 2022).

Plaintiffs remaining constitutional theories fare no better. Their invocation of the Presentment Clause is a distraction, as the challenged EOs neither repeal nor amend duly enacted statutes. *See* Compl. ¶ 273; s*ee also Clinton v. City of New York*, 524 U.S. 417, 418 (1998). Nor can the major questions doctrine, Compl. ¶ 301, or "Posterity Clause," Compl. ¶ 298, constitutionalize their statutory claims. The major questions doctrine does not apply to Presidential action. *Mayes v. Biden*, 67 F.4th 921, 933 (9th Cir.), *vacated as moot*, 89 F.4th 1186 (9th Cir. 2023). And the

---

there was no *ultra vires* suit available against the President where "the statute commits the relevant decision to the President's discretion.").

Supreme Court has never found a right of action from the preamble of the Constitution that Plaintiffs call "the Posterity Clause." *See Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 22 (1905) (declining to construe preamble as source of rights or powers).

Lacking constitutional bases for their *ultra vires* claims, Plaintiffs must instead pursue them through the indisputably "meaningful and adequate" opportunities for statutory judicial review. *NRC*, 145 S. Ct. at 1776. Consider, for example, Plaintiffs' grievance about EPA's alleged funding freezes. Compl. ¶¶ 292–294 (claiming that EPA violated statutes by not disbursing funds). Those are not constitutional claims. *Sierra Club*, 929 F.3d at 697 n.21 (claim that "the Executive Branch was *refusing* to allot money Congress had specifically *instructed* it to spend" was "no constitutional claim" (citing *Train v. City of New York*, 420 U.S. 35, 42 (1975)); *Arizona*, 600 F. Supp. 3d at 1012. Because such non-constitutional grievances are reviewable under other statutory schemes, *see Department of Education v. California*, 145 S. Ct. 966, 968 (2025), Plaintiffs cannot pursue judicial review outside those statutory review schemes, *NRC*, 145 S. Ct. at 1776.

Similarly, Plaintiffs' concern about EPA's ongoing reconsideration of its 2009 Endangerment Finding, Compl. ¶ 154, must be raised under the Clean Air Act's judicial review provisions, which allocate exclusive jurisdiction to appellate courts, Defs.' PI Opp'n 29–31. Plaintiffs' sole response to this jurisdictional defect is the

26

suggestion that the Court may tread lightly on exclusive appellate jurisdiction. *See* PI Reply 13 (arguing this defect concerns "a small subset of actions taken by EPA and DOE"). To the contrary, Plaintiffs ask the Court to trample on exclusive appellate jurisdiction, as many other agency actions—such as DOT's fuel economy standards and DOI's offshore oil and gas leasing program—are entrusted to the exclusive jurisdiction of appellate courts. *See e.g.*, 49 U.S.C. § 32909(a)(1); 43 U.S.C. § 1349(c)(1). Even were this concern limited to actions by EPA and DOE, that would still eliminate most of Plaintiffs' alleged injuries, which arise from the assumed "repeal, or non-enforcement, of all [EPA] GHG regulations, and [DOE] efficiency rules," Jenkins Decl. ¶ 8, Dkt. 25-20; Compl. ¶¶ 281-291 (alleging violations of the CAA); ¶ 192 (alleging violations of Energy Policy Conservation Act (EPCA)).

Nor can Plaintiffs short-circuit these statutory schemes by suing before the agency acts. *In re Murray Energy Corp.*, 788 F.3d 330, 334 (D.C. Cir. 2015) (Kavanaugh, J.) ("We do not have authority to review proposed agency rules."). This Court cannot enjoin the agency Defendants from finalizing their ongoing rulemakings: "where a statute commits review of final agency action to the court of appeals, any suit seeking relief that might affect the court's *future* jurisdiction is subject to its exclusive review." *Pub. Util. Comm'r of Or. v. Bonneville Power Admin.*, 767 F.2d 622, 626 (9th Cir. 1985) (emphasis added); *see also Telecoms Rsch.*

*& Action Ctr. v. FCC*, 750 F.2d 70, 72 (D.C. Cir. 1984).  Plaintiffs cannot justify this jurisdictional overreach.[7]

In sum, Plaintiffs' concerns that many individual agency actions violate various statutes cannot be brought outside the statutory judicial review processes. Neither the APA nor Article III will "permit such forays outside the traditional, normal mode of operation of the courts," which require "controversies reduced to more manageable proportions." *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1012 (9th Cir. 2021) (citation modified).

C.    The Court Should Dismiss The President As A Defendant.

Courts generally "lack 'jurisdiction of a bill to enjoin the President in the performance of his official duties.'" *Hawaii v. Trump*, 859 F.3d 741, 788 (9th Cir. 2017) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 802–03 (1992)), *vacated on other grounds as moot*, 583 U.S. 941 (2017).  As Defendants previously explained, Plaintiffs fail to carry their burden to identify a valid waiver of sovereign immunity to bring their suit against the President, who is not an agency.  Defs.' PI Opp'n 27–28 & n.8.  And Plaintiffs acknowledge that, under Ninth Circuit law, section 702 of the APA waives sovereign immunity only "for Defendant *agencies*."

---

[7] This defect also eliminates remedies for their substantive due process claims.  In asking the Court to "rescind" agency actions implementing the EOs, Compl. at 119, Plaintiffs ask this Court to invalidate agency actions subject to exclusive appellate review.

PI Reply 13 (citation modified).  Because Plaintiffs identify no other waiver of sovereign immunity applicable for claims against the President—let alone a persuasive reason to depart from the general prohibition on injunctions against the President—this Court should dismiss Plaintiffs' requests for both declaratory and injunctive relief against the President, just as the *Juliana* district court did.  *See Juliana*, 339 F. Supp. 3d at 1079.

## II.    THE COMPLAINT FAILS ON THE MERITS.

Even if Plaintiffs' claims were justiciable, the Court should dismiss them for failing as a matter of law.

### A.    Plaintiffs' substantive due process claims fail as a matter of law.

#### 1.    The Due Process Clause does not require particular energy policies.

The Due Process Clause of the U.S. Constitution does not provide Plaintiffs with the right to the federal energy policy of their choosing.  Plaintiffs assert substantive due process rights to "enjoy this terrestrial existence," "pursue happiness in living," and have a "stable climate system."  Compl. ¶ 255.    As explained in Defendants' PI Opposition brief, Plaintiffs cannot establish a substantive due process right to federal policies disfavoring fossil fuels and promoting other energy sources.  Defs.' PI Opp'n 33–38.  Plaintiffs have neither provided a "careful description of the asserted fundamental liberty interest" nor have they alleged that the asserted right is "objectively, deeply rooted in this Nation's history and tradition."

29

*Dep't of State v. Munoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)).

Rather than identifying any specific liberty interest, Plaintiffs simply point to "life" and "liberty." PI Reply 14–16 (citing no substantive due process case). But Plaintiffs cannot simply allege a plainly speculative risk to life or vague interest in "liberty" and jump to strict scrutiny. Plaintiffs must instead describe their liberty interest in concrete terms and explain how the government has violated that right or their right to life. *Collins*, 503 U.S. at 125 ("It is important, therefore, to focus on the allegations in the complaint to determine how petitioner describes the constitutional right at stake and what the city allegedly did to deprive her husband of that right.").

*Collins* conclusively demonstrates the error in Plaintiffs' unprecedented approach to substantive due process. That case arose from an employee's death due to atmospheric conditions at his worksite. Despite this loss of life, the court required the petitioner to articulate her asserted constitutional right, which she alleged was the deprivation of "life and liberty by failing to provide a reasonably safe work environment." *Id.* at 125–26. Once described, the court proceeded to evaluate this asserted right to a reasonably safe work environment against the "text" and "history of the Due Process Clause." *Id.* at 126–27. Because the Clause does not "guarantee . . . certain minimal levels of safety and security," the court rejected the

asserted substantive due process claim. *Id.* (quoting *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 195 (1989)).[8]  *See also* Defs.' PI Opp'n 35–36 (collecting cases rejecting asserted environmental rights); *Abigail All. for Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695, 703 (D.C. Cir. 2007) (en banc) (rejecting asserted "fundamental right of access for the terminally ill to experimental drugs").

Because Plaintiffs cannot articulate a fundamental environmental right, they must establish that the challenged EOs "shock the conscience." *Brittain v. Hansen*, 451 F.3d 982, 996 (9th Cir. 2006) (holding that substantive due process claim failed "as a matter of law" when the challenged actions were not "conscience shocking"). This is an extremely high burden to meet, even on a motion to dismiss.  "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort

---

[8] While "the State owes a duty to take care of those who have already been deprived of their liberty," *Collins*, 503 U.S. at 127, it does not have "an affirmative obligation" to "guarantee certain minimal levels of safety and security," to the public at large, *DeShaney*, 489 U.S. at 195.  Accordingly, Plaintiffs' state-created danger cause of action also fails.  That doctrine is grounded in the duty a governmental body takes on when it has control over a particular individual's person and places him or her in imminent peril.  *See, e.g., Penilla v. City of Huntington Park*, 115 F.3d 707, 710 (9th Cir. 1997); *Wood v. Ostrander*, 879 F.2d 583, 588 (9th Cir. 1989).  Plaintiffs cannot avail themselves of the state-created danger doctrine because the case-law surrounding this judicially created doctrine exclusively concerns state, not federal, officials creating danger for persons in (or about to be in) confinement, not members of the general population.  *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 (9th Cir. 2006).

of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 838–40, 849 (rejecting claim that high-speed chase resulting in bystander death shocked the conscience).

"A hallmark of successful challenges is an extreme lack of proportionality, as the test is primarily concerned with 'violations of personal rights ... so severe ... so disproportionate to the need presented, and ... so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.'" *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 881 (1st Cir. 2010) (quoting *Moran v. Clarke,* 296 F.3d 638, 647 (8th Cir.2002) (en banc) (ellipses in original)). In short, state action shocks the conscience when it recalls medieval torture devices like "the rack and the screw." *Rochin*, 342 U.S. at 172.

Accordingly, courts have not hesitated to dismiss claims under Rule 12(b) where the challenged conduct is plainly not conscience shocking. *See, e.g., Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1181 n.5 (9th Cir. 2007) ("Even assuming a legitimate due process claim under the Fourteenth Amendment, it takes no further analysis to conclude that these actions do not 'shock the conscience.'"); *Lunn v. City of Los Angeles*, 629 F. Supp. 3d 1007, 1015 (C.D. Cal. 2022); *Abcarian v. Levine*, No. CV-167106-FMO, 2019 WL 13038412, at *5 (C.D. Cal. Jan. 3, 2019), *aff'd*, 972 F.3d 1019 (9th Cir. 2020).

Plaintiffs have failed to plausibly allege conscience-shocking behavior. Plaintiffs barely recognize this standard, *see* Compl. ¶ 5, let alone plausibly explain how the challenged EOs convey the sort of wanton cruelty that courts have found conscience-shocking. The challenged EOs focus on providing reliable, affordable energy to the American people to bolster our Nation's energy security. Although Plaintiffs believe the better course of action is to focus national energy policy on climate risks,[9] the American voters selected a Presidential candidate with a different energy policy in the recent presidential election.

Courts cannot "overrule that democratically adopted policy judgment on the ground that it shocks *their* consciences" without engaging in "judicial governance" repugnant to the Constitution. *Lewis*, 523 U.S. at 865 (Scalia, J., concurring); *accord Mullins v. Oregon*, 57 F.3d 789, 793 (9th Cir. 1995) ("This nation's democratic tradition . . . demands our reluctance to expand the substantive protection of the Due Process Clause, lest the only limits upon the judicial veto become the predilections of those who happen to be members of the federal judiciary."). Because Defendants

---

[9] Though Plaintiffs bolster their standing arguments with reference to the professional costs they will allegedly incur as a result of the executive orders, they do not allege any constitutional rights to pursue their preferred graduate degrees or professions. Nor could they, because Plaintiffs do not allege that the executive orders constitute a "complete prohibition" on their ability to pursue climate science professions. *See Franceschi v. Yee*, 887 F.3d 927, 938 (9th Cir. 2018); s*ee also Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2003).

are entitled to "the presumption that the administration of government programs is based on a rational decisionmaking process that takes account of competing social, political, and economic forces," *Collins*, 503 U.S. at 128, Plaintiffs cannot establish that the challenged EOs are "so egregious, so outrageous, that [they] may fairly be said to shock the contemporary conscience," *Lewis*, 523 U.S. at 847 n.8.

In sum, the Court should decline Plaintiffs' invitation to engage in the sort of "freewheeling judicial policymaking that characterized discredited decisions such as *Lochner v. New York*, 198 U.S. 45 (1905)." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 239–40 (2022); *see also Albright v. Oliver,* 510 U.S. 266, 271–72 (1994) ("Federal courts have "always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this uncharted area are scarce and open ended.").

> 2.    State law cannot create a federal substantive due process right to federal energy policy.

As Defendants previously explained, the Court should reject Plaintiffs' attempt to import state law into the Fifth Amendment. Defs.' PI Opp'n 37–38. Because environmental rights under state constitutions cannot "impose substantive obligations on the *federal* government," *Delaware Riverkeeper Network v. FERC*, 895 F.3d 102, 110 (D.C. Cir. 2018), *overruled on other grounds by Allegheny Def. Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020) (en banc), Plaintiffs' invocation of state law has no relevance to their substantive due process claims. Plaintiffs

34

nonetheless invoke procedural due process cases, *see* PI Reply 16 (citing *Gutierrez*, 145 S. Ct. at 2265 n.1 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)), without ever explaining how those cases are relevant to their substantive federal claims. The Court should reject Plaintiffs' reliance on those procedural due process cases, as "the Supreme Court has never held that such state-created interests constitute a fundamental liberty interest protected under a *substantive* due process theory. Rather, the Court has analyzed state-created liberties under a *procedural* due process theory." *Kraushaar v. Flanigan*, 45 F.3d 1040, 1047 (7th Cir. 1995).

The Court should also reject Plaintiffs' reliance on the public trust doctrine. That doctrine is an "ancient" common law doctrine pertaining to "public navigation and fishing rights over tidal lands." *PPL Montana, LLC v. Montana*, 565 U.S. 576, 604 (2012); *see also Illinois Cen. Rail Co. v. Illinois*, 146 U.S. 387 (1892). The Supreme Court has steadfastly and without exception treated the public trust doctrine as a matter of state law, not federal law. *See PPL Montana*, 565 U.S. at 603–04; *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 285 (1997); *Phillips Petroleum Co. v. Mississippi*, 484 U.S. 469, 475 (1988); *Appleby v. City of New York*, 271 U.S. 364, 395 (1926); *Long Sault Dev. Co. v. Call*, 242 U.S. 272, 278–79 (1916); *Shively v. Bowlby*, 152 U.S. 1, 57–58 (1894). The Ninth Circuit has done the same. *United States v. 32.42 Acres of Land, More or Less, Located in San Diego Cnty.*, 683 F.3d 1030, 1037–38 (9th Cir. 2012).

35

For this reason, Plaintiffs cannot state a claim for a federal constitutional injury arising from any alleged degradation of resources held in the public trust. In *Alec L. ex rel. Loortz v. McCarthy*, litigated by at least two of Plaintiffs' counsel, the D.C. Circuit rejected the precise claims Plaintiffs bring here. 561 F. App'x 7, 8 (D.C. Cir.) (per curiam), *cert. denied*, 135 S. Ct. 774 (2014). Substantive due process under the U.S. Constitution does not provide a vehicle for Plaintiffs to vindicate their common law rights against the federal government.

B.     Plaintiffs' *ultra vires* claims fail as a matter of law.

As explained, the Court does not have jurisdiction over Plaintiffs' *ultra vires* claims for many reasons, including that they are improperly dressed-up statutory claims. *See supra* at 22–28. But even setting aside the many jurisdictional defects with the Complaint, Plaintiffs' *ultra vires* claims should also be dismissed for failure to state a claim. The President acted within his Constitutional authority to issue the challenged executive orders.

To the extent that Plaintiffs allege that that the President acted *ultra vires* in issuing the EOs, Plaintiffs' *ultra vires* claims fail because the EOs fall squarely within the President's constitutional authority under Article II, and they do not infringe on Congress' power under Article I. Article II, Section 3 of the U.S. Constitution charges the President with the duty to faithfully execute the laws of the United States. This authority "necessarily encompasses 'general administrative

control of those executing the laws,' throughout the Executive Branch," and it "ordinarily allows, and frequently requires the President to provide guidance and supervision to his subordinates." *Bldg. & Constr. Trades Dep't v. Allbaugh*, 295 F.3d 28, 32 (D.C. Cir. 2002) (quoting *Myers v. United States*, 272 U.S. 52, 164 (1926)). The President "may properly supervise and guide their construction of the statutes under which they act in order to secure that unitary and uniform execution of the law which Article II of the Constitution evidently contemplated in vesting general executive power in the President alone." *Id.* (quoting *Sierra Club v. Costle*, 657 F.2d 298, 406 n.524 (D.C. Cir. 1981)).

The three challenged executive orders set forth aspects of the President's energy policy priorities and instruct numerous agencies to implement those policies consistent with the Constitution and existing law.

1. The Executive Orders require that their implementation be consistent with the law.

The Executive Orders call for federal agencies to take lawful measures to implement the President's energy agenda. Indeed, the challenged executive orders emphasize that the terms of each one "shall be implemented consistent with applicable law and subject to the availability of appropriations." *See* 90 Fed. Reg. at 9436–37; 90 Fed. Reg. at 8359; 90 Fed. Reg. at 15519–20.

Courts have refused to give effect to savings clauses only where the challenged executive order "unambiguously commands action" that is inconsistent

with the law. *San Francisco v. Trump*, 897 F.3d 1225, 1233–34, 1240 (9th Cir. 2018). In declining to stay an order enjoining an executive order which instructed agencies to "promptly undertake preparations to initiate large-scale reductions in force," the Ninth Circuit found the savings clause unpersuasive. *AFGE v. Trump*, 139 F.4th 1020, 1038 (9th Cir. 2025). But the Supreme Court subsequently granted the stay, noting that the agencies' implementing plans for that executive order were not before it. *Trump v. AFGE*, No. 24A1174, 606 U.S. ---, 2025 WL 1873449, at *1 (U.S. July 8, 2025). Justice Sotomayor wrote separately to note that while "the President cannot restructure federal agencies in a manner inconsistent with congressional mandates…the relevant Executive Order directs agencies to plan reorganizations and reductions in force 'consistent with applicable law." *Id.* (Sotomayor, J., concurring). The challenged executive orders in this case speak in even less categorical terms than that of *AFGE*. They set energy policy and outline the steps agencies should take, consistent with the law, to carry out that policy, and Plaintiffs advance nothing more than the "'mere possibility that some agency might make a legally suspect decision."" *San Francisco*, 897 F.3d at 1239–40 (quoting *Allbaugh*, 295 F.3d at 33).

    2. Plaintiffs fail to state cognizable *ultra vires* claims against the agency Defendants.

If Plaintiffs believe that any agency implemented an executive order in a manner that violated the law, they can challenge that action under the relevant

judicial review scheme.  Plaintiffs, however, appear to disclaim any interest in challenging individual statutory violations of the Defendant agencies.  PI Reply  13. But their lack of interest in pleading a cognizable case should not win them a chance to challenge the President's policy directives without grappling with the specifics of how those directives are implemented, and whether their challenges to those implementing actions are ripe and filed in the jurisdictionally proper venue.

> a.  Plaintiffs' third cause of action does not allege a cognizable claim against the EPA or related Defendants.

Plaintiffs' allegations against EPA do not satisfy the most basic principles of notice pleading.  Rather than challenge the rescission or revision of any regulations, Plaintiffs challenge the "dismantling" of unnamed standards under several statutes. Compl. ¶¶ 289–91.  Plaintiffs do not plead facts sufficient to even identify the agency actions they are challenging, never mind how these actions are in violation of the relevant statutes.  The Court should dismiss these claims on this basis.  *Iqbal*, 556 U.S. at 678.  Even were Plaintiffs' identification of these actions satisfactory, the Court should dismiss on the basis that challenges to EPA rulemakings under the CAA must be brought in the appropriate Court of Appeals.  *See supra* at 27–28; *see also* Defs.' PI Opp'n 29–31.

Plaintiffs' objections to EPA's grantmaking and actions are similarly impossible to parse.  Plaintiffs reference broad categories of funds authorized by the IRA and allege that "[i]n implementing the EOs, EPA acts *ultra vires* by freezing,

delaying, recouping, and withholding funds that Congress has appropriated to reduce GHG pollution." Compl. ¶¶ 292–94.  Plaintiffs reference five statutory provisions from the IRA that offer funds for combating climate change, but they do not allege which of these funding streams were frozen, which, if any, grants under these funding streams have been cancelled, or whether and why any such freezes or cancellations would be unlawful.  *Id.*, ¶ 292.  Nor is it clear that greater specificity would make a difference, as Congress has subsequently rescinded the unobligated balances of many of these funds, including those for clean heavy-duty vehicles, the greenhouse gas reduction fund, GHG air pollution plans, and environmental and climate justice block grants.  *See* Pub. L. 119-21, H.R. 1, § 60001 (rescinding unobligated balances of 42 U.S.C. § 7432; § 60002 (repealing 42 U.S.C. § 7434 and its unobligated balances); § 60013 (rescinding unobligated balances of 42 U.S.C. § 7437); § 60016 (rescinding unobligated balances of 42 U.S.C. § 7438).  Where funds have been rescinded by Congress, courts lack jurisdiction to require that those funds be paid.  *See Rochester Pure Waters Dist. v. EPA*, 960 F.2d 180, 181 (D.C. Cir. 1992) (per curiam).

Plaintiffs provide even less detail to support their statement that "[i]n implementing the EOs, EPA has acted *ultra vires* in eliminating its scientific offices, staff, and GHG research capacity to prevent and control fossil fuel air pollution." Compl. ¶ 288.  Plaintiffs do not plead any factual support for their assumption that

40

EPA's personnel decisions violate its statutory mandate to "maintain[] a high level of scientific quality" in its reports to the President and Congress, 42 U.S.C. § 4364(c), or any other statutory provision.

> b. Plaintiffs' fourth cause of action fails to plausibly allege a claim related to the alleged cancellation of the National Climate Assessment.

Plaintiffs' fourth claim focuses on "disbanding USGCRP…and defunding and canceling the NCA pursuant to the EOs." Compl. ¶¶ 304–07. As Defendants previously explained, this claim fails at the outset because Plaintiffs cannot connect any decisions involving USGCRP or the NCA to the challenged EOs, which do not even mention those programs. Defs.' PI Opp'n 40–41. Plaintiffs have no response whatsoever to that defect in their claim. *See* PI Reply 17.

This claim also fails for several additional reasons. *First*, this claim sounds in statute, as the USGCRP is entirely a statutory creation. Plaintiffs admit as much in describing their claim as one that Defendants have "circumvented duly enacted federal statutes." Compl. ¶ 305. Under *NRC*, this claim thus cannot be heard outside the available statutory review regime under the APA. *See supra* 22–28. When plaintiffs believe that an agency has "unlawfully withheld or unreasonably delayed" a legally required action, they can seek to compel agency action under 5 U.S.C. § 706(1). Plaintiffs concede that they have not brought such an APA claim. Accordingly, their statutory *ultra vires* challenge must be dismissed.

Plaintiffs' NCA claim is also unripe.  The Global Change Research Act of 1990 requires the Committee on Earth and Environmental Sciences to submit a scientific assessment on USGRP findings, along with other analysis, on a "periodic basis (not less frequently than every 4 years)."  15 U.S.C. § 2936.  The Fifth National Climate Assessment was completed in 2023,[10] and no subsequent assessment is due until 2027 at the earliest.  Plaintiffs' fourth cause of action is therefore not ripe.  *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003).

       c.  Plaintiffs' fifth cause of action fails to plausibly allege a claim.

Plaintiffs' fifth claim attacks a smorgasbord of agency actions—from NASA's termination of a real estate lease to personnel reductions and database funding decisions at NOAA—all under the guise of an *ultra vires* challenge to energy EOs that do not call for such agency restructuring.  Compl. ¶¶ 308–21.  As explained more fully in Defendants' PI Opposition brief, Plaintiffs do not plausibly allege that the described agency actions were taken to implement the challenged EOs, as opposed to the other unchallenged EOs governing government efficiency and scientific standards.  Defs.' PI Opp'n 41–42.  And as explained supra, at 37–38, Plaintiffs cannot fashion a cognizable claim against lawfully issued executive orders out of allegations that individual agencies unlawfully implemented those orders,

---

[10] A.R. Crimmins et al*., Fifth National Climate Assessment*, NOAA (2023) https://repository.library.noaa.gov/view/noaa/61592

especially where the President ordered the agencies to act in a manner consistent with the law.

Nor can Plaintiffs advance a statutory *ultra vires* against Executive conduct where statutory review provisions govern judicial review. As explained *supra*, at 22–28, an *ultra vires* claim will only be available to challenge actions "entirely in excess of . . . delegated powers and contrary to a specific prohibition in a statute." *NRC*, 145 S. Ct. at 1762. Even then, *ultra vires* review is foreclosed "if, as is usually the case, a statutory review scheme provides aggrieved persons with a meaningful and adequate opportunity for judicial review, or if a statutory review scheme forecloses all other forms of judicial review." *Id.* at 1776 (citation omitted). Here the APA provides Plaintiffs with an avenue not only to challenge final agency actions, 5 U.S.C. § 704, but also to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1).

Plaintiffs' arguments fail because they misread broad Congressional policy statements as specific statutory commands. Though the APA provides Plaintiffs with an avenue for judicial review, it also provides guardrails for this avenue. "A court can compel agency action under this section only if there is a specific, unequivocal command placed on the agency to take a discrete agency action, and the agency has failed to take that action." *Vietnam Veterans of Am. v. Cent. Intel. Agency*, 811 F.3d 1068, 1075 (9th Cir. 2016) (citation omitted). Plaintiffs

43

understandably want to avoid these restrictions, because they allege no specific, unequivocal command that the agencies violate.  Compl. ¶¶ 308–21.  Plaintiffs instead allege that in "suppressing" climate science, the agencies violate numerous statutes calling for them, for example, to "'enhance public awareness and understanding of . . . atmospheric science,' and to strengthen and meet the 'needs of the various sciences.'"  Compl. ¶ 314 (quoting 33 U.S.C. §§ 893(a), 893a(a); 42 U.S.C. § 1862).  These statutory goals would not give rise to the type of discrete mandatory duty actionable under section 706(1) of the APA.  That does not mean that Plaintiffs can simply decline to plead their case under the APA, however, because the Supreme Court has made clear that *ultra vires* review is not available as an "end-run around the limitations of  . . . judicial-review statutes." *NRC*, 145 S. Ct. at 1775.

> d. Plaintiffs do not plead cognizable grounds to challenge the President's declaration of a National Energy Emergency.

In   EO 14156, the President has declared a national energy emergency. Invoking the National Emergency Act, the President emphasizes the importance of ensuring an "affordable and reliable energy supply" both for domestic prosperity and to "help our country compete with hostile foreign powers, strengthen relations with allies and partners, and support international peace and security."  90 Fed. Reg. 8433. After Defendants disputed Plaintiffs' ability to challenge this determination under the political question doctrine, *see* Defs.' PI Opp'n 24–27, Plaintiffs disavowed any

44

effort to challenge the President's statutory authority to declare an emergency under the National Emergency Act.  Reply 11, n.3.

Disclaiming any statutory challenge to EO 14156, Plaintiffs cannot leverage their Constitutional claims to challenge the President's determination that the interplay between high energy prices, inadequate energy infrastructure, and hostile foreign actors threatens national security.  *See* 90 Fed. Reg. 8433.  "[T]he Ninth Circuit has characterized 'the declaration or continuance of a national emergency' as an 'essentially political question'" *California v. Trump*, 407 F. Supp. 3d 869, 891 (N.D. Cal. 2019), *aff'd*, 977 F.3d 853 (9th Cir. 2020), *vacated on other grounds*, 142 S. Ct. 56 (2021) (quoting *United States v. Spawr Optical Rsch., Inc.*, 685 F.2d 1076, 1080 (9th Cir. 1982)).  Plaintiffs therefore have no legal basis to ask the Court to second-guess the motives and factual basis for the Presidents' declaration of a national energy emergency.  *See* Compl. ¶¶ 2, 69, 237 (energy emergency is "false" and "a lie").

Plaintiffs may disagree with the President's exercise of his discretion, but his evaluation of facts pertinent to national security and foreign affairs is, at a minimum, entitled to significant deference.  *Holder v. Humanitarian L. Project*, 561 U.S. 1, 33 (2010); *see also Haig v. Agee*, 453 U.S. 280, 292 (1981) ("Matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention."); *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, No. 25-4014, 2025

WL 2180674, at *4 (9th Cir. Aug. 1, 2025) (staying a preliminary injunction of an executive order which excluded certain agencies from collective bargaining agreements based on national security reasons).

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss and dismiss Plaintiffs' claims in their entirety.

Respectfully submitted on this 4th day of August, 2025.

Adam R.F. Gustafson
*Acting Assistant Attorney General*
Robert N. Stander
*Deputy Assistant Attorney General*
Environment & Natural Resources Division
United States Department of Justice


*/s/   Erik Van de Stouwe*
Michael S. Sawyer
Erik Van de Stouwe
Natural Resources Section
Miranda Jensen
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 514-5273 (Sawyer)
Tel: (202) 305-0247 (Van de Stouwe)
Tel: (202) 598-3071 (Jensen)
michael.sawyer@usdoj.gov
erick.van.de.stouwe@usdoj.gov
miranda.jensen@usdoj.gov

*Attorneys for Defendants*

46

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(d)(2)(E), I certify that the foregoing brief has a word count of 10,813 words, excluding the portions exempted by L.R. 7.1(d)(2)(E).

*/s/   Erik Van de Stouwe*