IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| EVA LIGHTHISER; *et al.*, | CV 25–54–BU–DLC |
| Plaintiffs, | |
| v. | ORDER |
| DONALD J. TRUMP, in his official capacity as President of the United States; *et al.*, | |
| Defendants, | |
| STATE OF MONTANA; *et al.*, | |
| Defendant-Intervenors. | |

Before the Court is a Motion to Intervene filed by the States of Montana, Alaska, Arkansas, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Louisiana, Missouri, Nebraska, North Dakota, Oklahoma, South Dakota, Texas, Utah, West Virginia, and Wyoming, as well as the U.S. Territory of Guam (collectively "Proposed State Intervenors"). (Doc. 32.) The Proposed State Intervenors seek to intervene as of right or, in the alternative, permissively. (*Id.* at 2.) Plaintiffs object to the intervention and Federal Defendants take no position. (Doc. 33 at 8.) For the reasons herein, the Motion will be granted.

**BACKGROUND**

On May 29, 2025, Plaintiffs— 22 youth and children from across the United States—filed this action for declaratory and injunctive relief against three executive orders enacted by President Donald J. Trump during his first months in office. (Doc. 1.) Plaintiffs challenge (1) Executive Order 14154 §§ 1–3, 5, 7, titled "Unleashing American Energy"; (2) Executive Order 14156, titled "Declaring a National Energy Emergency"; and (c) Executive Order 14261 §§ 2–3, 5–7, titled "Reinvigorating America's Beautiful Clean Coal Industry and Amending Executive Order 14241" (collectively the "Challenged Executive Orders"). (*Id.* ¶ 1.) "Implementation of the unlawful [Executive Orders]," Plaintiffs argue, "will increase fossil fuel pollution, threatening Plaintiffs' lives, health, and safety." (*Id.* ¶ 90.) Plaintiffs allege six claims for relief: (1) substantive due process violation of the right to life; (2) substantive due process violation of the right to liberty; (3) ultra vires Presidential action to "unleash" fossil fuel pollution and debilitate the Environmental Protection Agency; (4) ultra vires Presidential action to "unleash" fossil fuels by terminating the National Climate Assessment; (5) ultra vires Presidential action to "unleash" fossil fuels by dismantling, suppressing, and scrubbing science; and (6) substantive due process state-created danger. (*Id.* ¶¶ 251– 329.)

On June 13, 2025, Plaintiffs filed a Motion for Preliminary Injunction

seeking to enjoin implementation of the Challenged Executive Orders. (Doc. 24.) Proposed State Intervenors filed a Motion to Intervene on July 8, 2025, (Doc. 32) and Defendants filed a Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim on August 4, 2025 (Doc. 42).

## LEGAL STANDARD

To intervene as of right, the movant must demonstrate the following: (1) the motion to intervene is timely; (2) a "significantly protectable" interest relating to the property or transaction at issue; (3) the disposition of the action may, as a practical matter, impair or impede the movant's ability to protect its interest; and (4) the existing parties do not adequately represent the movant's interest. *Wilderness Soc'y v. U.S Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc); Fed. R. Civ. P. 24(a)(2). The burden lies with the applicant seeking to intervene. *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006). However "[w]hile an applicant seeking to intervene has the burden to show that these four elements are met, the requirements are broadly interpreted in favor of intervention." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).

To permissively intervene, the movant must demonstrate: (1) the motion is timely; (2) the movant shares a common question of law or fact with the main action; and (3) the movant has an independent basis for jurisdiction. *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998); Fed. R. Civ. P. 24(b). "In exercising

its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Additionally, "judicial economy is a relevant consideration in deciding a motion for permissive intervention." *Venegas v. Skaggs*, 867 F.2d 527, 531 (9th Cir. 1989). "[A] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Wilderness Soc'y.*, 630 F.3d at 1179.

## DISCUSSION

### I.  Sovereign Immunity

As an initial matter, the Court must address Proposed State Intervenors' claim that intervention does not constitute a waiver of sovereign immunity. (Doc. 33 at 8.) Plaintiffs maintain that for this Court to exercise its jurisdiction over the Proposed State Intervenors, the States must be deemed to have voluntarily waived their sovereign immunity. (Doc. 37 at 4, 37 (citing U.S. Const. amend. XI).)

The Eleventh Amendment to the U.S. Constitution generally "bar[s] [] federal jurisdiction over suits" against States. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669 (1999). An individual may sue a State, however, if one of two exceptions is present: (1) "where Congress has authorized such a suit in the exercise of its power to enforce the Fourteenth Amendment"; or (2) "where a State has waived its sovereign immunity by consenting to suit." *Id.* at 670 (internal citation omitted). In the case of the second

exception, the United States Supreme Court "has long recognized that a State's sovereign immunity is a personal privilege which it may waive at its pleasure." *Id.* at 675 (internal quotation and citation omitted). The "test for determining whether a state has waived its immunity from federal-court jurisdiction is a stringent one." *Id*. In general, a federal court "will find a waiver either if the State voluntarily invokes [its] jurisdiction [] or else if the State makes a 'clear declaration' that it intends to submit itself to [the federal court's] jurisdiction." *Id.* at 676 (internal citation omitted).

    Relevant here, waiver of sovereign immunity may occur where a State voluntary enters a suit in federal court. *Regents of the Univ. of N.M. v. Knight*, 421 F.3d 111, 1124 (Fed. Cir. 2003) ("[I]t has long been established that a state waives its Eleventh Amendment immunity when it consents to federal court jurisdiction by voluntarily appearing in federal court.") (citing *Clark v. Barnard*, 108 U.S. 436, 447 (1883) (State's "voluntary appearance" in federal court as an intervenor avoids Eleventh Amendment inquiry); *see also Gunter v. Atl. Coast Line R.R.*, 200 U.S. 273, 284 (1906) ("[W]here a State voluntarily becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibition of the Eleventh Amendment."). Indeed, "[i]t would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the 'Judicial

power of the United States' extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the 'judicial power of the United States' extends to the case at hand." *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002).

Proposed State Intervenors seek to intervene in a lawsuit brought in federal court. Therefore, unless there is something unique about this case, the general principle requiring waiver ought to apply. Relying on *Missouri v. Fiske*, 290 U.S. 18, 25 (1933), *Faulk v. Union Pacific R.R. Co.*, 449 F. App'x 357, 363 (5th Cir. 2011), and, to a lesser degree, *Aqua Log, Inc. v. Lost and Abandoned Pre-Cut Logs and Rafts of Logs*, 584 F. Supp. 2d 1367, 1370–72 (S.D. Ga. 2008), Proposed State Intervenors argue that courts "routinely" permit States to intervene without such a waiver. (Doc. 41 at 4.) In *Fiske*, the Supreme Court concluded that Missouri did not waive its immunity when it intervened solely to protect the state probate court's jurisdiction over a challenged stock, observing that "the only purpose and result of the intervention would be to retain the stock [] in a place where it could be made to respond to the tax claims of the state if those claims were upheld." 290 U.S. at 25. Because "only a temporary impounding was sought, which was in no sense a matter of right, but rather the partakes of grace," the Supreme Court concluded the intervention was too limited to constitute a waiver of Eleventh Amendment immunity. *Id.*

Case 2:25-cv-00054-DLC     Document 46     Filed 08/13/25     Page 7 of 19

Similarly, in *Faulk*, Louisiana intervened to defend the constitutionality of a challenged state law after being summonsed into federal court. 449 F. App'x at 363. Concluding the State did not waive its immunity, the Fifth Circuit reasoned that "Louisiana never voluntary invoked federal court jurisdiction. In addition, Louisiana makes no claims of its own in this case, and merely defends against [plaintiff's] challenge to the constitutionality of [a state law]." *Id*. Finally, in *Aqua Log*, the Southern District of Florida found that because the State appeared only to put the Court on notice of its asserted rights to the property in question, and to challenge the Court's jurisdiction over the matter, the State had neither voluntarily invoked federal court jurisdiction nor made a "clear declaration" that it intended to submit itself to such jurisdiction. 584 F. Supp. 2d at 1372.

Proposed State Intervenors argue that, as in the aforementioned cases, their appearance in federal court will not constitute a waiver of Eleventh Amendment immunity. (Doc. 33 at 8.) Albeit a close question, the Court ultimately agrees with the Proposed State Intervenors. Given the facts presented here, it does not appear the Proposed State Intervenors have made a "clear declaration" of their intent to submit to federal jurisdiction. *Demshki v. Monteith*, 255 F.3d 986, 989 (9th Cir. 2001). On the one hand, the appearance in federal court is—unlike *Faulk*—clearly voluntary, which, in some cases, may lend itself toward a finding of waiver. However, Proposed State Intervenors have expressly reserved their immunity in

7

this matter and did not remove this action to federal court. Moreover, the Court finds the limited purpose for intervention—defending the constitutionality of the challenged Executive Orders as opposed to a unique claim for relief—tips the analysis against a finding of waiver. And finally, Plaintiffs assert claims only against the federal government; because recovery is not sought against the State, it is unlikely Plaintiffs' Complaint will implicate the Eleventh Amendment's protections in the first place. Indeed, the Court notes several instances wherein States intervened to defend in federal court without mention of their immunity. *See e.g., Citizens for Clean Air v. Wheeler*, 2019 WL 3205851 (W.D. Wash. July 16, 2019); *Day v. Apoliona*, 505 F.3d 963 (9th Cir. 2007). Proposed State Intervenors shall therefore retain their Eleventh Amendment immunity.

## II. Intervention as of Right

The Proposed State Intervenors first seek to intervene in this matter as of right, arguing that: (1) their motion is timely; (2) they have significant protectable interest relating to the subject of the action; (3) the disposition of this case will impair or impede their ability to protect those interests; and (4) the existing parties do not adequately represent those interests. (*See* Doc. 33 at 17–22.) The Court will address each prong in turn.

### A. Timeliness

Courts focus on three primary factors when determining whether a motion to

intervene is timely: (1) the stage of the proceedings; (2) the prejudice to the other parties; and (3) the reason for and length of delay. *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016). The "crucial date" is "when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Id.*

Plaintiffs initiated this matter on May 29, 2025 (Doc. 1), Proposed State Intervenors filed their Motion to Intervene on July 8, 2025 (Doc. 32), and Federal Defendants filed their Motion to Dismiss on August 4, 2025 (Doc. 42). The Court has issued no dispositive rulings as the case is still in its early stages. Likely in recognition of these facts, Plaintiffs do not challenge the timeliness of the present Motion. (*See* Doc. 37.) This consideration is therefore easily satisfied.

### B. Significant Protectable Interests and Whether Disposition of this Case Will Impair or Impede those Interests

"Whether an applicant for intervention demonstrates sufficient interest in an actual action is a practical, threshold inquiry. No specific legal or equitable interest need be established." *Citizens for Balanced Use*, 647 F.3d at 897 (citation omitted). "To demonstrate a significant protectable interest, an applicant must establish that the interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." *Id*. "[T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency

and due process." *Wilderness Soc'y*, 630 F.3d at 1179.

Here, Proposed State Intervenors argue they have "significant property and economic interests" at stake, including:

> the use of vast swaths of land, particularly land rich with natural resources, contained within the States; as well as employment of hundreds of thousands of Americans; the economic restoration of struggling communities; the cost of energy; attracting business and employers; tax revenues; and the potential need to reallocate resources, not to mention the potential reality of wasted time and resources spent in furtherance of the Executive Orders.

(Doc. 33 at 6, 20.) With respect to Montana, Proposed State Intervenors specifically argue the State has an interest in its energy sector, in voicing its opinion on the State Constitution, and in how the State universities are operated. (Doc. 33 at 13–14.) The other States, Proposed State Intervenors continue, share the same interests. (Doc. 33 at 14.)

In response, Plaintiffs acknowledge that while the Motion identifies some facts specific to Montana, it fails to allege more than a "litany of vague and conclusory allegations" as to how their claims may affect the other eighteen States and Guam. (Doc. 37 at 2, 8.) Plaintiffs further allege that the Motion fails to identify which specific "swaths of land," "employment" opportunities, "struggling communities," or "resources" are implicated by their lawsuit. (Doc. 37 at 7.) Plaintiffs ask this Court to deny the Motion without prejudice. (Doc. 37 at 2.)

Though the Motion could certainly benefit from more detail, the Court

nonetheless finds that it satisfies the requirements for intervention as of right. *See Wilderness Soc'y*, 630 F.3d at 1179 (the Ninth Circuit applies a "traditionally liberal policy in favor of intervention"). This case involves a challenge to three Executive Orders that, amongst other effects, alters energy efficiency standards for appliances across the United States, (Doc. 1 ¶ 192) and provides exemptions to 68 power plants and grants new oil and gas leases within the boundaries of several Proposed State Intervenors (*Id.* ¶¶ 168, 173–75). The Proposed State Intervenors have a significant protectable interest in their economic activity, employment related to the energy sector, and energy efficiency standards affecting appliances. *See Louisiana v. United States Dep't of Energy*, 90 F.4th 461, 469 (5th Cir. 2024) (holding that Louisiana, Montana, and other States, including five State Intervenors, had standing to challenge rulemaking pertaining to energy efficiency standards for appliances). The Court finds these interests "concrete and related to the underlying subject matter of the action." *City v. Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th Cir. 2010) (internal citation and quotation omitted).

When a proposed intervenor demonstrates a significant protectable interest, courts "have [found] little difficulty concluding that the disposition of this case may, as a practical matter, affect it." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006) (citation omitted). Here, though Plaintiffs' Complaint is largely focused on alleged harms in Montana and, to a lesser extent,

Hawaii, California, Oregon, and Florida, (Doc. 1 ¶¶ 18, 25, 28, 30), Plaintiffs seek a nationwide injunction. (*Id.* ¶ 1.) This request includes a mandate that Defendants rescind all agency-wide directives applying, implementing, and effectuating the challenged Executive Orders. (*Id.* ¶¶ 2–3.) Here, should Plaintiffs prevail in this matter and succeed in enjoining the challenged Executive Orders, Proposed State Intervenors' interest in their States' energy policies, businesses, and employment may, as a practical matter, be impaired.

### C. Whether Existing Parties Adequately Represent the Interests of the Proposed State Intervenors

The burden of showing inadequacy of representation is "minimal" and is satisfied if the applicant demonstrates that the representation of its interests "may be" inadequate. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). In evaluating the adequacy of representation, courts examine three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Id.* The "most important factor" to assess the adequacy of representation is "how the interest compares with the interests of existing parties." *Id.* Where an applicant shares the same ultimate objective as an existing party, a presumption of adequacy of representation arises. *Citizens for Balanced Use*, 647 F.3d at 898. To rebut this

presumption, an applicant must make a "compelling showing" of inadequacy. *Arakaki*, 324 F.3d at 1086.

Proposed State Intervenors' central contention is that their interests are unique, and only they have the "capacity, competency, and incentives" to represent those interests. (Doc. 33 at 24.) Because the Proposed State Intervenors share the same ultimate objective as the Federal Government, they must make a "compelling showing" of inadequacy. The Court finds they have done so here. Specifically, while the Federal Defendants' interests are to those as the American people as a whole, the Proposed State Intervenors will primarily consider the interests and needs of their own State citizens. *See WildEarth Guardians v. Jewell*, 320 F.R.D. 1, 5 (D.D.C. 2017). Moreover, Plaintiffs' sole contention on this issue is that it cannot be evaluated without more specific facts, an argument the Court addressed in Section II-B. (Doc. 37 at 12.) "Any doubt as to whether the existing parties will adequately represent the intervenor should be resolved in favor of intervention." *Issa v. Newsom*, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (citation omitted). Therefore, having satisfied all four criteria, Proposed State Intervenors may intervene as of right in this matter.

### III. Permissive Intervention

The Court further concludes that permissive intervention is warranted in this matter. Plaintiffs do not directly address whether permissive intervention is

appropriate, but instead argue that Proposed State Intervenors fail to demonstrate a sufficient factual basis to intervene. (Doc. 37 at 6, 14.)

Permissive intervention may be granted where an applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "An applicant who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly*, 159 F.3d at 412. "[T]he independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

As noted above, Plaintiffs do not dispute the timeliness of the Motion to Intervene, which was filed at an early stage of this litigation and, as a result, will not prejudice the existing parties nor undermine the efficiency of this litigation. Furthermore, because this is a federal question case and because Proposed State Intervenors bring no new claims, the third element is also satisfied. *See Geithner*, 644 F.3d at 844 ("Where a proposed intervenor in a federal-question case brings no

new claims, the jurisdictional concern drops away."). Therefore, the Court need only address whether Proposed State Intervenors' likely defense of the challenged Executive Orders "shares a common question of law or fact" with the action.

Here, Proposed State Intervenors have demonstrated there are common questions of law and fact between the defenses it intends to assert and Plaintiffs' claims, including the primary question of whether Plaintiffs have standing to bring this suit. While Plaintiffs oppose allowing Proposed State Intervenors to permissively intervene, they do not address this factor. (Doc. 37 at 6, 13.) Because Proposed State Intervenors' defense shares a common issue of law and fact with Plaintiffs' claims, this factor for permissive intervention is also satisfied.

## IV.   Procedural Requirements

Citing to *Beckman Industries v. International Insurance Co.*, 966 F.2d 470, 473 n.1 (9th Cir. 1992), Plaintiffs argue that Proposed State Intervenors' Motion is procedurally defective under Federal Rules of Civil Procedure 24(c). (Doc. 37 at 10.) Rule 24(c) requires, in relevant part, that "[a] person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought." *Beckman Indus., Inc.*, 966 F.2d at 473 n.1. Any failure to attach such a pleading may only be excused if the motion to intervene identifies the basis for intervention with

sufficient specificity. *Id.* at 475. This Court's Local Rules similarly require that "(1) A motion to intervene must include . . . (C) the proposed pleading" and (2) An incomplete motion to intervene may be stricken or denied." L.R. 24.1(b)(1)(C), (b)(2).

Plaintiffs are correct: the Motion to Intervene indeed failed to include a proposed pleading, in violation of this Court's local rules and the Federal Rules of Civil Procedure. (*See* Doc. 32.) However, pursuant to *Beckman Industries*, this Court may deny such a "technical objection" if it were "otherwise apprised of the grounds for the motion." 966 F.2d at 474. Because Proposed State Intervenors provided the Court with the bases for their Motion to Intervene—filing a motion to dismiss—the Court finds intervention appropriate notwithstanding the procedural defects. *Id.*; *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1189 (9th Cir. 2009) (interest in case does not disappear due to failure to comply with Rule 24(c)). At any rate, Proposed State Intervenors have cured any defect by including their proposed motion with the Reply Brief. *See Bank of New York Mellon v. Foreclosure Sales Servs.*, 2017 WL 626360, at *3 (D. Nev. Feb. 15, 2015).

V.      **Limitations Placed on Intervention and Motion to Dismiss**

Plaintiffs ask this Court to impose several limitations in the event intervention is granted, including: (1) order that, by intervening, the Proposed State Intervenors have waived sovereign immunity; (2) limit the Proposed State

16

Intervenors (a) to coordinate and consolidate discovery to avoid duplication and undue burden, (b) to file single, consolidated briefs of no more than 25 pages in the aggregate, and (c) to comply with a staggered briefing schedule set by the Court, where Federal Defendants file first; and (3) order that Proposed State Intervenors not duplicate any arguments made by Federal Defendants. (Doc. 37 at 14–15.) Proposed State Intervenors argue that "fair and prompt resolution of this case does not require imposing restrictions on [their] participation." (Doc. 41 at 17 (quoting *Coal. to Protect Puget Sound Habitat v. U.S. Army Corps of Eng'rs*, 2024 WL 115353, at *2 (W.D. Wash. Jan. 10, 2010).).

The Ninth Circuit recognizes that, "as a general rule, intervenors are permitted to litigate fully once admitted to a suit." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1304 (9th Cir. 1997) (citation omitted). The Court may, however, fashion appropriate conditions or restrictions that are responsive to the requirements of efficient conduct of the proceedings. *Bark v. Northrop*, 2013 WL 6576306, at *7 (D. Or. Dec. 12, 2013) (citing Fed. R. Civ. P. advisory committee's notes to the 1996 Amendment).

In consideration of the above, the Court concludes that Proposed State Intervenors shall coordinate and consolidate discovery to avoid duplication and undue burden on the parties. However, at this point in the litigation, the Court cannot predict whether 25 pages is sufficient; the lawsuit Plaintiffs bring is

17

complex, and it is entirely possible a greater word count may be required. Likewise, because Proposed State Intervenors may offer a different perspective, the Court declines to restrict duplicative arguments, though it does note that the current briefing schedule on the Motions to Dismiss will be staggered given the dates of filing. And finally, as discussed above, Proposed State Intervenors shall retain their Eleventh Amendment immunity.

## CONCLUSION

Accordingly, for the reasons stated above,

IT IS ORDERED that the Motion to Intervene (Doc. 33) is GRANTED. Proposed State Intervenors shall be permitted to intervene in this matter and the case caption shall be amended as reflected above.

IT IS FURTHER ORDERED that State Intervenors shall coordinate and consolidate discovery with Federal Defendants.

IT IS FURTHER ORDERED that State Intervenors shall file their Motion to Dismiss by August 14, 2025. Plaintiffs shall respond to State Intervenors' Motion to Dismiss by August 28, 2025, and State Intervenors shall have 14 days from the filing of Plaintiffs' response to file their optional reply brief.

IT IS FURTHER ORDERED that State Intervenors shall file a response to Plaintiffs' Motion for Preliminary Injunction (Doc. 24) by August 27, 2025.

Plaintiffs shall have 14 days from the filing of State Intervenors' response to their Motion for Preliminary Injunction to file their optional reply brief.

IT IS FURTHER ORDERED that State Intervenors shall file a notice of any expected witness testimony for the September 16, 2025, hearing on or before September 2, 2025. (*See* Doc. 31.)

DATED this 13th day of August, 2025.

_____
Dana L. Christensen, District Judge
United States District Court