Adam R.F. Gustafson
 *Acting Assistant Attorney General*
Robert N. Stander
 *Deputy Assistant Attorney General*
Environment & Natural Resources Div.
United States Department of Justice

Michael S. Sawyer
Erik Van de Stouwe
Natural Resources Section
Miranda Jensen
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044-7611
Tel:   (202) 514-5273
         (202) 305-0247
 (202) 598-3071
E-mail: michael.sawyer@usdoj.gov
            erik.van.de.stouwe@usdoj.gov
            miranda.jensen@usdoj.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| **EVA LIGHTHISER**; *et al.*,<br><br>           Plaintiffs,<br><br>     v.<br><br>**DONALD J. TRUMP**, in his official capacity as President of the United States; *et al.*,<br><br>           Defendants,<br><br>**STATE OF MONTANA**; *et al.*,<br><br>           Defendant-Intervenors. | Case No: CV-25-54-BU-DLC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS** |

# TABLE OF CONTENTS

INTRODUCTION ....................................................................1

ARGUMENT ..........................................................................2

    I.      PLAINTIFFS LACK STANDING ......................................2

          A.      Plaintiffs' Climate Injuries Are Not Redressable ......................2

          B.      The Court Must Reject Plaintiffs' Novel Injury Theories ..........7

          C.      Plaintiffs Fail To Plausibly Allege Traceability For Their Climate Injuries ..........................................................................8

          D.      Plaintiffs' Remaining Standing Theories Fail ...........................9

    II.     PLAINTIFFS' SUBSTANTIVE DUE PROCESS CLAIMS FAIL AS A MATTER OF LAW ......................................................10

          A.      The Due Process Clause Does Not Require Particular Energy Policies ........................................................................10

                1.     Plaintiffs cannot tether their climate goals to enumerated rights ................................................................10

                2.     The challenged EOs do not shock the conscience ..........12

          B.      Plaintiffs Cannot Create Substantive Due Process Rights Out Of State-Created Interests ..................................................13

    III.    PLAINTIFFS' *ULTRA VIRES* CLAIMS FAIL ..................................15

          A.      Plaintiffs' *Ultra Vires* Claims Are Not Justiciable ..................15

                 1.     *NRC v. Texas* bars Plaintiffs' *ultra vires* claims ............15

                2.     Plaintiffs' *ultra vires* claims are not constitutional ........16

           B.      Plaintiffs' *Ultra Vires* Claims Fail As A Matter Of Law .........19

                 1.     Claim 3 ................................................................................19

                2.     Claim 4 ................................................................................21

3.     Claim 5........................................................................22

CONCLUSION ..........................................................................................23

# TABLE OF AUTHORITIES

Page(s)

**Other Authorities**

*Alec L. ex rel. Loortz v. McCarthy*,
   561 F. App'x 7 (D.C. Cir. 2014) ...........................................................................14

*Am. Ass'n of Physicians for Hum. Rts. v. NIH*,
   No. 25-CV-01620, 2025 WL 2377705 (D. Md. Aug. 14, 2025) ........................5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................20

*Axon Enter., Inc. v. Fed. Trade Comm'n*,
   598 U.S. 175 (2023) ..................................................................................... 16, 17

*Bldg. & Constr. Trades Dep't v. Allbaugh*,
   295 F.3d 28 (D.C. Cir. 2002) .............................................................................17

*Brittain v. Hansen*,
   451 F.3d 982 (9th Cir. 2006) .............................................................................13

*California v. Texas*,
   593 U.S. 659 (2021) .........................................................................................4, 5

*Cnty. Of Sacramento v. Lewis*,
   523 U.S. 833 (1998) ...........................................................................................13

*Collins v. City of Harker Heights*,
   503 U.S. 115 (1992) ................................................................... 1, 5, 6, 11, 12

*Dalton v. Specter*,
   511 U.S. 462 (1994) ...........................................................................................17

*Davis v. FEC*,
   554 U.S. 724 (2008) .............................................................................................8

*Dep't of State v. Munoz*,
   602 U.S. 899 (2024) ...........................................................................................10

*Diamond Alternative Energy, LLC v. EPA*,
   145 S. Ct. 2121 (2025) .........................................................................................7

*Dobbs v. Jackson Women's Health Org.*,
   597 U.S. 215 (2022) ...........................................................................................10

*G.B. v. EPA*,
    No. CV 23-10345-MWF, 2024 WL 3009302 (C.D. Cal. May 8, 2024)...............2

*Immigrant Defs. L. Ctr. v. Noem*,
    No. 25-2581, 2025 WL 2080742 (9th Cir. July 18, 2025)....................................5

*Juliana v. United States,*
    339 F. Supp. 3d 1062 (D. Or. 2018)...................................................................1, 2

*Juliana v. United States*,
    947 F.3d 1159 (9th Cir. 2020)................................... 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 18

*Kraushaar v. Flanigan*,
    45 F.3d 1040 (7th Cir. 1995)................................................................................14

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...........................................................................................3, 7

*Nat'l Lime Ass'n v. EPA*,
    233 F.3d 625 (D.C. Cir. 2000) ..............................................................................19

*NIH v. Am. Pub. Health Ass'n*,
    No. 25A103, 2025 WL 2415669 (U.S. Aug. 21, 2025) ..........................................5

*Nuclear Regulatory Commission v. Texas*,
    605 U.S. 665 (2025) ....................................................................................... 15, 16

*Obergefell v. Hodges*,
    576 U.S. 644 (2015) ..............................................................................................14

*Organized Vill. of Kake v. U.S. Dep't of Agric.*,
    795 F.3d 956 (9th Cir. 2015)........................................................................... 19, 20

*Penilla v. City of Huntington Park*,
    115 F.3d 707 (9th Cir. 1997)................................................................................12

*PPL Montana, LLC v. Montana*,
    565 U.S. 576 (2012) ..............................................................................................14

*Rochin v. California*,
    342 U.S. 165 (1952) ..............................................................................................13

*San Francisco v. Trump*,
    897 F.3d 1225 (9th Cir. 2018)..............................................................................18

*Seila Law LLC v. CFPB*,
    591 U.S. 197 (2020) ..............................................................................................17

*Sierra Club v. Trump*,
   929 F.3d 670 (9th Cir. 2019) ...............................................................................16

*Slockish v. U.S. Dep't of Transportation*,
   No. 21-35220, 2021 WL 5507413 (9th Cir. Nov. 24, 2021) .................................4

*Trump v. CASA, Inc.*,
   145 S. Ct. 2540 (2025) ........................................................................................6

*Trump v. Hawaii*,
   585 U.S. 667 (2018) ........................................................................................8, 9

*United States v. Windsor*,
   570 U.S. 744 (2013) ..........................................................................................14

*Utah v. Evans*,
   536 U.S. 452 (2002) ............................................................................................4

*Wash. Env't Council v. Bellon*,
   732 F.3d 1131 (9th Cir. 2013) ..................................................................... 7, 8, 9

*Washington v. Glucksberg*,
   521 U.S. 702 (1997) .................................................................................... 10, 12

*Washington v. Trump*,
   145 F.4th 1013 (9th Cir. 2025) ............................................................................6

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*,
   5 F.4th 997 (9th Cir. 2021) ...............................................................................15

*Wildlife Fed'n v. Haaland*,
   127 F.4th 1 (9th Cir. 2025) .................................................................................3

*Wilkinson v. Torres*,
   610 F.3d 546 (9th Cir. 2010) .............................................................................13

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1952) ..........................................................................................18

**Statutes**

5 U.S.C. § 706 ........................................................................................... 15, 22

15 U.S.C. § 2936 ............................................................................................21

42 U.S.C. § 7607(b) ........................................................................................16

43 U.S.C. § 1349(c)(1) ....................................................................................16

49 U.S.C. § 32909(a)(1)............................................................................16

**Rules**

Fed. R. Civ. P. 8(a)(2)............................................................................22

**Executive Orders**

Executive Order 14154,
   90 Fed. Reg. 8353, 2025 WL 315844 (Jan. 20, 2025) ........................................21

## INTRODUCTION

This latest youth climate suit should be dismissed, like its unsuccessful predecessors. Ninth Circuit precedent requires dismissal for lack of standing. *Juliana v. United States*, 947 F.3d 1159 (9th Cir. 2020), *reversing* 339 F. Supp. 3d 1062 (D. Or. 2018). Plaintiffs' attempts to distinguish *Juliana* cannot be reconciled with the history of that case, where similar plaintiffs requested the same declaratory and injunctive relief to redress indistinguishable climate injuries. Because Plaintiffs cannot demonstrate that recent Supreme Court decisions are even in tension with *Juliana*, the Court should simply apply that precedent and dismiss their claims.

Their claims also fail as a matter of law, as courts routinely reject substantive due process claims to environmental rights. Plaintiffs' attempt to recast their asserted substantive rights to stable climate as mere rights to life or liberty cannot be reconciled with the Supreme Court's unanimous decision in *Collins v. City of Harker Heights*, 503 U.S. 115, 128–29 (1992). The Court should therefore dismiss their claims.

**ARGUMENT**

I.    PLAINTIFFS LACK STANDING

   A. Plaintiffs' Climate Injuries Are Not Redressable.

As the requested declaratory and injunctive relief could not redress the climate injuries asserted in *Juliana*, Plaintiffs' requested declaratory and injunctive relief cannot redress their asserted climate injuries here.

Plaintiffs attempt to distinguish *Juliana* by rewriting the history of that case. Pls.' Opp. 14–17, Dkt. 50. Their declaratory relief allegedly differs by targeting Executive Orders (EOs) that are currently being implemented. *Id.* at 14–15. But the same relief was sought in *Juliana*: "a declaration that the government *is* violating the Constitution," 947 F.3d at 1170 (emphasis added), through, *inter alia*, "specific presidential actions" regarding "coal mining," power plant emissions, fossil fuel pipelines, and the "expedition of environmental reviews and approvals for infrastructure projects," 339 F. Supp. 3d at 1078 (identifying three challenged EOs). Because the Ninth Circuit already held that this declaratory "relief alone is not substantially likely to mitigate" asserted climate injuries, 947 F.3d at 1170, "*Juliana* is on all fours with this action," *G.B. v. EPA*, NO. CV 23-10345-MWF, 2024 WL 3009302, at *3 (C.D. Cal. May 8, 2024).

Nor can Plaintiffs distinguish their requested injunctive relief from *Juliana* by characterizing it as "prohibitory." Pls.' Opp. 16. The *Juliana* plaintiffs also sought a

prohibitory injunction "requiring the government … to cease permitting, authorizing, and subsidizing fossil fuel use" that would "enjoin the Executive from exercising discretionary authority expressly granted by Congress." *Juliana*, 947 F.3d at 1170. Because both that prohibitory injunction and the requested mandatory injunction— requiring the government to develop a remedial "plan subject to judicial approval to draw down harmful emissions"— exceeded "the power of an Article III court," the *Juliana* court dismissed the *entire* case for lack of redressability. *See id.* at 1170–71.

Unable to distinguish *Juliana*, Plaintiffs must instead demonstrate that subsequent Supreme Court decisions are so "fundamentally inconsistent" with *Juliana* that this Ninth Circuit precedent has been implicitly overruled. MTD 10, Dkt. 43. But Plaintiffs do not even attempt to meet this "high standard." *Compare id.*, *with* Pls.' Opp. 17–20.

Plaintiffs instead ask the Court to overturn not only *Juliana*, but also the canonical standing decision *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). *Lujan* recognized that "'procedural rights' are special" because they can be asserted "without meeting all the normal standards for redressability," 504 U.S. at 572 n.7, thus establishing "relaxed" redressability requirements for procedural injury claims, *e.g.*, *Mont. Wildlife Fed'n v. Haaland*, 127 F.4th 1, 35 (9th Cir. 2025) (citation omitted). Plaintiffs disparage that famous redressability distinction between

procedural and substantive claims as "[n]onsense," Pls.' Opp. 18, as they cannot meet normal redressability standards.

Under typical Article III redressability standards applicable to Plaintiffs' substantive claims, they "must show that the relief they seek is both (1) substantially likely to redress their injuries; and (2) within the district court's power to award." *Juliana*, 947 F.3d at 1170 (citation omitted). Plaintiffs' requested relief cannot meet either requirement.

Declaratory "relief alone is not substantially likely to mitigate" Plaintiffs' asserted climate injuries "absent further court action," as "the political branches might conclude … that economic or defense considerations called for continuation of the very programs challenged in this suit." *Id.* at 1170–72. Plaintiffs' contrary citation of *Utah v. Evans*, 536 U.S. 452 (2002), is unavailing, Pls.' Opp. 15, as the plaintiff there also "sought an injunction," 536 U.S. at 460.

Nor is standalone declaratory relief within the Court's power, which cannot "issue what would amount to an advisory opinion without the possibility of any judicial relief." *California v. Texas*, 593 U.S. 659, 673 (2021) (citation modified). Plaintiffs' mischaracterize *California* as being limited to the injury-in-fact requirement. Pls.' Opp. 15 n.4. The Ninth Circuit has rejected Plaintiffs' interpretation: "Declaratory relief must correspond with a separate remedy that will redress Plaintiffs' injuries." *Slockish v. U.S. Dep't of Transportation*, No. 21-35220,

4

2021 WL 5507413, at *2 (9th Cir. Nov. 24, 2021) (citing *California*, 593 U.S. at 672–73).

Plaintiffs' requested injunctive relief similarly fails to meet normal redressability standards. That relief exceeds judicial power because "some questions—even those existential in nature—are the province of the political branches" and weighing the "competing social, political, and economic forces," implicated by Plaintiffs' requested injunction must be done "by the People's 'elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country.'" *Juliana*, 947 F.3d at 1172–73 (quoting *Collins*, 503 U.S. at 128–29).

Plaintiffs nonetheless assert that their requested injunction is "well within the power of an Article III court to issue," citing a curious trio of recent cases. Pls. Opp. 16–17. Two of those cases authorized preliminary relief against agency actions under § 705 of the Administrative Procedure Act (APA),[1] and thus have no relevance to Plaintiffs' non-APA claims. The last case granted States—but not individuals—injunctive relief against the birthright citizenship EO after finding that

---

[1] *Immigrant Defs. L. Ctr. v. Noem*, No. 25-2581, 2025 WL 2080742 (9th Cir. July 18, 2025); *Am. Ass'n of Physicians for Hum. Rts. v. NIH*, No. 25-CV-01620, 2025 WL 2377705 (D. Md. Aug. 14, 2025). The latter of those injunctions was not well within the district court's power. *NIH v. Am. Pub. Health Ass'n*, No. 25A103, 2025 WL 2415669 (U.S. Aug. 21, 2025) (holding that grant termination challenges must be brought in the Court of Federal Claims).

"it contradicts the plain language of the Fourteenth Amendment's grant of citizenship to 'all persons born in the United States and subject to the jurisdiction thereof.'" *Washington v. Trump*, 145 F.4th 1013, 1019 (9th Cir. 2025) (citation omitted). As Plaintiffs are individuals—not sovereigns "entitled to special solicitude in the standing analysis," *Juliana*, 947 F.3d at 1171 n.7 (citation modified)—their request for a universal injunction of the challenged EOs lies outside the traditional authority of Article III courts, which "do not exercise general oversight of the Executive Branch." *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2562 (2025). Nor do Plaintiffs' claims present a textual constitutional dispute; their substantive due process claims ask the Court to weigh "competing social, political, and economic forces" and require the entire Executive Branch to abide by the Court's subjective judgment about how those forces should be balanced. *Juliana*, 947 F.3d at 1172–73 (quoting *Collins*, 503 U.S. at 128–29). There is no precedent authorizing such a sweeping injunction.

Finally, Plaintiffs' requested injunctive relief is not substantially likely to redress their asserted climate injuries. Plaintiffs effectively concede that enjoining the challenged EOs would have no constitutionally meaningful effect on global emissions. *Compare* MTD 16 (annual emissions change by less than 1%), with Pls.' Opp. 13–20 (not disputing calculation). They nonetheless assert that any measure of economic redress suffices to establish standing, Pls.' Opp. 19–20, but that argument

6

fails because Plaintiffs' "economic" injuries all flow from changes in global emissions.[2] Nor may the individual Plaintiffs establish redressability by alleging *some* amelioration of their climate injuries, as they are not sovereigns entitled to special solicitude. *Juliana*, 947 F.3d at 1170 & n.7. Because their requested injunction is not substantially likely to have a cognizable impact on global emissions, they cannot establish redress for downstream economic injuries.

### B. The Court Must Reject Plaintiffs' Novel Injury Theories.

Plaintiffs do not dispute that their lead injury theory—that each additional ton of GHG emissions inflicts Article III injury—would enable standing to challenge the construction of a dam across the country from Plaintiffs. *Compare* MTD 17–19, *with* Pls.' Opp. 4–5. Because that result is "beyond all reason," the Court must reject Plaintiffs' novel additional-ton standing theory. *Lujan*, 504 U.S. at 566; *see also Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1145–46 (9th Cir. 2013) (rejecting argument that "any and all contribution of greenhouse gases" justify standing).

The Court should also dismiss Plaintiffs' injury theories based on ongoing agency reconsideration and improved permitting efficiency. *Compare* MTD 19–20,

---

[2] Plaintiffs misrepresent paragraph 92 of their Complaint as alleging that the challenged "***EOs*** will increase energy costs in Montana," Pls.' Opp. 7 (emphasis added), which is neither what that paragraph alleges nor what the invoked study states. And it is hardly a "commonsense economic inference[]," *Diamond Alternative Energy, LLC v. EPA*, 145 S. Ct. 2121, 2138 (2025), that EOs focused on expanding affordable energy will increase energy costs.

*with* Pls.' Opp. 8. In cherry picking the few instances where agencies had *completed* their reconsideration when this suit began, Pls.' Opp. 8, Plaintiffs do not provide bases for Article III injury from numerous other agency reconsiderations ongoing when the Complaint was filed. *See Davis v. FEC*, 554 U.S. 724, 734 (2008) (jurisdiction must exist "when the suit was filed").

Nor do Plaintiffs successfully defend their efficient-permitting injury theory. They cite no precedent giving them a cognizable interest in government inefficiency. Although Plaintiffs dispute that efficient permitting will be used to unleash low-carbon energy sources like hydropower, geothermal, and nuclear energy, the Court should not credit assertions that contradict the "text" of the challenged EOs. *See Trump v. Hawaii*, 585 U.S. 667, 706 (2018).

### C. Plaintiffs Fail To Plausibly Allege Traceability For Their Climate Injuries.

Ninth Circuit law is clear: to establish traceability, Plaintiffs must allege that the challenged EOs provide "a 'meaningful contribution' to global GHG levels." *Bellon*, 732 F.3d at 1145–46. Plaintiffs' allegations fail to meet that requirement, instead claiming that the challenged EOs will increase baseline annual global emissions less than 1% by 2030. *See* MTD 16. Though not disputing this figure, Plaintiffs decry that "traceability is not a numbers game." Pls.' Opp. 9. The Ninth Circuit has rejected Plaintiffs' position, repeatedly analyzing statistical contributions to global emissions when presented with climate standing theories. *Juliana*, 947 F.3d

at 1169; *Bellon*, 732 F.3d at 1146. Because Plaintiffs' allegations fail to show that the challenged EOs are a "substantial factor" in the scale of global emissions, *Juliana*, 947 F.3d at 1169, the Court should reject their claims for lack of traceability, as no precedent authorizes standing for individuals in such circumstances.

D. Plaintiffs' Remaining Standing Theories Fail.

The challenged EOs indisputably say nothing about climate science or agency reorganization. Plaintiffs nonetheless assert that the challenged EOs might somehow be responsible for agency restructuring or alleged climate science "erasure" based on a hodgepodge of political speeches, budget requests, and agency actions. Pls.' Opp. 12. But Presidential actions are reviewed, if at all, on their "text," not surrounding atmospherics. *Hawaii*, 585 U.S. at 706. To the extent that Plaintiffs believe individual agency actions have improperly cited the challenged EOs to unlawfully "suppress" climate science, they can assert APA claims against the discrete agency actions that caused their injury. But they have not shown that their alleged injuries from climate science "erasure" are traceable to the challenged EOs.

Nor have they alleged cognizable informational injuries by misstating that "Plaintiff Delaney can no longer access the National Climate Assessments [(NCAs)]." *Compare* Pls.' Opp. 6, *with* MTD 42 n.10 (showing NCA still accessible).

Finally, Plaintiffs' localized-pollution injuries, Pls.' Opp. 5–6, cannot support their non-APA claims, *see Juliana*, 947 F.3d at 1167.

## II.    PLAINTIFFS' SUBSTANTIVE DUE PROCESS CLAIMS FAIL AS A MATTER OF LAW.

### A.    The Due Process Clause Does Not Require Particular Energy Policies.

Recognizing that substantive due process has "sometimes led the Court to usurp authority that the Constitution entrusts to the people's elected representatives," the Supreme Court has discouraged using the Due Process Clause as a mechanism for judicial policymaking. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 239–40 (2022).

#### 1.    Plaintiffs cannot tether their climate goals to enumerated rights.

In seeking a substantive due process foundation for their asserted climate interests, Plaintiffs tellingly seek to skip the usual requirements—carefully describing their asserted rights and showing they are "objectively, deeply rooted in this Nation's history and tradition." *Dep't of State v. Munoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). Plaintiffs instead suggest that they can assert generalized life or liberty interests (*e.g.*, "bodily integrity") and jump to strict scrutiny of the challenged actions. Pls.' Opp. 20. That unprecedented theory would transform every federal environmental action into a constitutional dispute.

Unanimous Supreme Court precedent does not permit the due process clause to become such a leviathan. A viable substantive due process claim requires more than the assertion of a right to be "free from unreasonable risks of [bodily] harm." *Collins*, 503 U.S. at 117. Instead, "judicial self-restraint" requires courts to carefully "focus on the allegations in the complaint to determine how petitioner describes the constitutional right at stake and what the [government] allegedly did to deprive . . . that right." *Id.* at 125.

Plaintiffs distinguish *Collins* as a "failure to act case," Pls.' Opp. 22, but that distinction proves the careful-description requirement. *Collins* can be so characterized because the Court required plaintiffs to articulate the asserted right and the associated government deprivation. 503 U.S. at 125. Had that plaintiff been able to assert a generalized freedom "from unreasonable risks of [bodily] harm" and proceed to strict scrutiny—as Plaintiffs attempt to do—*Collins* would have reached a different outcome. *See id.* at 117.

Here, a "fair reading" of Plaintiffs' Complaint, *id.* at 125, demonstrates that their novel constitutional claims are not grounded in recognized, enumerated rights. They assert the right to "a life-sustaining, stable climate system," Compl. ¶ 255, is being infringed by Defendants' "actions that 'unleash' fossil fuel pollution into the air," *id.* ¶ 257. Under *Collins*, that asserted right against harmful airspace conditions must be judged against "the text" and "the history of the Due Process Clause." 503

11

U.S. at 126. Plaintiffs' inability to demonstrate that their asserted right is "objectively, deeply rooted in this Nation's history and tradition," *Glucksberg*, 521 U.S. at 720–21 (citation modified), cannot justify circumventing this requirement. Nor would Plaintiffs prevail if it did, because they do not plausibly allege that the incremental climate risk allegedly at stake will deprive them of their lives or liberty, much less provide any precedent authorizing such a claim.

Plaintiffs' citation to criminal cases concerning the involuntary administration of antipsychotic drugs cannot overcome *Collins*. *See* Pls.' Opp. 21–22. Those cases arise under the unique body of constitutional law applicable to "those who have already been deprived of their liberty." *Collins*, 503 U.S. at 127. Plaintiffs are not in state custody, and they cannot avail themselves of the constitutional frameworks available for prisoners or for individuals subject to the physical control of a police officer or state employee. *See, e.g., Penilla v. City of Huntington Park*, 115 F.3d 707, 710 (9th Cir. 1997) (describing application of the state-created danger doctrine where an officer locked a seriously ill man in his house). Plaintiffs therefore lack a cause of action under the due process clause to challenge federal energy policy.

### 2.    The challenged EOs do not shock the conscience.

Even if Plaintiffs could show that their Constitutional rights were infringed by federal energy policy, they still fail to show that the challenged conduct shocks the conscience. "[T]o establish a constitutional violation based on substantive due

process, [the plaintiff] must show both a deprivation of her liberty and conscience shocking behavior by the government." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006). Plaintiffs are therefore incorrect that the shocks-the-conscience standard "applies only to Plaintiffs' state-created danger claim." Pls.' Opp. 23; *see also Cnty. Of Sacramento v. Lewis*, 523 U.S. 833, 838–40, 849 (1998).

The challenged EOs aim to strengthen American energy production and increase the reliability and affordability of domestic energy supplies. *See* Defs.' PI Opp. 5–7. By focusing on energy affordability and not climate change, these policy goals may offend Plaintiffs' sensibilities, but their aversion does not constitutionalize their policy disagreements. Conscience-shocking conduct is traditionally akin to the "the rack and the screw." *Rochin v. California*, 342 U.S. 165, 172 (1952). While deliberately indifferent "excessive force" "may suffice to shock the conscience," *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010), Plaintiffs have not identified any force from the challenged EOs akin to the shooting at issue in *Wilkinson*. If this energy policy disagreement created a constitutional question, the courts would be tasked with "judicial governance" repugnant to the Constitution. *See Lewis*, 523 U.S. at 865 (Scalia, J., concurring).

>    B. Plaintiffs Cannot Create Substantive Due Process Rights Out Of State-Created Interests.

Plaintiffs cannot leverage their state law rights to force the federal government to adopt a climate-friendly energy policy. "[T]he Supreme Court has never held that

13

such state-created interests constitute a fundamental liberty interest protected under a *substantive* due process theory. Rather, the Court has analyzed state-created liberties under a *procedural* due process theory." *Kraushaar v. Flanigan*, 45 F.3d 1040, 1047 (7th Cir. 1995). Plaintiffs recognize that this "might have been true in 1995" but argue that *United States v. Windsor*, 570 U.S. 744 (2013), changed the law. Pls. Opp. 29. But *Windsor* was an equal protection case; its companion case, *Obergefell v. Hodges*, demonstrates that state law cannot substantively define liberty under the Fifth Amendment. 576 U.S. 644, 680 (2015) (invalidating state laws prohibiting same-sex marriage). Allowing individual states to substantively define liberty for a universal injunction would not only invert the Supremacy Clause; it would also render federalism unworkable should different states substantively define liberty in contrary ways.

Plaintiffs' efforts to use the common law public trust doctrine to control federal energy policy is even further afield. The public trust doctrine is a state common law doctrine concerned principally with "public navigation and fishing rights over tidal lands." *PPL Montana, LLC v. Montana*, 565 U.S. 576, 604 (2012). The Supreme Court's ruling in *PPL Montana* derailed the attempts of the plaintiffs in *Alec L. ex rel. Loortz v. McCarthy*, to create a federal public trust doctrine requiring federal climate change mitigation. 561 F. App'x 7, 8 (D.C. Cir. 2014) (per

14

curiam). Plaintiffs have no grounds to transform a state law doctrine into a constitutional right to certain environmental protections.

III.    PLAINTIFFS' *ULTRA VIRES* CLAIMS FAIL.

      A.      Plaintiffs' Ultra Vires Claims Are Not Justiciable.

          1.  *NRC v. Texas* bars Plaintiffs' *ultra vires* claims.

The Supreme Court's decision in *Nuclear Regulatory Commission v. Texas*, 605 U.S. 665 (2025) (*NRC*), squarely forecloses Plaintiffs' *ultra vires* claims. In that case, which Plaintiffs ignore, Texas brought a nonstatutory cause of action to challenge executive action as exceeding statutory authority. The Supreme Court rejected this theory and held that "[u]ltra vires review" is "unavailable" where "a statutory review scheme provides aggrieved persons with a meaningful and adequate opportunity for judicial review." *Id*. at 681 (citation modified).

*NRC* controls this case. Like Texas, Plaintiffs advance an *ultra vires* theory that the Executive has exceeded its statutory authority. *See* Pls.' Opp. 31 ("the EOs directly conflict with statutory law"). And as in *NRC*, there are other statutory review schemes that either provide an adequate opportunity for judicial review or foreclose judicial review. The APA provides an avenue for judicial review of final agency actions and unlawfully delayed actions, 5 U.S.C. § 706, but bars programmatic challenges or challenges to non-final actions, *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1012 (9th Cir. 2021). And Congress

has allocated exclusive appellate jurisdiction over the numerous agency actions Plaintiffs prematurely challenge. *See, e.g.*, 42 U.S.C. § 7607(b); 49 U.S.C. § 32909(a)(1); 43 U.S.C. § 1349(c)(1). NRC does not permit *ultra vires* review to becomes an "easy end-run" around these statutory review provisions, each of which contain their own congressionally enacted limitations, parameters, and venue provisions. *NRC*, 605 U.S. at 681.

        2.    Plaintiffs' *ultra vires* claims are not constitutional.

Nor do Plaintiffs advance constitutional *ultra vires* claims. They do not dispute the absence of a relevant cause of action under the Take Care Clause, the Presentment Clause, or the major questions doctrine. *See* MTD 25–26. Plaintiffs instead argue that since Defendants have no statutory authority to issue the challenged EOs, "they acted in violation of constitutional separation of powers principles." Pls.' Opp. 33 (citing *Sierra Club v. Trump*, 929 F.3d 670, 696–97 (9th Cir. 2019)). But Plaintiffs have failed to engage with the critical distinction between *Sierra* Club and this case: the plaintiffs in *Sierra Club* alleged that reprogramming congressionally-allocated funds violated the Appropriations Clause. 929 F.3d at 694 (citing U.S. Const. art. I, § 9, cl. 7). Because Plaintiffs cannot identify any similar specific constitutional prohibition against the challenged EOs,[3] their claims are not

---

[3] Plaintiffs' new argument about "an 'unconstitutionally structured decisionmaking process'" does not suffice. *See* Pls.' Opp. 33 (quoting *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 195 (2023)). *Axon* concerned the structure of enforcement

constitutional in nature. *See Dalton v. Specter*, 511 U.S. 462, 473–74 (1994); *Nat'l Treasury Emps. Union v. Vought*, No. 25-5091, 2025 WL 2371608, at *20 (D.C. Cir. Aug. 15, 2025) ("claims alleging nothing more than executive actions in contravention of statutes" are not "constitutional claims").[4]

The President, as the Chief Executive and "the most democratic and politically accountable official in Government," is entitled to supervise the conduct of federal agencies and direct their policy, *Seila Law LLC v. CFPB*, 591 U.S. 197, 224 (2020), by "guid[ing] their construction of the statutes under which they act in order to secure that unitary and uniform execution of the law[.]" *Bldg. & Constr. Trades Dep't v. Allbaugh*, 295 F.3d 28, 32 (D.C. Cir. 2002) (citation omitted). Thus, where, as here, Congress has enacted statutes that charge federal agencies with regulating various aspects of the energy sector, the President has clear authority to "supervise and guide" the implementation of those statutes to ensure the law is executed in a "unitary and uniform" way. *Allbaugh*, 295 F.3d at 32. That is precisely what the EOs do. *See* MTD 36–38; Pls.' Opp. 35 (acknowledging that "[t]he President's orders … reflect his policy preference").

---

adjudications in multimember commission agencies, 598 U.S. at 192, a wholly dissimilar posture from this case, which challenges the content of EOs, not the structure of the Executive Branch.

[4] Plaintiffs' solely constitutional challenge to EO 14156 likewise fails. *See* Pls.' Opp. 43–45.

17

Plaintiffs' reliance on *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), is misplaced. In that case, the President, relying exclusively on his constitutional authority as Chief Executive and Commander in Chief, ordered the Secretary of Commerce to take over private steel mills. *Id.* Congress had not authorized the President or Secretary of Commerce to do so, *id.* at 585–87, and the Supreme Court concluded that the Constitution did not supply the President with authority for his seizure order, *id.* at 589. By contrast here, the President's EOs are not creating law, but setting policy to guide the implementation of laws that Congress already enacted. Those statutes authorize federal agencies to take various actions related to the energy sector, *e.g.*, *Juliana*, 947 F.3d at 1170 (citing 30 U.S.C. § 201), and the President must supervise the implementation of those laws to fulfill his constitutional duties. The EOs instruct federal agencies to take action consistent with existing law. *See* MTD 37–38; *contra* Pls.' Opp. 36. Because the EOs do not otherwise "unambiguously command[] action" *inconsistent* with the law, there is no reason for the Court to discredit their savings clauses. MTD 37–38 (quoting *San Francisco v. Trump*, 897 F.3d 1225, 1233–34, 1240 (9th Cir. 2018); *contra* Pls.' Opp. 46.

18

B.  Plaintiffs' *Ultra Vires* Claims Fail As A Matter Of Law.

    1.  Claim 3

Plaintiffs acknowledge that the U.S. Environmental Protection Agency (EPA) has authority to regulate various forms of air pollution. Compl. ¶¶ 154, 282–286, 289–91. These regulatory programs are complex and involve numerous technical and policy judgments. *See, e.g.*, *Nat'l Lime Ass'n v. EPA*, 233 F.3d 625, 628–29 (D.C. Cir. 2000) (discussing generally EPA's responsibilities when setting standards for hazardous air pollutants for major sources of such pollutants under 42 U.S.C. § 7412(d)). And as Defendants have discussed, where EPA has authority to take an action, it has the authority to reconsider it. *See* Defs.' PI Opp. 38–40. That reconsideration on its own has no effect on existing regulations. *Contra* Compl. ¶ 154. EPA could take different final actions (or none at all) as a result of its reconsideration process. And the Court cannot enjoin the agency from lawfully reviewing its prior action. *See* Defs.' PI Opp. 39.

Plaintiffs complain that, in announcing a regulatory agenda for air pollution that Plaintiffs dislike, EPA lacks authority to proceed with it. But that EPA's reconsideration may be related to energy priorities they disfavor is of no relevance to the Agency's ability to reconsider its actions. Indeed, it is not uncommon for agencies to reconsider their actions taken during prior administrations for consistency with the new administration's policy preferences. *See Organized Vill. of*

*Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 968 (9th Cir. 2015) (explaining that "[e]lections have policy consequences" and an agency is "entitled" to weigh concerns differently after a change in presidential administrations, "even on precisely the same administrative record"). Plaintiffs can submit their views on a proposed regulation, and Plaintiffs can challenge any allegedly unlawful final action pursuant to the relevant judicial review provisions. *See* Defs.' PI Opp. 27–32, 39–40. In sum, EPA's reconsideration of its prior actions is not in itself unlawful.

Despite Plaintiffs' insistence that they plead sufficient facts to support their eliminating-scientific-capacity arguments, they do little in their Opposition to clarify how the challenged actions violate the law. Pls.' Opp. 37–38. The single sentence they devote to explaining the allegations also makes no effort to explain how these actions relate to the challenged EOs, which make no mention of "climate science," "eliminating scientific capacity," or any of the specific cuts they cite. *Id.* Their bare allegations cannot pass the basic pleading requirements of Rule 8(a) to show that Plaintiffs are entitled to relief. *See* MTD 40-41; *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

Plaintiffs have thus failed to state plausible *ultra vires* claims against EPA.

2.      Claim 4.

Claim 4 likewise fails to state a claim. Plaintiffs' attempt to tie the alleged cancellation of NCA work to the challenged EOs fails because Plaintiffs mischaracterize EO 14154. *See* Pls.' Opp. 39–41. Contrary to Plaintiffs' telling, that EO does not adopt a "fossil-fuel-promoting policy," *id.*; it instead embraces "an abundant supply of reliable energy," including many non-fossil, low-carbon domestic energy sources, like "hydropower," "nuclear energy" and "rare earth minerals" required to build Plaintiffs' preferred energy technologies. 90 Fed. Reg. 8353–54. Plaintiffs have thus not plausibly alleged that the challenged EOs caused the alleged NCA cancellation.[5]

Even if they had, claim 4 must still be dismissed, as the next scientific assessment is not due until at least late 2027. MTD 42. In claiming that they "need not wait for the NCA to lapse" before obtaining relief, Plaintiffs cite cases dealing with inevitable, rather than speculative, injury. *See* Pls.' Opp. 41. Here, by contrast, Plaintiffs have provided no plausible allegations that Defendants will necessarily fail to produce a quadrennial scientific assessment that complies with 15 U.S.C. § 2936.

Even had Plaintiffs shown that this statutory deadline would inevitably be missed, claim 4 must still be dismissed as it is not a viable *ultra vires* claim under

---

[5] Nor have Plaintiffs alleged that NCA work was funded by sources paused in EO 14154.

*NRC.* Plaintiffs do not dispute that they have adequate statutory review opportunities to compel "unlawfully withheld or unreasonably delayed" agency action. 5 U.S.C. § 706(1); MTD 41. Because Plaintiffs have not alleged why such statutory review is inadequate, claim 4 must be dismissed.

       3.     Claim 5.

Claim 5 also fails to state a viable claim. Plaintiffs fail to connect their motley of "climate science" challenges to the challenged EOs as opposed to other unchallenged executive actions. *See supra* 19–20; MTD 42–43. Plaintiffs respond that it is *Defendants'* obligation to show that the challenged actions are *not* connected to the challenged EOs. Pls.' Opp. 42. But it is Plaintiffs, not Defendants, who are charged with alleging plausible claims for relief in their Complaint. And in failing to plausibly allege that the relief requested—enjoining the three challenged EOs— would redress the harm, they have not pled a valid claim. *See supra* 9; Fed. R. Civ. P. 8(a)(2). Plaintiffs thus cannot fall back on the argument that even if not authorized by the challenged EOs, "any executive branch conduct exercising authority not granted by the Constitution or Congress is ultra vires." Pls.' Opp. 42. That sweeping statement does not provide adequate notice of their claims and has no connection to the relief requested in the Complaint.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss and dismiss Plaintiffs' claims in their entirety.

Respectfully submitted on this 25th day of August, 2025.

ADAM R. F. GUSTAFSON
Acting Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice


*/s/ Michael S. Sawyer*
Michael S. Sawyer
Erik Van de Stouwe
Natural Resources Section
Miranda Jensen
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 514-5273 (Sawyer)
Tel: (202) 305-0247 (Van de Stouwe)
Tel: (202) 598-3071 (Jensen)
michael.sawyer@usdoj.gov
erick.van.de.stouwe@usdoj.gov
miranda.jensen@usdoj.gov

*Attorneys for Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(d)(2)(E), I certify that the foregoing brief has a word count of 4,984 words, excluding the portions exempted by L.R. 7.1(d)(2)(E) and the Table of Abbreviations.

*/s/ Michael S. Sawyer*

Michael S. Sawyer