Roger Sullivan
McGARVEY LAW
345 1st Avenue East
Kalispell, MT 59901
(406) 752-5566
rsullivan@mcgarveylaw.com

Philip L. Gregory*
GREGORY LAW GROUP
1250 Godetia Drive
Redwood City, CA 94062
(650) 278-2957
pgregory@gregorylawgroup.com

Julia A. Olson*
Andrea K. Rodgers*
Nathan Bellinger*
OUR CHILDREN'S TRUST
1216 Lincoln St.
Eugene, OR 97401
(415) 786-4825
julia@ourchildrenstrust.org
andrea@ourchildrenstrust.org
nate@ourchildrenstrust.org

Daniel C. Snyder*
Haley Nicholson*
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600
dsnyder@publicjustice.net
hnicholson@publicjustice.net

*Attorneys for Plaintiffs*
*\*Admitted pro hac vice*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION**

| | |
|---|---|
| **EVA LIGHTHISER**; et al.<br>      Plaintiffs,<br><br>v.<br><br>**DONALD J. TRUMP**, in his official capacity as President of the United States; et al.<br>      Defendants,<br><br>**STATE OF MONTANA**; et al.<br>      Defendant-Intervenors. | Case No: CV-25-54-BU-DLC<br><br>**REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

## I.  INTRODUCTION

Defendants' ultra vires Executive Orders ("EOs") violate Plaintiffs' fundamental rights to life and liberty. Absent a preliminary injunction, those violations will continue and worsen as fossil fuels are "unleashed," officials are robbed of critical science, and renewable energy is kneecapped. Intervenors' arguments to the contrary rely on declarations filed by nonparties in unrelated matters predating the EOs. *See* Docs. 54-1 to 54-5. Such haphazard unsworn submissions in this case do nothing to rebut the testimony of Plaintiffs' expert witnesses who thoroughly demonstrate how the EOs cause irreparable harm to Plaintiffs and the public. Article III empowers this Court to declare Defendants' EOs unconstitutional and to enjoin their ongoing violation of Plaintiffs' constitutional rights. Plaintiffs' requested preliminary injunction is equitable, in the public interest, and should be granted.

## II.  ARGUMENT

### A.  Plaintiffs Have Standing.

Intervenors challenge only causation and redressability, repeating arguments they made previously in their Motion to Dismiss. These arguments have already been briefed, and Plaintiffs incorporate their full responses by reference. Doc. 55.

1.  **Federal Defendants' Challenged Conduct Is Fairly Traceable to Plaintiffs' Injuries.**

The causal chain Plaintiffs allege is not "too attenuated," as Intervenors assert, Doc. 54 at 4. The EOs explicitly "unleash" more fossil fuels and block renewable energy. Additional fossil fuel pollution that will result from the EOs harms Plaintiffs by increasing the dangers they face and threatening even worse imminent, future injuries. McLean ¶¶27-28, 36; Byron ¶¶14, 18-43; Running ¶¶17, 28, 59; Balmes ¶¶17, 20, 24, 28, 32, 37; Stiglitz ¶¶11, 14, 21, 26-27, 40. Defendants and third parties will predictably increase their GHG emissions in direct response to the EOs. Jenkins ¶¶18, 21; Jenkins Suppl. ¶¶2, 5-6; Erickson ¶¶13-19; Erickson Suppl. ¶¶16-19; Balmes ¶20. Indeed, the EOs have already increased fossil fuel pollution, suppressed renewable substitutes for fossil fuels, and are causing agencies to rescind pollution controls. Hughes ¶¶32-37, 54; Podesta ¶¶18-37; Olson 2dSuppl. ¶3. Therefore, the source of Plaintiffs' injuries and increased risk of imminent harm is not "independent actions" of third parties, Doc. 54 at 5, but Defendants' unlawful EOs, whose "entire purpose" is to increase fossil fuels. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011); *see also Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019); *Diamond Alt. Energy v. EPA*, 145 S. Ct. 2121, 2134-37 (2025).

Nor is it "highly speculative" whether Plaintiffs' injuries are traceable to Defendants' dismantling of climate science. Doc. 54 at 6. "Undermining climate science is critical to the EOs' objective of promoting fossil fuels at the expense of

2

renewable substitutes and Plaintiffs' health and well-being." Podesta ¶¶19, 18-30; McLean ¶¶16-17. Intervenors do not dispute that the scrubbing of climate science endangers Plaintiffs' physical health and safety by removing models that enable warning systems, evaluate risk, and prepare communities for climate change. Podesta ¶41; MacCracken ¶¶12, 16, 24-26; Jonesi ¶14; Di Liberto ¶¶17, 20-23; McLean ¶¶15, 18-19, 25-30, 32; Byron ¶¶37-40; Balmes ¶33. Intervenors also do not contest that Defendants' conduct eliminates career and educational opportunities for Plaintiffs. Joseph ¶¶16-19; Delaney ¶¶14-17. Finally, since Plaintiffs filed their Motion, Defendants have taken efforts to misrepresent the consensus climate science by concocting a fictitious justification for the EOs' directives to reverse regulatory mechanisms that limit emissions, like the Endangerment Finding. Podesta ¶¶21-24, 26-29.

Plaintiffs need not pinpoint the specific molecules of GHG emissions from Defendants' conduct that cause Plaintiffs' harms. Even the case Intervenors rely on, *Washington Environmental Council v. Bellon*, acknowledges as much. 732 F.3d 1131, 1142-43 (9th Cir. 2013). Moreover, *Bellon* is distinguishable in several respects. There, "the record show[ed] no evidentiary support establishing this causal nexus," 732 F.3d at 1144, whereas here, Plaintiffs' experts have demonstrated the factual causal nexus. *See* Doc. 55 at 12-14; Doc. 38 at 5 n.2; Doc. 50 at 9-13; *See*

3

Docs. 25-6, 25-11, 25-20, 25-24. Neither Intervenors nor Defendants has rebutted the discernible chain of causation with any expert testimony.

### 2. Plaintiffs' Requested Relief Would Partially Redress Their Injuries.

Plaintiffs do not ask the Court to redress pre-existing injuries. This lawsuit challenges the exacerbation of Plaintiffs' ongoing injuries, a diminished chance to alleviate ongoing harm, and additional climate- and health-related injuries that are significantly likely to occur from the EOs. *See, e.g.*, Byron ¶¶14-29; Balmes ¶28; Jacobson ¶¶24-27, 30-35; Stiglitz ¶¶14-34. Intervenors cite nothing to the contrary. Plaintiffs also face entirely new injuries as Defendants dismantle climate science research programs and the scientific integrity underlying regulations limiting GHG pollution, which warn Plaintiffs of impending harm and inform policies they rely on at the local, state, and national levels. Podesta ¶¶25-29.

A declaratory judgment that removes even one legal barrier to a plaintiff's real-world redress is sufficient to establish redressability. *Gutierrez v. Saenz*, 145. S. Ct. 2258, 2266-68 (2025) (eliminating the unlawful justification for the invasion of a liberty interest in access to scientific DNA evidence changes the legal status of the parties relative to each other); *Pharm. Rsch. & Manufacturers of Am. v. StolfI*, No. 24-1570, 2025 WL 2448851, at *21 (9th Cir. Aug. 26, 2025) ("A declaratory judgment in PhRMA's favor would redress manufacturers' injuries by making a 'definitive determination of the legal rights of the parties.'"). Here, a declaration

rejecting the legal basis for Defendants' "unleashing" of fossil fuels, blocking renewable energy, and dismantling climate science research is similarly sufficient for redressability, even if other barriers to ameliorating Plaintiffs' injuries remain. *See Gutierrez*, 145. S. Ct. at 2266-68. Enjoining the EOs would predictably pause their intended effect and prevent some of Plaintiffs' injuries. *See* Stiglitz ¶44; Jenkins Suppl. ¶5; ¶¶23, 25; Podesta ¶¶27, 33, 36-37, 41. Plaintiffs have thus pleaded "a predictable chain of events that would likely result from judicial relief and redress the plaintiff's injury." *Diamond*, 145 S. Ct. at 2139.

Finally, the global nature of climate change does not negate redressability. A "reduction in domestic emissions would slow the pace of global emissions increases, no matter what happens elsewhere." *Massachusetts v. EPA*, 549 U.S. 497, 526 (2007); *see* Doc. 55 at 15. It is sufficient to "slow or reduce" harm, *Massachusetts*, 549 U.S. at 525, or to "minimize" risk. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 155 (2010). Here, this Court can "minimize" the risk and "reduce" the harms to Plaintiffs by granting Plaintiffs' requested relief. An injunction stopping the dismantling of science would also offer immediate relief and preserve the foundational research that Plaintiffs utilize, study, and depend upon.

> **B.** **The Balance of the Equities and Public Interest Weigh in Favor of Injunctive Relief.**

Intervenors only present arguments on the balance of the equities and the public interest, and "have not addressed the merits of Plaintiffs' claims." Doc. 54 at

5

3 n.1. A preliminary injunction is in the public interest because it would stop ongoing unconstitutional conduct, prevent additional harms to public health and the economy, and stop the ongoing disappearance of climate science on which the public depends. *See* Doc. 25 at 45-46; *see also* Stiglitz ¶44; Jenkins Suppl. ¶5; Hughes ¶¶45-52; Podesta ¶41; *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc) ("it is always in the public interest to prevent the violation of a party's constitutional rights") (citations omitted). Intervenors ignore many of Plaintiffs' public interest arguments while raising unfounded concerns about harm an injunction would allegedly cause.

### 1. Enjoining the EOs will Benefit the Economy, not Harm it.

Intervenors' arguments on economic harm ignore and predate Plaintiffs' declarations and fail to demonstrate any genuine threat from an injunction. Enjoining the EOs would not harm state economies, reduce revenues, threaten grid reliability, or impose higher electricity costs on consumers. Jenkins ¶¶10, 21-22; Jacobson ¶¶20, 25-27. In fact, the opposite is true. *See id.*; Hughes ¶¶38-52. Even if fossil fuel companies in certain Intervenor states could show economic harm, that does not outweigh the irreparable harm to Plaintiffs' lives and public health that will ensue if the EOs are not enjoined.

Intervenors rely heavily on testimony from unrelated cases from before this Administration even took office, speculating that closing Colstrip would eliminate

6

jobs, cost Montana households income, and result in lost tax revenue. The individuals who wrote those declarations did not provide testimony in this action, pursuant to 28 U.S.C. § 1746, based on the facts of this case. Thus, those declarations should not be afforded any evidentiary weight.

Moreover, Intervenors' argument ignores key facts. The third-party declarations do not dispute that extending the operational life of the Colstrip plant will result in substantial increases of GHG emissions, every ton of which detrimentally impacts Plaintiffs and the public. Erickson ¶¶12-13; Jenkins ¶17; Running ¶28; Balmes ¶4. Intervenors also ignore that "[t]he pollution from Colstrip alone is estimated to be responsible for 48 deaths every year." Byron ¶17. The extension of Colstrip's life worsens hazardous air pollutants, every ton of which increases the public's risk of death. *Id.* Intervenors completely fail to grapple with these uncontested health effects from the continued operation of Colstrip. Intervenors also do not compare the speculative loss of jobs in the coal industry to the loss of jobs in the renewable energy industry, including in Montana. *See* Hughes ¶46; *id.* ¶¶47-52.

Additionally, Intervenors do not dispute Plaintiffs' declarations detailing the economic harm to the public if the EOs are not enjoined. *See, e.g.*, Jenkins ¶10 (EOs will "raise US energy costs by more than $8 billion annually by 2035 ... an average household will pay $230 dollars more per year" in energy bills); Stiglitz ¶¶18, 22;

7

Jacobson ¶¶25-26; *id.* ¶27 ("Unleashing fossil fuels costs everyone more on energy bills, in lives lost, in illnesses, and in health costs, before even accounting for climate change damages."); Heal ¶¶9, 12-13; Hughes ¶¶45–52. Intervenors also ignore the uncontroverted findings in *Held v. Montana* that

> converting to wind, water, and solar energy would reduce annual total energy costs for Montanans from $9.1 to $2.8 billion per year, or by $6.3 billion per year (69.6% savings). [MJ-39]. The total energy, health, plus climate cost savings, therefore, will be a combined $29 billion per year (decreasing from $32 to 2.8 billion per year), or by 91%.

Doc. 25-6 Ex. B; *aff'd* 2024 MT 312. Moreover, Intervenors do not dispute that Defendants' actions will decrease federal revenue by trillions of dollars. Stiglitz ¶22. Intervenors tout the investment in fossil fuels while ignoring the lost economic investment in renewables. Jenkins ¶13 ($522 billion at stake if EOs are implemented); Hughes ¶¶45-52; Olson 2dSuppl. ¶3. Intervenors do not dispute that Defendants' actions will increase the costs to human health and our healthcare system by billions of dollars. Stiglitz ¶¶25, 28; *see also* Balmes ¶30; Running ¶¶51-53; Byron ¶¶34-36. Finally, Intervenors do not dispute that the federal government has previously weighed all of these costs and benefits and determined, based on rigorous scientific evidence, that controlling pollution from fossil fuels provides an enormous cost-benefit to society. Podesta ¶¶11-15, 17, 19, 31, 33-34, 41.

Intervenors' cases on economic harm are distinguishable. In some cases, the balance of equities tipped against an injunction based on a combination of economic

stakes *in addition to* safety and environmental benefits of the challenged conduct. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010) ("[T]he district court did not clearly err in finding that the economic stakes, in combination with the safety concerns and reforestation efforts, outweighed any harm to environmental interests."); *see also Native Ecosystems Council v. Webber*, No. CV 25-25-M-DLC, 2025 WL 1643100, at *7 (D. Mont. June 10, 2025) ("The Court finds that the mitigation of widescale tree mortality and the promotion of a more healthy, desirable forest, combined with the economic benefits to the local community outweigh any public interest in maintaining the Project area's current state."). Here, in contrast, Intervenors do not proffer evidence of *any* environmental or safety benefits that would occur if the EOs remain in place. Nor could they. Byron ¶21 ("Each action Defendants take to extend or expand the burning or extraction of fossil fuels ... causes additional harms to the health and safety of Plaintiffs"); McLean ¶¶11, 36; Balbus ¶17; Stiglitz ¶14.

      The other cases Intervenors cite are similarly distinguishable because the plaintiffs in those cases did not adequately show that environmental harm would occur in the absence of a preliminary injunction. *Alaska Survival v. Surface Transp. Bd.*, 704 F.3d 615, 616 (9th Cir. 2012) (comparing nonexistent environmental harm to plaintiffs with millions of dollars of increased costs); *Friends of the Wild Swan v. Weber*, 955 F. Supp. 2d 1191, 1195-96 (D. Mont. 2013), *aff'd* 767 F.3d 936 (9th Cir.

9

2014) (comparing restoration benefits and economic investment in the challenged conduct with the fact that plaintiffs did not demonstrate a severe environmental threat). That is plainly not the case here. *See, e.g.*, Running ¶¶12-19, 28; Whitlock ¶13; Byron ¶¶17, 21.

Intervenors' grid reliability cases are also distinguishable. Unlike *Sierra Club v. Georgia Power Co.*, 180 F.3d 1309, 1311 (11th Cir. 1999), here there is no credible indication that enjoining the EOs will impede "a steady supply of electricity ... especially in the form of air conditioning to the elderly, hospitals and day care centers." To the contrary, Plaintiffs' uncontested declarations demonstrate that the EOs harm a steady supply of energy by blocking wind and solar. *See, e.g.*, Jacobson ¶¶9, 12, 17, 21, 40; Hughes ¶¶38-44. Intervenors fail to contest Plaintiffs' declarations showing the EOs will impede the proper functioning of the healthcare system and endanger vulnerable populations. *See, e.g.*, Byron ¶20; Balmes ¶22; Stiglitz ¶¶22, 25; Balbus ¶¶17-19. *Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc.*, is also inapposite. 805 F.2d 351, 357 (10th Cir. 1986). There, the evidence demonstrated that issuing an injunction would cause individuals to "lose their source of electric power." *Id.* Here, Intervenors do not credibly demonstrate that individuals will "lose their source of electric power" if the EOs are enjoined. If anything, the EOs make it likely that there will be adverse energy consequences to the public by blocking the development of the cheapest, renewable,

and safest forms of energy today—wind and solar. Stiglitz ¶¶50-51; Heal ¶¶7, 11; Hughes ¶¶38-44. Additionally, the consequences of not enjoining the EOs are much more severe than the consequences at issue in *Tri-State*. *See, e.g.*, Byron ¶18; Balmes ¶4; Hughes ¶54.

In sum, Intervenors ask this Court to accept their incomplete valuation of the potential economic impact of enjoining the fossil fuels being unleashed, based on witnesses not sworn before this Court who have never reviewed these EOs or Plaintiffs' evidence, and blindly accept that purported economic impact to one industry is more important than the value of these young people's lives. The Court should decline to do so. Economic harm, even when presented with reliable evidence, does not outweigh costs to human health and lives. *See Slidewaters LLC v. Washington Dep't of Lab. & Indus.*, No. 2:20-CV-0210-TOR, 2020 WL 3130295, at *6 (E.D. Wash. June 12, 2020). Moreover, the public interest in aiding a local economy and preventing job loss does "not outweigh the public interests that will be served" by "preserving nature and avoiding irreparable environmental injury." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138-39 (9th Cir. 2011). Thus, the balance of hardships and public interest tip sharply in favor of an injunction.

### 2. Plaintiffs' Requested Relief Does Not Raise Separation of Powers Concerns.

Intervenors' separation of powers argument hinges on an interpretation that *Juliana v. United States* is the "same" as this case. But as Plaintiffs have already

11

detailed, *Juliana* is readily distinguishable. *See* Doc. 38 at 3; Podesta ¶¶38-40. "[T]he *central issue*" before the Ninth Circuit in *Juliana* was whether "an Article III court can provide the plaintiffs ... an order requiring the government to develop a plan to phase out fossil fuel emissions and draw down excess atmospheric $CO_2$." 947 F.3d 1159, 1164-65 (9th Cir. 2020) (emphasis added). Here, Plaintiffs do not seek a remedial plan subject to continuing court oversight and approval, but rather an injunction preventing affirmative implementation of three discrete EOs. This traditional prohibitory injunctive relief is materially distinct from *Juliana* and well within the power of this Court to issue. *See, e.g.*, *Washington v. Trump*, 145 F.4th 1013, 1037 (9th Cir. 2025) (affirming district court's motion for preliminary injunction against birthright citizenship EOs); *see also Doe #1 v. Trump*, 957 F.3d 1050, 1070 (9th Cir. 2020).

Beyond *Juliana*, Intervenors do not apply their liberty concerns to the instant case *at all*. Intervenors turn upside down the purpose of diffusing power. The Constitution "diffuses power the better to preserve liberty" "of all the people," not the Executive. *Collins v. Yellen*, 594 U.S. 220, 245 (2021) (internal citations and quotations omitted).

### 3. Intervenors Do Not Contest Plaintiffs' Argument that an Injunction Is in the Public Interest.

Without evidence, Intervenors briefly attempt to dispute the fact that "it is in all Americans' interest to substitute the development and combustion of fossil fuel

12

with renewable energy." Doc. 54 at 21-22. But Intervenors rely exclusively on *Juliana* for this proposition. As discussed above, *Juliana*'s redressability holding is distinguishable. *See also* Doc. 38 at 3.

Intervenors' reliance on *Western Watersheds Project v. Salazar*, 692 F.3d 921 (9th Cir. 2012), is also misplaced. There, the plaintiff sought a preliminary injunction against the approval process for a solar concentrating thermal power plant. 2011 WL 13124018, at *1 (C.D. Cal. Aug. 10, 2011). The plaintiff's "sole response" to the purpose of the project being in the public interest was that "rooftop photovoltaic energy would be more cost efficient." *Id.* at *21; *W. Watersheds Project*, 692 F.3d at 923 (rejecting plaintiff's public interest argument). Plaintiffs here are not arguing that one type of renewable energy is more cost-efficient, as in *Salazar*. Instead, Plaintiffs allege the wholesale "unleashing" of fossil fuels and related blocking of renewable energy harms them and the public in numerous ways. *See generally* Doc. 25.

Intervenors' questions about how various groups may benefit from Plaintiffs' requested injunction ignore the content of Plaintiffs' declarations and once again rely on distinguishable legal authority. As Plaintiffs' declarations show, "thousands of federal employees" and "scientists and researchers" would benefit from an invalidation of the EOs that triggered the dismantling and scrubbing of climate science. *See, e.g.*, McLean ¶36; Balmes ¶37; MacCracken ¶¶25-26. Intervenors do

13

not contest Plaintiffs' assertion that "educators, professionals, farmers, ranchers, fisheries, homeowners, businesses, and schools that rely on climate-related data being scrubbed or hidden from public view[] and other members of the public" will benefit from an injunction. Doc. 25 at 46; *see* Podesta ¶25.

Moreover, unlike the cases Intervenors rely upon, Plaintiffs' constitutional lawsuit does not center around "recover[ing] grant funds once they are disbursed," *Dep't of Educ. v. California*, 145 S. Ct. 966, 969 (2025), and does not implicate jurisdictional issues on the obligations to pay money pursuant to grants. *See Nat'l Inst. of Health v. Am. Public Health Ass'n*, 2025 WL 2415669, at *1 (Aug. 21, 2025). Intervenors cite *Trump v. American Federation of Government Employees*, but that case challenged a different EO where the Court said that "the Government is likely to succeed." 145 S. Ct. 2635, 2635 (2025). In contrast, here, Plaintiffs are likely to succeed on the merits of their claims. Doc. 25 at 20-43; *see also* Doc. 38 at 15-18. Plaintiffs' likelihood of success on the merits, showing of irreparable harm, the balance of equities, and the public interest all demonstrate a preliminary injunction is warranted here.

### III.  CONCLUSION

Plaintiffs respectfully request a preliminary injunction enjoining implementation of the EOs.

DATED this 10th day of September, 2025.

Respectfully submitted,

*/s/ Julia A. Olson*
Julia A. Olson
Andrea K. Rodgers
Nathan Bellinger
OUR CHILDREN'S TRUST
1216 Lincoln St.
Eugene, OR 97401
(415) 786-4825
julia@ourchildrenstrust.org
andrea@ourchildrenstrust.org
nate@ourchildrenstrust.org

Roger Sullivan
McGARVEY LAW
345 1st Avenue East
Kalispell, MT 59901
(406) 752-5566
rsullivan@mcgarveylaw.com

Philip L. Gregory
GREGORY LAW GROUP
1250 Godetia Drive
Redwood City, CA 94062
(650) 278-2957
pgregory@gregorylawgroup.com

Daniel C. Snyder
Haley Nicholson
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600
dsnyder@publicjustice.net
hnicholson@publicjustice.net

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(d)(2)(E), I certify that the foregoing brief has a word count of 3,249 words, excluding the portions exempted by L.R. 7.1(d)(2)(E).

*s/*
Julia A. Olson