Austin Knudsen
*Attorney General of Montana*
Christian B. Corrigan
  *Solicitor General*
Brent Mead
  *Deputy Solicitor General*
Michael D. Russell
  *Assistant Attorney General*
MONTANA DEPARTMENT OF JUSTICE
P.O. Box 201401
Helena, Montana 59620-1401
(406) 444-2026
Christian.Corrigan@mt.gov
Brent.Mead2@mt.gov
Michael.Russell@mt.gov

Justin D. Smith*
JAMES OTIS LAW GROUP, LLC
530 Maryville Centre Drive
Suite 230
St. Louis, Missouri 63141
(816) 678-2103
Justin.Smith@james-otis.com
*  *Pro hac vice application pending*

*(Additional Counsel listed in signature block)*

*Counsel for Intervenor-Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| EVA LIGHTHISER; et al.,<br><br>     Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; et al.,<br><br>     Defendants,<br><br>and<br><br>STATE OF MONTANA, et al.,<br><br>     Intervenor-Defendants. | Case No. 2:25-cv-00054-DLC<br><br>**STATE INTERVENORS' REPLY IN SUPPORT OF MOTION TO DISMISS** |

Plaintiffs have failed to satisfy the causation and redressability requirements for Article III standing.  Causation is lacking because Plaintiffs' claims are too speculative and too attenuated.  Redressability is lacking because Plaintiffs have not shown that the relief sought likely will redress their injuries, and their theory seeks an advisory opinion that would insert the federal judiciary into disputes far outside its role. Accordingly, the Court should dismiss the Complaint because Plaintiffs lack standing.

## I. Plaintiffs Have Not Satisfied the Causation Requirement for Article III Standing.

As the States explained in their motion, Plaintiffs rely on a highly— and impermissibly—attenuated causal chain that does not suffice for Article III standing.  *See* Doc. 48, at 6-11.  While Plaintiffs insist that "the chain of causation here is straightforward," Doc. 55 at 4, "[s]imply stating that something is so does not make it so," *Doody v. Ryan*, 649 F.3d 986, 1006 (9th Cir. 2011) (en banc).  By any possible standard, the causal chain underlying Plaintiffs' standing theory is anything but "straightforward."

As an initial matter, rather than pointing to specific conduct by the Federal Defendants that will cause their alleged injuries, Plaintiffs' brief instead relies on vague slogans like "dismantling" and "scrubbing." Doc. 55 at 4, 5. Such terminology may be useful for branding purposes, but it is not for pleading requirements. "To satisfy the traceability requirement, plaintiffs must allege that the defendants' *specific actions caused their harm*." *Bojicic v. DeWine*, 569 F. Supp. 3d 669, 682 (N.D. Ohio 2021) (emphasis added); *accord Easter v. Am. W. Fin.*, 381 F.3d 948, 961 (9th Cir. 2004) ("we affirm the district court's ruling that 'plaintiffs have failed to link their causes of action with specific actions of the 39 Trust defendants' and therefore lack standing to sue"). That Plaintiffs cannot point to *specific actions* that will cause their alleged injuries speaks volumes.

Setting aside this fundamental defect, Plaintiffs also gloss over the multiple layers of attenuation in their causation theory. As the States previously explained, Plaintiffs do not challenge emissions by the Federal Defendants. Instead, Plaintiffs' theory rests exclusively on emissions by third parties not before the Court. "[W]hen (as here) a plaintiff challenges the government's unlawful regulation (or lack of regulation)

of *someone else*, standing … is ordinarily substantially more difficult to establish." *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 382 (2024) (quotation omitted).

But the attenuation does not stop there, because Plaintiffs do not claim that those third parties' GHG emissions *directly* harm them. Instead, Plaintiffs allege that those third parties' emissions combine with the emissions of billions of other GHG emitters across the world (not to mention past emissions still in the atmosphere)[1] to—in the aggregate—cause incremental impacts on global climatic phenomena. Those worldwide natural phenomena, Plaintiffs claim, then cause incremental changes in other natural trends (average temperature; average precipitation; etc.) that, in turn, cause Plaintiffs' alleged injuries. It is difficult to imagine a more highly attenuated causal chain.

Plaintiffs seek to downplay the impact of this multi-layered causal chain by insisting that the conduct of any third parties involved is "predictable." Doc. 55, at 6. This unsupported assertion fails to acknowledge the multiple layers of third parties, only some of whose

---

[1] *See, e.g.*, Complaint, ¶ 86 ("A substantial portion of every ton of $CO_2$ emitted by human activities persists in the atmosphere for centuries to a millennium; as a result, $CO_2$ steadily accumulates in the atmosphere.").

conduct could conceivably be "predictable," and it also ignores the involvement of large-scale natural forces that are far from predictable.

But even accepting Plaintiffs' assertion at face value, predictability is not enough. As the Supreme Court recently emphasized, a causal chain can be defective in two distinct ways: where "the links in the chain of causation" are "too speculative" and where they are "too attenuated." *Alliance for Hippocratic Med.*, 602 U.S. at 383 (quotations omitted). The predictability of the conduct of third parties bears on whether the causal chain is "too speculative." But "[t]he causation requirement also rules out attenuated links—that is, where the government action is so far removed from its distant (*even if predictable*) ripple effects that the plaintiffs cannot establish Article III standing." *Id.* (emphasis added). An attenuated causal chain—even one premised on predictable consequences—does not establish Article III standing. *See id.* Here, as described above, Plaintiffs' causal theory rests on quintessentially "distant . . . ripple effects" that, "even if predictable," "cannot establish Article III standing." *Id.* Plaintiffs thus have not established causation for purposes of standing. *See id.*

Neither *Department of Commerce v. New York* nor *Diamond Alternative Energy* alters this conclusion. With respect to *New York*, it is unclear whether the case even has any relevance here. The plaintiffs found to have standing in *New York* were sovereign States. *See* 588 U.S. 752, 767 (2019). But a State "enjoys special solicitude in [the] standing analysis." *Arizona v. Yellen*, 34 F.4th 841, 851 (9th Cir. 2022) (quotation omitted). "Specifically, a state armed with special solicitude can more easily satisfy the traceability and redressability elements of the traditional standing inquiry." *Texas v. United States*, 555 F. Supp. 3d 351, 372 (S.D. Tex. 2021). As private parties, however, Plaintiffs here do not benefit from this relaxed standard. Thus, they are on very different footing than the plaintiffs found to have had standing in *New York*.

Moreover, the causal chain in *New York* was far less attenuated than Plaintiffs' theory here. The plaintiff States challenged the inclusion of a question about citizenship on the U.S. census. The States contended that including that question would deter non-citizens from responding to the census. *Id.* at 767. The plaintiffs—"States with a disproportionate share of noncitizens"—claimed that reductions in census responses would directly reduce their federal funding and congressional representation,

which are directly based on the relative census populations of the States. *Id.* This causal chain involves far fewer layers, far fewer independent actors, and far less speculation than the theory on which Plaintiffs rely here. *New York* does not support Plaintiffs' standing theory.

As for *Diamond Alternative Energy*, the causal chain there also bears no resemblance to Plaintiffs' highly attenuated theory here. In *Diamond*, the plaintiffs—fuel producers—challenged regulations that required vehicles to consume less fuel. 145 S. Ct. 2121, 2136-37 (2025).[2] Relying on "commonsense economic principles," the Supreme Court noted that this regulatory regime would inevitably lead to decreased fuel sales, amounting to a "classic monetary injury" for fuel producers. *Id.* at 2136-37. This simple causal chain looks nothing like Plaintiffs' convoluted theory; there is essentially no "distance" at all between a regulation limiting fuel consumption by vehicles and a decrease in fuel consumption.

---

[2] Plaintiffs claim that the plaintiffs in *Diamond* were "unregulated parties." Doc. 55, at 11. While perhaps literally true, this characterization obscures the Supreme Court's analysis. The Supreme Court emphasized that, although not technically bound by the challenged regulations, the plaintiffs reasonably could be "considered an object of the [challenged] regulations." 145 S. Ct. at 2135. In contrast, there is no sense in which Plaintiffs here are the "object" of the challenged Executive Orders.

Moreover, while third parties (*e.g.*, car buyers) technically played a role in the causal chain in *Diamond Alternative Energy*, those third parties did not make truly independent decisions—the challenged regulations required vehicles to consume less fuel, and so the regulations effectively predetermined the third parties' choices. *Id.* at 2130-31. Third parties had no lawful choice to opt for vehicles that would have consumed more fuel. In contrast, Plaintiffs do not claim that the Executive Orders force third parties to take action that allegedly harms Plaintiffs. *Diamond Alternative Energy* is clearly distinguishable and does not support Plaintiffs' standing arguments.

Ultimately, Plaintiffs' causation theory is far too attenuated to establish Article III standing. Although Plaintiffs "need not connect each molecule to their injuries," they "must show that a causal connection exists between their asserted injuries and the conduct complained of." *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1142-43 (9th Cir. 2013). Here, that means that Plaintiffs must plead facts that, if true, would show that any incremental additional GHG emissions attributable to the challenged Executive Orders are likely to cause their injuries. They cannot rely exclusively on "generalized statements of 'contribution.'" *Id.*

But such generalized statements of contribution are the best to which Plaintiffs can point in the Complaint.  *See, e.g.*, Complaint, ¶ 88 (alleging that "[e]very ton of $CO_2$ emitted *contributes* to global warming and climate change and increases the exposure of Plaintiffs to more harms now and additional harms in the future." (emphasis added)).  These vague statements do not provide a plausible basis to conclude that the Federal Defendants' challenged conduct is likely to cause Plaintiffs' alleged injuries.  Plaintiffs have not satisfied the causation requirement and thus lack Article III standing.

## II.    Plaintiffs Have Not Satisfied the Redressability Requirement for Article III Standing.

Plaintiffs also have not plausibly alleged that a favorable decision from this Court will redress their alleged injuries.  In general, "causation and redressability are two sides of the same coin."  *Ctr. for Biological Diversity v. Export-Import Bank*, 894 F.3d 1005, 1012 n.2 (9th Cir. 2018) (quotation omitted).  For this reason, the deficiencies discussed above regarding causation defeat Plaintiffs' redressability arguments as well.  *See id.*  But the redressability requirement is not merely duplicative of causation, and "causation does not inevitably imply redressability." *Renal Physicians Ass'n v. Dep't of Health & Human Servs.*, 489 F.3d 1267,

1278 (D.C. Cir. 2007). Thus, even if Plaintiffs could somehow establish causation, they still lack standing because they cannot establish redressability.

First, Plaintiffs have not alleged a non-conclusory, non-speculative basis to believe that enjoining enforcement of the Executive Orders here will prevent their injuries stemming from global climate change. "To determine whether an injury is redressable, a court will consider the relationship between the judicial relief requested and the injury suffered." *California v. Texas*, 593 U.S. 659, 671 (2021) (quotation omitted). In particular, redressability requires "that it is *likely*, as opposed to merely speculative, that a favorable decision will redress their injuries." *Winsor v. Sequoia Benefits & Ins. Servs.*, 62 F.4th 517, 525 (9th Cir. 2023) (quotation omitted; emphasis added). "To establish redressability, Plaintiffs *must allege clear and specific facts* showing that it is likely that the relief sought will remedy their injury." *Hall v. USDA*, 467 F. Supp. 3d 838, 848 (N.D. Cal. 2020) (emphasis added).

Here, Plaintiffs contend that their injuries will result from global climate change. As the Complaint itself alleges, Plaintiffs' alleged harms and risks associated with global climate change did not start with the

10

Executive Orders. *See, e.g.*, Complaint, ¶¶ 10-33. Indeed, Plaintiffs claim that they "were born into and now live in a destabilized climate system." *Id.* ¶ 83. Even before the Executive Orders, Plaintiffs allege, "[f]ossil fuel pollution ha[d] caused Earth to have an energy imbalance." *Id.* ¶ 87. Plaintiffs further allege that "[t]he year 2024 was the warmest year on record, and the ten warmest years on record have all occurred since 2015." *Id.* ¶ 95. Notably, all those years precede the issuance of the Executive Orders.

Having alleged a pre-existing climate crisis, Plaintiffs have an obligation to "allege clear and specific facts showing that it is likely" that enjoining the Executive Orders will change the trajectory of that alleged global crisis in a way that averts some portion of their injuries. *Hall*, 467 F. Supp. 3d at 848. Plaintiffs have fallen far short of this standard. They instead rely on vague, conclusory, and entirely speculative assertions that an injunction will prevent their injuries. *See* Doc. 55, at 16-17. But vague, conclusory allegations cannot overcome a motion to dismiss. *See Election Integrity Project Cal., Inc. v. Weber*, 113 F.4th 1072, 1081 (9th Cir. 2024). And speculation does not suffice to establish redressability. *Winsor*, 62 F.4th at 525.

Second, Plaintiffs cannot rely on their request for declaratory relief to rescue their redressability argument.  Plaintiffs assert that a declaratory judgment finding the Executive Orders unlawful "will clarify and guide government conduct regarding fossil fuels moving forward." Doc. 55, at 18.  But mere "clarif[ication] and guid[ance]" does not satisfy redressability; instead, it describes a quintessential advisory opinion. *See California*, 593 U.S. at 673.  Establishing standing on that basis would "threaten to grant unelected judges a general authority to conduct oversight of decisions of the elected branches of Government." *Id.*  Article III does not permit that result.

Finally, Plaintiffs' standing theory would involve the federal judiciary in a deluge of disputes that fall far outside the judicial role. Accepting the claims in the Complaint, the alleged climate-related harms faced by Plaintiffs are not unique to them.  Instead, those alleged harms could be asserted by virtually any American by claiming that they, too, would sustain climate-related harms based on precisely the same highly attenuated causal chain as Plaintiffs.  If Plaintiffs' standing theory here were correct, then virtually any American would have standing to challenge almost any governmental (or even private) action that arguably

12

leads to incremental increases in GHG emissions.  That outcome would turn federal judges into de facto climate super-regulators—a role that exceeds the judicial power authorized by Article III.  *Cf. Juliana v. United States*, 947 F.3d 1159, 1171-73 (9th Cir. 2020).  Plaintiffs have not satisfied the redressability requirement and thus lack Article III standing.

## III.    Plaintiffs Have Not Pointed to Any Prior Federal Case in Which Plaintiffs Have Established Standing on a Comparable Theory.

Plaintiffs accuse the States of "essentially taking the position that climate change-related claims cannot be resolved by the courts."  Doc. 55, at 15.  Plaintiffs misunderstand the States' argument.  As many courts (including the Ninth Circuit) have recognized, it is extraordinarily difficult to establish causation and redressability in climate change litigation like this.  *See Bellon*, 732 F.3d at 1143.  Tellingly, none of the examples cited by Plaintiffs support their standing theory.[3]

---

[3] In addition to the federal cases discussed in the main text, Plaintiffs cite two Montana state-court decisions from the same litigation.  *See* Doc. 55, at 15.  "Standing to sue in any Article III court is, of course, a federal question … ."  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985).  For this reason, state-law standing cases have little relevance in federal court.  *See, e.g., Doucet v. Int'l Hair Inst., LLC*, No. 17-cv-823, 2017 WL 5563987, at *6 (S.D. Cal. Nov. 20, 2017) (disregarding state-court cases

*Massachusetts v. EPA* is distinguishable in two critical ways. First, the plaintiff was a sovereign State, which "was entitled to special solicitude in the standing analysis." *Juliana*, 947 F.3d at 1171 n.7 (cleaned up) (distinguishing *Massachusetts* on this basis). Second, *Massachusetts* involved a "procedural" right, which entitled the plaintiff there to a lower bar for causation. *Id.* (distinguishing *Massachusetts* on this basis as well). "Here, in contrast, the plaintiffs are not sovereigns, and a substantive right, not a procedural one, is at issue." *Id.* Thus, the more relaxed standing analysis applied in *Massachusetts* does not govern Plaintiffs' standing here. *See id.*; *see also Bellon*, 732 F.3d at 1145 ("In contrast to *Massachusetts v. EPA,* the present case neither implicates a procedural right nor involves a sovereign state. Rather, Plaintiffs are private organizations, and therefore cannot avail themselves of the 'special solicitude' extended to Massachusetts by the Supreme Court.").

---

cited with respect to standing, because "those do not concern standing in federal court"). Moreover, *Held*'s standing analysis would not fly in federal court. The injury on which standing was premised in *Held* was the violation of the plaintiffs' "inalienable right to a clean and healthful environment." *Held v. State*, 419 Mont. 403, 424 (2024). But this is precisely the sort of generalized grievance that would not support standing in federal court. *See, e.g.*, *Animal Legal Defense Fund v. United States*, 404 F. Supp. 3d 1294, 1300 (D. Or. 2019).

Similarly, *Center for Biological Diversity v. Brennan* is inapplicable because that case relied on the relaxed standing standard for NEPA cases. "[O]nce a plaintiff has established injury in fact under NEPA, the causation and redressability requirements are relaxed." *Nuclear Info. & Res. Serv. v. NRC*, 457 F.3d 941, 950 (9th Cir. 2006) (cleaned up). *Brennan* expressly invoked this relaxed standard in its causation analysis. *See* 571 F. Supp. 2d 1105, 1122 (N.D. Cal. 2007) ("Reliance on procedural harms relaxes a plaintiff's burden on the traceability and redressability prongs of the Article III standing test."). But that relaxed standard does not apply here, where Plaintiffs have not sued under NEPA and rely on alleged substantive—not procedural—injuries.

*Center for Biological Diversity v. EPA* also does not advance Plaintiffs' cause. As an initial matter, its standing analysis has limited persuasive value, because it relies heavily on the standing analysis in *Massachusetts*. *See* 90 F. Supp. 3d 1177, 1194 (W.D. Wash. 2015). As noted above, subsequent Ninth Circuit authority indicates that *Massachusetts* is inapplicable in cases brought by private parties rather than sovereign States. *Juliana*, 947 F.3d at 1171 n.7. But setting that aside, the plaintiffs' standing theories in *Center for Biological Diversity*

*v. EPA* differ critically from those here. For one thing, the plaintiffs did not claim that the challenged conduct would impact global climate change. To the contrary, the plaintiffs sought to challenge the effect of *local* discharges of pollutants on the water quality of *local* waters, and they sought to compel *local* mitigation efforts. *See* 90 F. Supp. 3d at 1194. The issue of global climate change arose only because amici opposing Plaintiffs suggested that acidification from climate change would outweigh any local benefits from local mitigation. *Id.* This theory is completely different from what Plaintiffs claim here, namely, that incremental increases in global GHG emissions will—through a complex causal chain—harm them in locales far removed from where the emissions occur.

Moreover, in *Center for Biological Diversity v. EPA*, the record indicated that the local waters were "naturally poised near a tipping point, such that even a small increment of acidity can have dramatic biological consequences." *Id.* Thus, there was a plausible reason to believe that incremental additional pollution actually would cause additional harm. Here, however, Plaintiffs have not plausibly alleged facts showing that incremental additional GHG emissions will cause new

harms or increase the magnitude of existing ones.  If anything, *Center for Biological Diversity v. EPA* only highlights the deficiencies in Plaintiffs' Complaint here.

## CONCLUSION

Ultimately, Plaintiffs ask this Court to solve perceived policy problems that the Constitution allocates to the elected branches of Government.  "The law of Article III standing serves to prevent the judicial process from being used to usurp the powers of the political branches and confines the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (cleaned up).  Article III does not permit the Court to grant the fundamentally political relief that Plaintiffs seek.  The Court should dismiss the Complaint.


Dated: September 11, 2025

Respectfully Submitted,

**AUSTIN KNUDSEN**
Attorney General of Montana

*/s/ Christian B. Corrigan*
Christian B. Corrigan
  *Solicitor General*
Brent Mead
  *Deputy Solicitor General*

17

Michael D. Russell
  *Assistant Attorney General*
MONTANA DEPARTMENT OF JUSTICE
P.O. Box 201401
Helena, Montana 59620-1401
(406) 444-2026
Christian.Corrigan@mt.gov
Brent.Mead2@mt.gov
Michael.Russell@mt.gov

*/s/ Justin D. Smith*
Justin D. Smith*
JAMES OTIS LAW GROUP, LLC
530 Maryville Centre Drive
Suite 230
St. Louis, Missouri 63141
(816) 678-2103
Justin.Smith@james-otis.com
* *Pro hac vice application pending*

*Counsel for State of Montana*


STEPHEN J. COX
Attorney General of Alaska

*/s/ David W. Duffy*
David W. Duffy*, Alaska Bar No. 0605016
Assistant Attorney General
Alaska Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Phone: (907) 269-5601
Facsimile: (907) 276-3697
david.duffy@alaska.gov
* *Pro hac vice application forthcoming*

*Counsel for State of Alaska*

TIM GRIFFIN
Attorney General of Arkansas

*/s/ Noah P. Watson*
Noah P. Watson*
Deputy Solicitor General
Office of the Arkansas Attorney General
101 West Capitol Avenue
Little Rock, Arkansas 72201
(501) 682-1019
noah.watson@arkansasag.gov
* *Pro hac vice application forthcoming*

*Counsel for State of Arkansas*


JAMES UTHMEIER
Attorney General of Florida

Jeffrey P. DeSousa
*Acting Solicitor General*

*/s/ Christine K. Pratt*
Christine K. Pratt
Assistant Solicitor General
Florida Attorney General's Office
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
Christine.pratt@myfloridalegal.com
* *Pro hac vice application forthcoming*

*Counsel for State of Florida*

CHRISTOPHER M. CARR
Attorney General of Georgia

*/s/ Elijah J. O'Kelley*
Elijah J. O'Kelley
Deputy Solicitor General
Office of the Georgia Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(470) 816-1342
eokelley@law.ga.gov
* *Pro hac vice application forthcoming*

*Counsel for State of Georgia*


RAÚL R. LABRADOR
Attorney General of Idaho

*/s/ Michael A. Zarian*
Michael A. Zarian
*Deputy Solicitor General*
Office of the Idaho Attorney General
700 W Jefferson St #210
Boise, Idaho 83720
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
michael.zarian@ag.idaho.gov
* *Pro hac vice application forthcoming*

*Counsel for State of Idaho*


THEODORE E. ROKITA
Attorney General of Indiana

*/s/ James A. Barta*
James A. Barta

20

*Solicitor General*
Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, Indiana 46204
Phone:  (317) 232-0709
Fax:  (317) 232-7979
Email:  James.Barta@atg.in.gov
* *Pro hac vice application forthcoming*

*Counsel for State of Indiana*


BRENNA BIRD
Attorney General of Iowa

*/s/ Eric H. Wessan*
Eric H. Wessan*
Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov
* *Pro hac vice application forthcoming*

*Counsel for State of Iowa*


KRIS W. KOBACH
Attorney General of Kansas

*/s/ James R. Rodriguez*
James R. Rodriguez (KS 29172)
 *Assistant Attorney General*
Kansas Office of the Attorney General
120 SW 10th Avenue, Floor 2
Topeka, Kansas 66612

21

Phone: (785) 368-8197
jay.rodriguez@ag.ks.gov
* *Pro hac vice application forthcoming*

*Counsel for State of Kansas*


LIZ MURRILL
Attorney General of Louisiana

*/s/ J. Benjamin Aguiñaga*
J. Benjamin Aguiñaga*
  *Solicitor General*
Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, Louisiana 70804
(225) 326-6766
AguinagaB@ag.louisiana.gov
* *Pro hac vice application forthcoming*

*Counsel for State of Louisiana*


CATHERINE L. HANAWAY
Attorney General of Missouri

*/s/ Samuel C. Freedlund*
Samuel C. Freedlund, #73707MO
  *Deputy Solicitor General*
Office of the Attorney General
815 Olive Street, Suite 200
St. Louis, Missouri 63101
Tel. (314) 340-7366
Fax (573) 751-0774
Samuel.Freedlund@ago.mo.gov
* *Pro hac vice application forthcoming*

*Counsel for State of Missouri*

22

MICHAEL T. HILGERS
Attorney General of Nebraska

*/s/ Cody Barnett*
Cody Barnett*
  *Solicitor General*
Office of the Attorney General
1445 K Street, Rm 2115
Lincoln, Nebraska 68508
(402) 471-2683
cody.barnett@nebraska.gov
* *Pro hac vice application forthcoming*

*Counsel for State of Nebraska*


DREW H. WRIGLEY
Attorney General of North Dakota

*/s/ Philip Axt*
Philip Axt*
  *Solicitor General*
600 E. Boulevard Ave., Dept. 125
Bismarck, North Dakota 58505
Phone: (701) 328-2210
Email: pjaxt@nd.gov
* *Pro hac vice application forthcoming*

*Counsel for State of North Dakota*


GENTNER DRUMMOND
  Attorney General of Oklahoma

*/s/ Garry M. Gaskins, II*
Garry M. Gaskins, II*

23

*Solicitor General*
Jennifer L. Lewis
  *Deputy Attorney General*
Office of the Attorney General of Oklahoma
313 NE Twenty-First St.
Oklahoma City, Oklahoma 73105
(405) 521-3921
garry.gaskins@oag.ok.gov
**\*** *Pro hac vice application forthcoming*

*Counsel for State of Oklahoma*


MARTY J. JACKLEY
Attorney General of South Dakota

*/s/ Amanda Miiller*
By: Amanda Miiller\*, SD Bar No. 4271
  *Deputy Attorney General*
1302 East Highway 14, Suite 1
Pierre, South Dakota 57501-8501
Telephone: (605) 773-3215
amanda.miiller@state.sd.us
**\*** *Pro hac vice application forthcoming*

*Counsel for State of South Dakota*


KEN PAXTON
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Ralph Molina
Deputy First Assistant Attorney General

Austin Kinghorn

24

Deputy Attorney General for Civil Litigation

Kellie E. Billings-Ray
Chief, Environmental Protection Division

*/s/ Wesley S. Williams*
Wesley S. Williams*
  *Assistant Attorney General*
Texas Bar No. 24108009
Wesley.Williams@oag.texas.gov
OFFICE OF THE ATTORNEY GENERAL
ENVIRONMENTAL PROTECTION DIVISION
P.O. Box 12548 (MC-066)
Austin, Texas 78711-2548
(512) 463-2012 | Fax: (512) 320-0911
* *Pro hac vice application forthcoming*

*Counsel for State of Texas*


DEREK E. BROWN
Attorney General of Utah

*/s/ Stanford Purser*
Stanford Purser*
  *Solicitor General*
Office of the Utah Attorney General
160 E. 300 S., 5th floor
Salt Lake City, Utah 84111
(801) 366-0533
spurser@agutah.gov
* *Pro hac vice application forthcoming*

*Counsel for State of Utah*


JOHN B. MCCUSKEY
Attorney General of West Virginia

*/s/ Michael R. Williams*
Michael R. Williams*
  *Solicitor General*
Office of the Attorney General
of West Virginia
State Capitol Complex
Building 1, Room E-26
1900 Kanawha Blvd. E
Charleston, West Virginia 25301
(304) 558-2021
michael.r.williams@wvag.gov
* *Pro hac vice application forthcoming*

*Counsel for State of West Virginia*


KEITH G. KAUTZ
Attorney General of Wyoming

*/s/ Ryan Schelhaas*
Ryan Schelhaas*
  *Chief Deputy Attorney General*
Office of the Wyoming Attorney General
109 State Capitol
Cheyenne, Wyoming 82002
(307) 777-5786
ryan.schelhaas@wyo.gov
* *Pro hac vice application forthcoming*

*Counsel for the State of Wyoming*


DOUGLAS B. MOYLAN
Attorney General of Guam

*/s/ Douglas B. Moylan*
Douglas B. Moylan

26

Office of the Attorney General of Guam
590 S. Marine Corps. Drive
ITC Bldg., Ste. 902
Tamuning, Guam 96913, USA
671-475-3324
671-475-4703 (fax)
dbmoylan@oagguam.org
*Pro hac vice application forthcoming*

*Counsel for the U.S. Territory of Guam*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 11, 2025, I caused a true and correct copy of the foregoing to be submitted to the Clerk of Court for filing in accordance with Local Rule 24.1(a), which electronic filing by the Clerk will cause the service of the foregoing upon all parties who have entered in the case.

*/s/ Christian B. Corrigan*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Brief is compliant with Local Rule 7.1(d)(2)(A) because it contains 3,131 words, according to Microsoft Word, excluding those portions identified in Local Rule 7.1(d)(2)(E).

*/s/ Christian B. Corrigan*